UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

```
ANDREW FULLMAN             :      CIVIL CASE
                           :
        Plaintiff(s),      :      Case No.  2:17-cv-02673-ER
                           :
   v.                      :      Philadelphia, Pennsylvania
                           :      July 31, 2019
CITY OF PHILADELPHIA et al:      Time 10:07 a.m. to 10:30 a.m.
                           :
        Defendant(s),      :
. . . . . . . . . . . . . .
```

TRANSCRIPT OF STATUS AND SCHEDULING CONFERENCE
BEFORE THE HONORABLE EDUARDO C. ROBRENO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff(s):      Andrew Fullman
                           810 Arch Street, Unit 304
                           Philadelphia, PA 19107


For Defendant Name:        Jeffrey Mozdziock
                           PA Office of Attorney General
                           1600 Arch Street, 3rd Floor
                           Philadelphia, PA 19103


For Defendant Name:        Jonathan Cooper
                           City of Philadelphia Law Dept.
                           Civil Rights Unit
                           1515 Arch Street, 14th Floor
                           Philadelphia, PA 19102


Court Recorder:            Kenneth E. Duvak
                           Clerk's Office
                           U.S. District Court


Transcription Service:     Precise Transcripts
                           45 N. Broad Street
                           Ridgewood, NJ 07450


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1          (Proceedings started at 10:07 a.m.)

2          DEPUTY CLERK KENNETH DUVAK:  All rise.  United

3   States District Court for the Eastern District of

4   Pennsylvania is now in session.  The Honorable Eduardo C.

5   Robreno presiding.

6          JUDGE EDUARDO C. ROBRENO:  Good morning.  Please

7   be seated.

8          COUNSEL JONATHAN COOPER:  Good morning, Your

9   Honor.

10          ANDREW FULLMAN:  Good morning, Your Honor.

11          THE COURT:  We are here today status and

12   scheduling conference and we have -- Mr. Fullman has asked

13   for additional time and find out what is going on with

14   this with this case.  So, let me, let me ask Mr. Cooper,

15   what's the, what's the status of the case right now?

16          MR. COOPER:  Your Honor, currently discovery has

17   closed.  Motions for summary judgement have been filed on

18   behalf of all defendants and as Your Honor noted, Mr.

19   Fullman has requested more time to respond and that's

20   pretty much where we stand.  At this point I think that

21   the motions are at least -- are -- have merit and I think

22   that --

23          THE COURT:  Okay --

24          MR. COOPER:  -- we'll just wait for everyone.

25          THE COURT:  So, so, who is left as a defendant in

1  this case?

2       MR. COOPER:  For the City it's Commissioner Ross

3  and the City itself, nobody else.

4       JEFFREY MOZDZIOCK:  And for the Attorney Gen --

5  Jeff Mozdziock for the Attorney General's Office.  We've

6  got Eileen Bonner, a Gun Ta- Violence Task Force Agent

7  with the Office of Attorney General.

8       THE COURT:  Okay, so there is, uh, one individual

9  for Bonner and then there are, there's the City on a

10 Monell claim and, uh, Commissioner Ross on his individual

11 capacity -- is, is not a Monell claim?

12      MR. COOPER:  That's (indiscernible).

13      THE COURT:  You said he somehow participated in

14 this event.

15      MR. COOPER:  Correct, Your Honor.  That's my

16 understanding from the pleadings.

17      THE COURT:  Okay.  Now -- okay.  So Mr. Fullman

18 what's, what's, what's going on with you?

19      MR. FULLMAN:  Well, Your Honor, the discovery we

20 were stayed.  I've never got a chance to do anything, so I

21 don't think it should be closed.

22      THE COURT:  Okay, so what would you like to do?

23      MR. FULLMAN:  I would like to do interrogatories

24 and request for documents and things.  And I would like to

25 reserve a deposition too.

4

1          THE COURT:  A deposition of whom?

2          MR. FULLMAN:  Both Defendants.

3          THE COURT:  You mean Bonner and Commissioner

4  Ross?

5          MR. FULLMAN:  Yes.

6          THE COURT:  Okay.  Do you have any reason to

7  believe that Commissioner Ross -- well, let me ask you

8  this.  You never interacted with Commissioner Ross, is

9  that right?

10          MR. FULLMAN:  Only by mail.

11          THE COURT:  Okay.  But, in the event at issue

12  here, that is with -- by the way, the other Fullman, is he

13  related to you?  Is it Mark Fullman?

14          MR. FULLMAN:  Yes.

15          THE COURT:  Who is he?

16          MR. FULLMAN:  That's my nephew.

17          THE COURT:  That's your nephew, okay.  In the

18  events here I'm trying to find out whether Mr. --

19  Commissioner Ross interacted with you as the result of

20  your calling upon him in his role as a Commissioner,

21  whether he was involved in any of these events personally.

22          MR. FULLMAN:  He was called.

23          THE COURT:  He was called by you?  He was called

24  when?

25          MR. FULLMAN:  By letter, yes.  I communicated

1    with him by letter.

2              THE COURT:  Okay.

3              MR. FULLMAN:  And his representatives were really

4    the ones that --

5              THE COURT:  Who was that I'm sorry?

6              MR. FULLMAN:  His representatives --

7              THE COURT:  Oh.

8              MR. FULLMAN:  -- the people that work for him.

9              THE COURT:  Okay, who was that?

10             MR. FULLMAN:  I don't have their names with me

11   right now.

12             THE COURT:  Okay.  Okay.  Okay, so, let's see

13   here.  Thank you, uh, Mr. Fullman.  Let me, let me ask the

14   Defendants -- okay, so, we'll start with Bonner's motion

15   for summary judgement.  Eleventh amendment immunity in

16   personal capacity meaning what?

17             MR. MOZDZIOCK:  The individual capacity, there's

18   no claim against her.  The -- he claims that she

19   retaliated against him but the retaliatory action took

20   place before the protected activity.  He says --

21             THE COURT:  Okay, give me a date for that.

22             MR. MOZDZIOCK:  I don't have the date that he

23   spoke to -- so, the -- on July 25, 2016 Mr. Fullman was

24   told that he was aware that the police -- that he had

25   given a statement to the police.  Afterwards, he filed

1    complaints with the Internal Affairs --

2            THE COURT:  Well what are the --

3            MR. MOZDZIOCK:  -- Division against Bonner.

4            THE COURT:  -- dates?  You're saying no, this

5    occurred in certain chronology.  So, what, what are the

6    dates of that?

7            MR. MOZDZIOCK:  Well, so, prior -- the things

8    that he's complaining about to Internal Affairs took place

9    sometime before July 25, 2016.

10           THE COURT:  What is it, what is it that took

11   place before July 25th?

12           MR. MOZDZIOCK:  That his, that it was the Hakeem

13   Harman (ph) and Mark Fullman were made aware that the

14   Plaintiff had given statements to the police.  So, he says

15   that, sh- Bonner gave them that in retaliation.

16           THE COURT:  And, did Bonner --

17           MR. MOZDZIOCK:  But it is retalia- he says it's

18   retaliation for the Internal Affairs complaints, which

19   took place afterwards, which were about her giving the

20   statements.  So, it could not have been in retaliation

21   because --

22           MR. FULLMAN:  Your Honor, he's mixing the facts

23   up.

24           THE COURT:  He jus' -- hold it minute.  Give me

25   your facts with dates.

1          MR. MOZDZIOCK:  Okay.  On July 25, 2016, Thomas

2    Fullman told the Plaintiff that Hakeem Harman and Mark

3    Fullman were aware the Plaintiff had given the police a

4    statement regarding the shootings.  After he learned about

5    the disclosure of the statement, Plaintiff filed

6    complaints with the Philadelphia Police Department

7    Internal Affairs Division against Bonner.  The Plaintiff

8    spoke to Bonner about the disclosure and she said it --

9    she believed it came from the police department.  He had

10   spoken to her about the May 6th and August 19th shootings,

11   sometime in 2014.

12          THE COURT:  Okay, I, I, I don't follow that

13   frankly but.  Okay.  Okay, what about that Fullman has no

14   liberty interest at state?

15          MR. MOZDZIOCK:  So, the, the Court has recognized

16   the right of privacy but they have not done it in this

17   matter.  He never signed a confidential informant

18   agreement.  There's no right to adequate police

19   protection.  He was never harmed and he ju- he merely

20   suffered reputational harm with his family.  And, in Paul

21   vs Davis (ph), you know, the harm or injury to the

22   interest and reputation alone does not result in the

23   depri- deprivation of any liberty or property interest

24   recognized by state or federal law.

25          THE COURT:  What -- even if the facts turned out

1    to be as Mr. Fullman, as I understand he is claiming, that

2    the statement was released.

3            MR. MOZDZIOCK:  Mm-hm.

4            THE COURT:  That he had cooperated -- what he had

5    said, was released in retaliation for he's having filed

6    certain complaints.  Would that state a cause of action?

7            MR. MOZDZIOCK:  Well, no because the complaints

8    that he made were about the disclosure.

9            THE COURT:  Mm-hm.

10           MR. MOZDZIOCK:  Which happened beforehand, so it

11   can't -- the timeline cannot follow.  He would've had to -

12   - there would've had to been an action by Bonner after he

13   made complaints to the Internal Affairs Division but the

14   disclosure actually took place beforehand.

15           THE COURT:  Okay.  Okay.  So, there would be no

16   liberty interest in protecting a witness from having his

17   or her statement released --

18           MR. MOZDZIOCK:  Well --

19           THE COURT:  Is, is that because there was no

20   commitment on the part of the police to maintain it

21   confidential, I think that's, you're suggesting --

22           MR. MOZDZIOCK:  Well, there's, there, there's no

23   confidential witness agreement and also the disclosure of

24   the witness to the -- those accused of crimes is not

25   arbitrary it is required by the sixth amendment.

1          THE COURT:  Mm-hm.

2          MR. MOZDZIOCK:  So, it'd be in opposite to say

3    that the -- that the police would be in a place where no

4    matter what they do, they violate --

5          THE COURT:  Yeah.

6          MR. MOZDZIOCK:  -- the, the rights of one those.

7          THE COURT:  Well, let me ask you this, were the

8    disclosures made in connection with a criminal prosecution

9    of the individuals who have been alleged to have

10   commitment this crime?

11         MR. MOZDZIOCK:  Yes, they were made during

12   discovery --

13         THE COURT:  Okay.

14         MR. MOZDZIOCK:  -- according to the

15   (indiscernible).

16         THE COURT:  So, what happened was the defendants

17   were indicted and, and the poli- and the DA then released

18   the statements?

19         MR. MOZDZIOCK:  I don't know if there was an

20   actual indictment but --

21         THE COURT:  Okay.

22         MR. MOZDZIOCK:  -- the, the Assistant District

23   Attorney, I believe, is the one who released the

24   statements.

25         THE COURT:  Okay.

1          MR. MOZDZIOCK:  Not, not, not my Defendant.

2          THE COURT:  But, did the, the, the prosecutor

3    would have no obligation to release, where we make all

4    the, you know, Brady or Giglio sort of material until a

5    person is accused of a crime, right?  Not during an

6    investigation.

7          MR. MOZDZIOCK:  Well, I, I don't, I don't know

8    the exact time table --

9          THE COURT:  Yeah.

10         MR. MOZDZIOCK:  -- of the disclosure.

11         THE COURT:  But these individuals were never

12   charged?

13         MR. MOZDZIOCK:  Not to my knowledge.

14         THE COURT:  Okay, okay.  So, you're saying the,

15   the factual chronology, accepting them as true in the

16   complaint, cannot stand up because it, it's contradictory

17   --

18         MR. MOZDZIOCK:  Correct.

19         THE COURT:  -- and, number two, there is no

20   liberty interest in what occurred here, even if it is

21   true?

22         MR. MOZDZIOCK:  Correct.

23         THE COURT:  Okay.  And, then we've got 11th

24   amendment immunity and, individual capacity.  What, what

25   does that mean, what are you saying about -- oh Bonner did

1  not participate in anything here?

2          MR. MOZDZIOCK:  Bonner was a state employee --

3          THE COURT:  Right.

4          MR. MOZDZIOCK:  -- so, in her official capacity,

5  she cannot be sued for damages.

6          THE COURT:  Right.

7          MR. MOZDZIOCK:  She'd probably be sued for

8  injunctive relief.

9          THE COURT:  Right.

10          MR. MOZDZIOCK:  So --

11          THE COURT:  In her official capacity.

12          MR. MOZDZIOCK:  In her official capacity.

13          THE COURT:  Okay, but she could be in her

14  individual capacity?

15          MR. MOZDZIOCK:  Correct.

16          THE COURT:  And, what is, what is her defense to

17  that?

18          MR. MOZDZIOCK:  In to the individual capacity?

19          THE COURT:  Yes.

20          MR. MOZDZIOCK:  It is that she could not have

21  violated the first amendment by retaliating against him

22  because of the chronology.

23          THE COURT:  Okay.

24          MR. MOZDZIOCK:  And, two, that there's no liberty

25  interest.

1           THE COURT:  Okay, good.  Okay, let me hear Mr.

2    Cooper.  What about, the City?

3           MR. COOPER:  Yes, Your Honor.  First and

4    foremost, the City has been, with respect to the City, the

5    City has been sued under a Monell theory which requires

6    some sort of evidence of a policy practice or custom

7    exhibiting the liberty difference to the rights of, of

8    plaintiff or similarly situated persons.  There is no

9    record evidence whatsoever.  Mr. Fullman's complaint

10   actually alleges, and I believe his testimony, that the

11   individual police officers in this case, who have never

12   been identified, did not adhere to Philadelphia Police

13   Department policies and protocols.  That's actually the

14   opposite of a Monell claim, it doesn't get you there.

15   That would only go to a claim against the individual

16   officers but no individual officer has been identified.

17          THE COURT:  Yeah, I think there was an allegation

18   that it violated, release of the information, violated

19   the, the, the policy of the, of the police department.

20          MR. COOPER:  That's Mr. Fullman's allegation.

21          THE COURT:  Yeah.

22          MR. COOPER:  Correct.

23          THE COURT:  Okay.

24          MR. COOPER:  But that, even if it vi- something

25   that violates policy is not a Monell claim.

1          THE COURT:  Yeah.

2          MR. COOPER:  That would be a claim against the

3    individual officer who's never been identified and, and

4    Mr. Fullman has made no efforts to identify.  So that, as,

5    as blanket with the City.  With respect to, the, the

6    substance of claims, they each have been fails on the

7    merits as well and, and I echo the Counsel for the

8    Attorney General as with respect to due process claims,

9    municipalities and their employees have no blanket

10   obligation to provide individuals with police protection

11   and, again, that -- well that only exists when there is a

12   special relationship between the individual and the

13   municipality which is typically only found when that

14   person is in custody or somehow has had their liberty

15   otherwise restrained by the municipality.

16          THE COURT:  Well, contracturally, I suppose.

17          MR. COOPER:  Cert- fair point, Your Honor, yes.

18          THE COURT:  Yes.  It could be an agreement of

19   some sort to be placed in a witness protection or to have

20   some particular protection assigned to that.

21          MR. COOPER:  Absolutely, and that's -- none of

22   that is the case here.

23          THE COURT:  Yeah.

24          MR. COOPER:  And, the Third Circuit has also said

25   that as, as to echo Counsel, the information contained in

1    a police report is not protected by the confidentiality

2    branch of the constitutional right of privacy.  That was a

3    1991, Third Circuit case Sheetz vs The Morning Call, Inc.

4    (ph) and, again, here there was no confidentiality

5    agreement to supersede that control in the law.  And, just

6    factually, Plaintiff was not a victim of either one of

7    these, these alleged shootings and he hasn't actually

8    articulated any harm as a, as a, for that offense.

9              THE COURT:  But he's been confronted.

10             MR. COOPER:  He'd been confronted and, again,

11   just in terms of the timeline, he was confronted before he

12   made complaints to the Philadelphia Police Department

13   about, about the situation and therefore, with respect to

14   retaliation --

15             THE COURT:  Well, that wouldn't be retaliation.

16   Well, wouldn't that then be, implicate due process, equal

17   protection or some other constitutional right?

18             MR. COOPER:  If, with respect to due process,

19   the, the threat itself, I don't think that actually would

20   go to a due process claim.  I think that -- I'm not --

21   there might be a cause of action for that.  Harassment's

22   not a cause of action either.  If there was a colorable

23   cause of action against an individual, maybe there'd be

24   something there but it's certainly not a claim against the

25   City and, again, no individual here has been identified

1    and a threat alone Mr. Fullman hasn't plead any cause of

2    action that, that would implicate that as, as a, as, a

3    basis for liability.  And, I will al- and I'll also say

4    with respect to equal protection, the Plaintiff has not

5    presented -- has not enthused any evidence of similarly

6    situated persons, either within or outside of the

7    protected class, his protected class --

8              THE COURT:  Okay.

9              MR. COOPER:  -- that, so to either proceed under

10   a class of one theory or under, just a general

11   discriminative -- discriminatory effect and discriminatory

12   purpose theory.

13             THE COURT:  Okay.

14             MR. COOPER:  And, then with respect to

15   retaliation, again, I think that that fails for the same

16   reasons of Counsel for the Attorney General articulated

17   primarily the timeline and then with respect to

18   Commissioner Ross, as I just mentioned earlier, there's no

19   personal involvement in this case.  The only record

20   evidence whatsoever is that Mr. Fullman sent two letters

21   to the Philadelphia Police Department, which were

22   addressed -- they may've been sub headed Commissioner

23   Ross, but there's no record of evidence nor is there any

24   plausible suggestion that Commissioner Ross himself read

25   those letters, took any actions whatsoever, was even aware

1    of the situation at any time and the Plaintiff himself I

2    believe just, just stated that it was Commissioner Ross's

3    representatives who have received that letter and, and

4    taken any of those actions.  So, there, there's no,

5    there's no --

6                 THE COURT:  Okay.

7                 MR. COOPER:  -- actionable theory against

8    Commissioner Ross.

9                 THE COURT:  Thank you.

10                MR. COOPER:  Thank you, Your Honor.

11                THE COURT:  So, Mr. Fullman, tell me your version

12   of the events here.  Your version of events.

13                MR. FULLMAN:  What he --

14                THE COURT:  Otherwise, you were disputing the

15   chronology.  What's your chronology?

16                MR. FULLMAN:  Well, I hope I can get it together.

17   Agent Bonner came to my residence, picked me up and took

18   me up to get, to give a statement about the two shootings

19   and she told me that this is between you and me, it won't

20   get out.  'Cause I -- that's -- I was concerned about

21   that.  And, as -- a couple months later, that's when my

22   nephew said so you gave a statement against Hakeem --

23   Harman and he had, he had all the facts of the statement,

24   which means they saw the statement.

25                THE COURT:  Okay, so what, what happened

1  afterwards?

2           MR. FULLMAN:  I was threated, I had to move from

3  my residence, you know, for fear of my life.  My family

4  was broken up behind me.  It's, it's very dysfunctional

5  now.

6           THE COURT:  Now, why do you believe or claim that

7  Bonner released the statement to other parties?  If she

8  had, according to you, said this will not get out.  What,

9  what was, what was the reason?  I think you are alleging

10  some kind of retaliation, so what was she retaliating

11  against?

12           MR. FULLMAN: I -- 'cause I made several phone

13  calls to her and I don't think she was too happy about the

14  -- about my conversations and then the next thing you

15  know, she's -- some of my nephew's friends tell me that

16  they saw the statement.

17           THE COURT:  Right.  But then you file an action

18  after that.  You filed the action with the police

19  department, with Internal Affairs, right?

20           MR. FULLMAN:  Yes.

21           THE COURT:  Okay.  So, what they are saying is

22  that the release of the information would not have been in

23  retaliation for your filing of the Internal Affairs

24  statement because by the time you filed the Internal

25  Affairs statements the statement had already been

1  released.

2          MR. FULLMAN:  I don't have the, the, the exact

3  order with me now --

4          THE COURT:  Okay.

5          MR. FULLMAN:  -- but, it's in my complaint.

6          THE COURT:  Okay.  I will, I will follow that.

7  Okay.  Now, uh, let me see.  I have your complaint here.

8  Okay, now what -- you say you wanted to serve

9  interrogatories and you want to request for production of

10 documents and you wanted to take a deposition of Bonner

11 and a deposition of Ross?

12         MR. FULLMAN:  Yes.

13         THE COURT:  Okay.  This is what I'd like you to

14 do.  I am going to give you 30 days to file a response to

15 the motion for summary judgement and in that response I

16 want you to attached a copy of the interrogatories and the

17 request for documents and the request to depose Bonner and

18 Ross.  I want you to tell me how that information is

19 necessary for you to file a fuller response.  In other

20 words, we've got to be able to determine that the requests

21 that you're making are going to be relevant to the issues.

22 For example, 11th amendment, most of these issues it seems

23 to be are issues of law because accepting your version of

24 the facts I don't think there is really a lot of

25 controversy as to those, those facts.  So, I've gotta be

1    able to determine whether the discovery request that

2    you're making are relevant to these, to these issues.  It

3    may be, it may not be.  So, I'd like you to, and you've

4    been around this track before.  Compose your response to

5    the motion for summary judgements as it now stands and

6    then add to that your request to -- for interrogatories

7    and requests for documents and for the depositions that

8    you would like to have.  I'll look at it and if I believe

9    that the discovery is going to be relevant to the issues,

10   then I'll grant you that -- those requests and then we'll

11   go from there.  But, if they have nothing to do with the

12   issues and it would not be efficient or effective or

13   frankly a waste of time then I will deny those.  But I

14   want to give you an opportunity to present to me what it

15   is that you would like to and that you need to, in order

16   to be -- to present an effective response.  So --

17             MR. FULLMAN:  I think --

18             THE COURT:  -- you understand that?

19             MR. FULLMAN:  Yes, I believe some of my

20   interrogatories and documents are, is already part of the

21   court record.

22             THE COURT:  Okay, well do them again so I'll have

23   more than one point.  You file your response and they'll

24   be, your response as things stand now and then you also

25   will put in -- I also need this information in order to

1   supplement or explain my response.  You follow that?

2           MR. FULLMAN:  Yes.

3           THE COURT:  Thirty days enough?

4           MR. FULLMAN:  Yes.

5           THE COURT:  Okay.  We'll follow up proceed from

6   there.  Good, thank you.

7           COUNSELS:  Thank you, Your Honor.

8              (Court adjourned at 10:30 a.m.)

CERTIFICATE

I, Stephanie Garcia, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

September 17, 2019