IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW FULLMAN | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PHILADELPHIA, | ) | |
| JOHNNIE MAE CARTER #1305, | ) | |
| BARBARA A. MCDERMOTT, | ) | |
| WILLIAM DORNEY, | ) | |
| | ) | |
| Defendants. | ) | No. 17-2673 |

## AMENDED CIVIL COMPLAINT

This is an amended civil rights complaint filed by Plaintiff Andrew Fullman, alleging violations of his civil and constitutional rights, due process, deliberate indifference, perjured testimonies, misconduct, retaliation, malicious prosecution, prosecutorial misconduct, failure to disclose information, conspiracy, discrimination, harassment, obstruction of justice, fabricated evidence, unlawful arrest, and false imprisonment, which occurred in Philadelphia, Pennsylvania. Plaintiff is seeking monetary damages, and any other relief this Court may deem appropriate. Plaintiff requests a trial by jury.

## THE PARTIES

1.      Plaintiff, Andrew Fullman ("Plaintiff") is an adult individual, residing at 810 Arch Street, Apt. 304, Philadelphia, Pennsylvania.

2.      Upon information and belief, defendant, City of Philadelphia is a municipal political subdivision of the Commonwealth of Pennsylvania.

3.      Upon information and belief, defendant, Johnnie Mae Carter, Badge #1305, is an adult individual and resident of the Commonwealth of Pennsylvania and present or former employee of defendant, City of Philadelphia. Plaintiff has recently learned that Defendant Carter may be deceased.

4.      Upon information and belief, defendant, Barbara A. McDermott, is an adult individual and resident of the Commonwealth of Pennsylvania and present or former employee of defendant, City of Philadelphia.

5.      Upon information and belief, defendant, William Dorney, is an adult individual and resident of the Commonwealth of Pennsylvania and present or former employee of defendant, City of Philadelphia.

## JURUSDICTION AND VENUE

6.      This is an action arising in part under 28 U.S.C. § 1343, 42 U.S.C. §§ 1981, 1983, 12188. Pendant, ancillary, and supplemental jurisdiction with respect to any state statutory or common law claims is provided under 28 U.S.C. § 1367, and any other part the Court may deem appropriate.

**FACTUAL BACKGROUND**

7.      By Order of this Honorable Court dated July 31, 2017, allowing Plaintiff to reassert his claims if he managed to successfully invalidate his conviction, or his conviction is expunged by executive order; he now wishes to reassert his claims in this Amended Complaint after being Pardoned on December 2, 2022. **SEE EXHIBIT A.**

8.      Plaintiff avers that a deprivation of a constitutionally and federally secured right has occurred, and that the alleged deprivation was committed by persons acting under color of state and federal law.

9.      Now that Plaintiff was Pardoned and now has standing in this Court, he avers that Defendant Barbara A. McDermott, a prior assistant district attorney, and her office, intentionally withheld information from Plaintiff's defense counsel and the Philadelphia Court of Common Pleas, relating to his criminal case, to win her false orchestrated criminal charges against him while concealing her crimes (conspiracy, false arrest, prosecutorial misconduct, corruption, and obstruction of justice). Withholding information to conceal misconduct to put an innocent person in prison, is a violation of the Constitution of the United States. Defendant McDermott knew Defendant Johnnie Mae Carter, Badge #1305, was giving "perjured testimony" regarding her ballistics experience and seeing **"hundreds"** of bullet marks at the Philadelphia Police Academy. Defendant McDermott and her office, conspired and unlawfully prosecuted Plaintiff with malicious intent. Plaintiff was barred from proceeding with his wrongful imprisonment claims until his convictions were invalidated, which occurred via executive order by Governor Tom Wolf on December 2, 2022.

10.     The Philadelphia Police Department and Philadelphia District Attorney's Office intentionally failed to disclose information to the defense counsel, trial court, and appeal court, regarding the perjured testimonies of Bruce Beatty and Defendant Carter, that they saw a bullet mark and she had experience in bullet marks after seeing **"hundreds"** of bullet marks at the Philadelphia Police Academy. To the contrary, Defendant Carter never saw any such bullet marks at the Philadelphia Police Academy nor had any ballistics experience. This information was withheld for over thirty-six (36) years, which denied Plaintiff due process of law and violated his civil and constitutional rights thus causing him to be wrongfully convicted and imprisoned in state prison.

11.     Defendant McDermott mishandled Plaintiff's criminal trial and prosecuted him with malicious intent, withholding information from defense counsel and the Philadelphia Court of Common Pleas (hereinafter, "trial court") with respect to the orchestrated perjured testimonies from Defendant Carter and state witness, Bruce Beatty. Defendant McDermott committed deliberate indifference and misconduct.

12.     Defendant Carter was allegedly forced to resign from the Philadelphia Police Department (hereinafter, "the PPD") part in connection with Plaintiff's criminal case, corruption, misconduct, perjury, and fraud against the Philadelphia Police Academy (hereinafter, "Academy"), with respect to special ballistics training, and among other reasons. Carter conspired and fabricated evidence to frame Plaintiff for a shooting that never happened. This *exculpatory evidence* exonerates Plaintiff of any guilt as a shooting never occurred, and a bullet mark never existed. The City of Philadelphia enabled the misconduct and concealment of the information regarding Carter's perjury. Plaintiff had to endure a wrongful felony conviction for thirty-six (36) years.

2

13.     Defendant Carter, while in police uniform, acted with deliberate indifference, knowingly causing Plaintiff to face a substantial risk of serious harm (false arrest, perjured testimonies, wrongful conviction, and unlawful imprisonment). Defendant Carter had actual knowledge of the risk of harm that Plaintiff faced, but failed to take reasonable measures to prevent, stop, or disclose it. Carter committed misconduct and acted with malice when she testified at Plaintiff's criminal trial as having observed a "fresh" bullet mark at the crime scene, and that she knew what a bullet mark looked like because she had seen **"hundreds"** of bullet marks at the Academy. Carter fabricated her scientific theory that a bullet mark leaves a specific mark, "A skid mark that had been dug up, about three inches in length...." An average lay person would have believed such a testimony from a cop. She gave this false testimony while acting under color of state and federal law. Carter failed in her affirmative due process obligation to inform the defense attorney, trial court, and appeal courts, of her perjured testimony at Plaintiff's trial. Her fraud, corruption, and misconduct allegedly led to the dismissal of other unrelated criminal cases.

14.     Defendant McDermott, while acting under color of state and federal law, committed prosecutorial misconduct, acting with deliberate indifference by knowingly causing Plaintiff to face a substantial risk of serious harm (false arrest, three perjured testimonies, wrongful conviction, and false imprisonment) by concealing this information from the defense counsel and trial court. By withholding the said information and evidence from the defense and trial court, she was able to mislead the Jury, and prevent Jury from being impartial, and unlawfully put Plaintiff in a state prison for ten (10) years so the said information would remain concealed.

15.     The PPD, while acting under color of state and federal law, acted with deliberate indifference by knowingly causing Plaintiff to face a substantial risk of serious harm (false arrest, perjured police testimonies, wrongful conviction, and unlawful imprisonment) by withholding the said information from the defense and trial court, so the information would remain concealed, which violated Plaintiff's constitutional rights and due process.

16.     Defendants, PPD, Carter, William Dorney, McDermott, and her office, acted with deliberate indifference by withholding the information (false arrest, perjured testimonies & fabricated evidence) from the defense counsel and trial court, which resulted in Plaintiff's wrongful conviction and false imprisonment.

17.     Defendants named herein did not work individually, but worked together acting with deliberate indifference by deliberately using the legal system to wrongfully convict Plaintiff for a crime that never happened.

18.     Plaintiff would like to emphasize that this is not a case where a shooting occurred, and the wrong person was imprisoned for ten years. This was a case of a fabricated shooting that never happened causing an innocent person to be wrongfully convicted and wrongfully imprisoned for a state prison term of ten years.

19.     On June 24, 2016, Plaintiff obtained a notarized sworn statement from Keenan Morris confirming that due to a *rubber backstop* at the end of the Academy, there are no such bullet ricochet marks as the shooting range is in a grassy fiend, which has no sidewalks or streets. **SEE EXHIBIT B**. Mr. Morris recently changed his occupation from a police officer to a fireman for the Philadelphia Fire Department. Mr. Morris is willing to testify under oath to the fact that there are no bullet marks at the Academy as testified and described by Defendant Carter. **SEE EXHIBIT B**. Other Philadelphia police officers have also contested Carter's testimony.

3

20.     Prior to Carter's discharge, she allegedly admitted to instructing Bruce Beatty to deny having a baseball bat and attacking Plaintiff on October 4, 1986, so Plaintiff would be arrested instead of Mr. Beatty even though Mr. Beatty admitted to striking Plaintiff's rental car with a bat.  Had the truth been presented to the Jury regarding the baseball bat, Plaintiff's self-defense claim would have prevailed.  A baseball bat is a deadly weapon.

21.     Defendant Carter further allegedly admitted to instructing Mr. Beatty to change his *Preliminary Hearing testimony* that he initially saw the bullet mark on the **sidewalk**, to testifying at the *trial* that he saw the bullet mark on the **street**, so his testimony would corroborate Carter's testimony to get a conviction, causing a miscarriage of justice and violating Plaintiff's constitutional rights.  Carter failed in her affirmative due process obligation to disclose her perjured testimony to the trial court.  The Superior Court was unable to rule on Mr. Beatty's change of testimony because Plaintiff's ineffective counsel failed to include the supporting notes of testimony and other issues, which prevent the appeal court from reaching the merits on two of the issues.

22.     Defendants, McDermott and Dorney, conspired thus instructing Carter to fabricate concrete evidence of a shooting by falsely testifying about her ballistics experience, and falsely claiming a "fresh" bullet mark was found at the alleged crime scene to get back at Plaintiff for his sexual preference, which confused and misled the Jury.  The said Defendants committed misconduct, and acted under color of state and federal law.

23.     The PPD allegedly gave Carter an alternative with respect to her disciplinary actions.  She was given an opportunity to forcibly resign or be terminated and criminally charged with misconduct, perjury, and corruption among other violations of departmental policies and laws.  Carter was a dirty, corrupt cop, and a liar.

24.     Defendant McDermott, acting with deliberate indifference, committed prosecutorial misconduct when she conspired, allowed, and instructed Carter to give perjured testimony claiming she saw **"hundreds"** of bullet marks at the Academy.  The perjured testimony prevented the Jury from being impartial, and was given to mislead the Jury into believing Plaintiff fired a shot at Bruce Beatty on October 4, 1986.  Philadelphia police are allegedly trained to lie to get a conviction for the prosecutor regardless of the person's guilt or innocence.

25.     Defendant McDermott, acting with deliberate indifference, further committed prosecutorial misconduct by conspiring, allowing, and instructing an employee from a Philadelphia car rental (Ugly Duckling) to give perjured testimony by falsely claiming the Ford LTD that Plaintiff rented, was no longer on their parking lot so his photographs of the baseball bat damaged rental car could be tossed, and to put doubt on Plaintiff's self-defense claim to the Jury.  The Jury was unable to be impartial on this matter.  Defense counsel was ineffective for failing Plaintiff's request to compare the rental car's vin number with the vin number on his rental contract.

26.     Defendant McDermott called Plaintiff a "loon" and prosecuted him with malicious intent to harm his reputation as a good law-abiding citizen by withholding information from the Jury, defense counsel, and trial court, with respect to Carter's planned perjured testimony of seeing "hundreds" of bullet marks at the Academy.  A shot was never fired as Plaintiff showed his firearm in self-defense to stop a baseball bat attack.  Defendant McDermott's motive for conspiring and maliciously prosecuting Plaintiff was a result of his secret sexual relationship.  The Jury was unable to be impartial on this matter as well, thus violating the U.S. Constitution.

27.     Defendant Carter knowingly committed misconduct by her perjured testimony regarding being able to characterize her ballistics experience at the Academy to a "fresh" bullet mark she discovered at the alleged crime scene on October 4, 1986. She added to her perjured testimony that she had seen "hundreds" of these same bullet marks at the Academy. Carter lied about her training in ballistics to qualify to testify as an expert to mislead the Jury and put doubt on Plaintiff's self-defense claim while acting under color of state and federal law.

28.     Mr. Beatty charged at Plaintiff with a wooden baseball bat and began striking Plaintiff's rental car with the bat to cause serious bodily harm upon Plaintiff at which time Plaintiff showed his firearm in self-defense to immediately stop the vicious baseball bat attack. Plaintiff's rental car sustained damage from the bat.

29.     Mr. Beatty's wooden baseball bat was no match to Plaintiff's firearm so he called police after Plaintiff and his friend, Samuel Blackwell, had left. Plaintiff was considered armed and dangerous but was not arrested until November 8, 1986, thirty-five (35) days after October 4, 1986, even though his place of residence, place of worship, and place of employment were known to the PPD and the Philadelphia District Attorney.

30.     Mr. Beatty is currently in state prison due to his lifestyle, raping an underaged girl, and Defendant Carter was separated from the PPD immediately after Plaintiff's criminal conviction.

31.     Defendants, PPD, Dorney, McDermott, and her office, knew there were no such bullet marks at the Academy as testified and described by Defendant Carter. The said Defendants also knew police recruits do not see any such bullet marks during their training because there is a *rubber ballistic backstop at the rear of the shooting range to catch the bullets and bullet fragments*, but Defendants failed to act to stop Defendant Carter from knowingly giving the said perjured testimony thus violating procedural due process.

32.     Defendants, PPD, Carter, Dorney, McDermott, and the Philadelphia District Attorney's Office, had a legal duty as public and court officers to immediately notify defense counsel and trial court of any exculpatory evidence (perjured testimonies) relating to Plaintiff's criminal case. Such failure violated Plaintiff's constitutional rights and caused a serious miscarriage of justice as the named defendants acted with deliberate indifference.

33.     Defendant Dorney was aware that his fellow officer, Defendant Carter, was a dirty cop and was violating Plaintiff's constitutional rights, but failed to take action to intervene and protect Plaintiff's rights. He knew Carter was fabricating evidence by falsely testifying as having seen detailed bullet marks at the Academy.

34.     On or about June 28, 2016, Lt. Edward Egenlauf (Open Records Officer) submitted an Affidavit stating, *"The Police Academy shooting range is an open-air range with a backstop at one end and walls along the left and right sides to prevent bullets from straying outside of the range. However, the range is not enclosed, and the walls to the left and right prevent individuals within the range from seeing any approaching individuals beyond the walls,"* which proves the Academy has no such skid marks as described by Carter. A true and correct copy of Lt. Egenlauf's Affidavit is part of the Court's record from Plaintiff's Initial Complaint's exhibits in this matter.

35.     Defendant, City of Philadelphia (PPD) failed to act to stop Defendant Dorney from supporting Carter's fabricated evidence (perjured testimonies) that was used to make it appear Plaintiff fired a shot at Mr. Beatty who attacked Plaintiff with a baseball bat thus violating Plaintiff's civil and constitutional rights.

36.     Plaintiff defended himself from the baseball bat attack but never fired his gun as falsely alleged by the Defendants.  He simply showed his firearm in self-defense to immediately stop the baseball bat attack.

37.     The said Defendants' misconduct included instructing Mr. Beatty to get friends to have Plaintiff arrested again on fabricated gun charges to portray him in a false light, as a dangerous person, which a Philadelphia Municipal Court Judge acknowledge and rightfully dismissed the two charges.  A true and correct copy of the First Judicial District of Pennsylvania Court Summary showing Plaintiff's two arrests is already part of this Court's record from his Initial Complaint's exhibits in this matter.  The two-gun cases were expunged as well.

38.     Had Defendants, PPD, Dorney, McDermott, and her office (Philadelphia District Attorney), not failed to act to immediately acknowledge, prevent, and/or stop the perjured testimonies during or before criminal trial, the criminal case would have been immediately dismissed like the other two harassing fabricated gun cases.

39.     The PPD took partial corrective action to cover up their mistakes and unlawful actions (deliberate indifference, misconduct, corruption, and conspiracy) by discharging Carter, but failed to disclose her perjured testimonies to the defense and trial court.  Defendants, PPD, Dorney, McDermott, and her office, failed to act to criminally charge Carter for her perjured testimonies and misconduct prior to, and after her discharge.

40.     Defendants, Carter, Dorney, McDermott, and her office, permanently damaged Plaintiff's good reputation, employment opportunities, college, and his quality of life by framing him for a shooting that never occurred.  Defendants failed to get a ballistic expert to investigate the alleged crime scene causing Plaintiff to be sentenced to ten years of government restraint and unlawful imprisonment at SCI-Smithfield, Huntingdon, PA, and parole.  Plaintiff's life was destroyed by having to live with an unlawful felony conviction for much of his life.

41.     The PPD and Philadelphia District Attorney's Office conspired for over a month to build a fabricated shooting case against Plaintiff before deciding to arrest him even though his identity, place of employment, church, and residence were available on the date of the October 4, 1986 alleged crime.

42.     The PPD and Philadelphia District Attorney's Office further conspired and waited thirty-five (35) days before deciding to arrest Plaintiff to prevent him from getting a gun residue test, which would have confirmed he did not discharge a firearm on October 4, 1986.

43.     Plaintiff has unsuccessfully challenged the current Post-Conviction Relief Act (PCRA) law that prevents him and similar individuals a fair opportunity to prove their innocence should any material information come to light after they are no longer serving a sentence and under government restraint, which makes the PCRA laws unconstitutional, unjust, and unfair.  Plaintiff's unlawful felony conviction was used to create criminal case law to frame additional innocent minorities with fabricated shootings to get unlawful convictions.

44.     Had Plaintiff not been African-American or gay, the *exculpatory evidence* would not have been withheld, and the weak criminal case against him would have never made it to trial.  The entire case was fabricated to discriminate and punish Plaintiff for having a secret sexual relationship with Bridgette Beatty's then boyfriend, Ronald Coleman.  Proof of the perjured testimonies and fabricated evidence could not have been ascertained by the exercise of due diligence due to the said Defendants' unlawful actions and concealment of the information.

45.     Had Plaintiff been a white male and straight, he would not have been arrested, and the criminal case would have been dismissed and never advanced to trial given the dirty cop and three perjured testimonies.

46.     Plaintiff's arrest for the alleged October 4, 1986 shooting was unlawful.  First, a shooting never occurred.  Secondly, Carter knowingly gave perjured testimony when she testified as having observed a bullet mark at the alleged crime scene on October 4, 1986.  Thirdly, Carter knowingly gave perjured testimony when she testified as having seen "hundreds" of bullet marks at the Academy.  Lastly, Defendant Carter and Bruce Beatty initially gave two (2) inconsistent locations for the alleged bullet mark, and later corroborated their false stories.

47.     On November 8, 2019, Plaintiff submitted a request for Clemency with his supporting evidence attached, as he has maintained his innocence throughout the pardon process after many failed attempts in having his wrongful conviction overturned by the state courts.  **SEE EXHIBIT C.**

48.     On August 3, 2022, at Plaintiff's Public Hearing, the Board of Pardons focused and elaborated at length on his self-defense claim used at his criminal trial, to which Plaintiff explained to the Board that he claimed self-defense throughout his criminal trial, post-trial motions, direct appeals, PCRA hearings, and pardon process.

49.     On December 2, 2022, Plaintiff was granted a Pardon by Governor Tom Wolf after submitting his supporting evidence to the Board of Pardons as instructed by an attorney at his last PCRA hearing.  **SEE EXHIBITS D-1 and D-2.**  Plaintiff's supporting evidence helped him get Pardoned, for which Governor Tom Wolf agreed upon. Clearly, Plaintiff has a colorable claim that he did not commit the criminal act for which he was convicted.  Plaintiff did not cause or contribute to his conviction.  In addition, Plaintiff did not ever knowingly and voluntarily plead guilty to the crimes for which he was convicted.  Plaintiff has always maintained his innocence.

50.     On December 12, 2022, Plaintiff followed through with the Governor's *executive order* and filed a Petition for Expungement pursuant to Pa.R.Crim.P. 790.  A hearing was scheduled for March 17, 2023 and granted despite the Philadelphia District Attorney Office's retaliatory and harassing objection.  **SEE EXHIBITS E-1 and E-2.**

51.     Plaintiff would like to subpoena a ballistic expert and personnel from the Academy's shooting range to describe the bullet marks, the layout of the Academy's shooting range, the ballistic rubber backstop's purpose, and what police cadets experience during their training with respect to any bullet ricochet marks.

52.     Plaintiff was wrongfully convicted based upon fabricated evidence (an alleged bullet mark), corroborated perjured testimonies of Carter and Mr. Beatty, prosecutorial misconduct, and malicious prosecution, which violated his constitutional rights and due process.  The Jury heard Carter's scientific theory of a bullet mark.

53.     Plaintiff's Fourteenth Amendment rights to substantive and procedural due process were violated when Defendant Carter, acting with deliberate indifference, to a serious risk of harm to Plaintiff, conspired, contributed to, and allowed false criminal charges to be filed against Plaintiff, and then withheld information (conspiracy, fabricated evidence & perjured testimonies including her scientific theory) from the defense, trial court, and appeal courts.  Carter did not care about the risk of harm to herself nor Plaintiff thus knowing how dangerous prison conditions were for an innocent person of Plaintiff's condition and given his secret sexual preference.  She was the real criminal in blue and deserved to be fired from the PPD.

54.     Plaintiff's Fourteenth Amendment rights to substantive and procedural due process were violated when Defendant McDermott and her office, knowingly acted with deliberate indifference to a serious risk of harm to Plaintiff, conspired, contributed to, and allowed false criminal charges to be filed against Plaintiff and withheld this information (conspiracy, fabricated police evidence & perjured testimonies including Carter's false scientific theory) from the defense counsel, trial court, and appeal courts.  McDermott and her office, the Philadelphia District Attorney's Office, did not care about the risk of harm to herself nor Plaintiff thus knowing how dangerous prison conditions were for an innocent person of Plaintiff's condition given his sexual preference.

55.     Plaintiff's Fourteenth Amendment rights to substantive and procedural due process were violated when Defendant Dorney, knowingly acted with deliberate indifference to a serious risk of harm to Plaintiff, conspired, contributed to, and allowed false criminal charges to be filed against Plaintiff, and withheld this information (conspiracy, fabricated evidence & perjured testimonies including Carter's false scientific theory) from defense, trial court, and appeal courts.  Dorney did not care about the risk of harm to himself nor Plaintiff knowing how dangerous prison conditions were for an innocent person of Plaintiff's condition giving his sexual preference.

56.     During Plaintiff's wrongful imprisonment, he had to endure his mother's death, and an infectious disease in his post-neck known as *Microbacterium Fortuitum*.  The prison's medical staff did not know what the infectious disease was or how to treat it.  Plaintiff had to wait until his release onto parole to find an infectious disease specialist at the Thomas Jefferson Hospital of Philadelphia, to finally cure the stubborn infectious disease.

57.     Plaintiff was terminated from his employment at the Oak Grove Baptist Church in Philadelphia after changes in the law required a federal child abuse clearance, which revoked his previous PA Department of Human Service clearance as a result of his felony conviction.  His felony conviction prohibited working around children.  **SEE EXHIBIT C**.  Plaintiff was also refused other employment opportunities at SEPTA and PATCO.

58.     Plaintiff had to suffer tremendously with a serious felony conviction for 36 years and being considered a dangerous person, which destroyed much of his life.

59.     Plaintiff had ineffective assistance of counsel who failed to investigate Defendant Carter's ballistics experience and bullet marks at the Academy, if any, prior to the trial and after the trial.  Plaintiff's ineffective assistance of counsel also failed to impeach Mr. Beatty regarding his sudden change of testimony.

60.     Plaintiff is/was factually innocent of the criminal charges against him.  Defendants committed procedural errors, which violated Plaintiff's civil and constitutional rights including due process.

61.     Plaintiff aver that as a result of his unlawful felony conviction and damaging reputation as a dangerous person, he had to drop out of Community College of Philadelphia as a music education major to serve his state prison sentence.  He was attending college to become a music education college professor.  His unlawful criminal conviction prevented him from being able to return to college to become a music education college educator.  He was told by several colleges that due to his felony conviction; he was unable to attend college.

62.     On July 18, 2016, Plaintiff sent Governor Tom Wolf a letter via Certified Mail regarding his unlawful arrest, police corruption, perjured testimonies, and unlawful imprisonment.  **SEE EXHIBIT F**.

8

63.     Had the said defendants including Carter, not conspired with Mr. Beatty, and lied about seeing bullet marks at the Academy, and at the alleged crime scene, the Jury would have returned a not guilty verdict.

64.     Plaintiff aver that defendant McDermott was not acting within her prosecutorial duties when she committed the misconduct, and knowingly acted with deliberate indifference to cause him a great harm/injury.

65.     This Honorable Court should entertain this amended complaint because the defendants name herein have committed concealment, misconduct, corruption, conspiracy, and prosecutorial misconduct, which violated Plaintiff's civil and constitutional rights and permanently destroyed his life and reputation by using a corrupt cop as a ballistic expert to give perjured testimony, and mislead the Jury thus resulting in an unlawful conviction and wrongful imprisonment. The said Defendants should be held accountable and allowed to be sued in their individual capacities, and not be protected by any immunity.

66.     **Plaintiff would like to conduct discovery with this Amended Complaint.  SEE EXHIBITS G and H.**

67.     Plaintiff has no other remedy at law.

### Claims

### First Cause of Action

68.     The action of the defendants as stated in Paragraphs 6 through 67 denied the Plaintiff due process of law in violation of the Fifth, Sixth and Fourteenth Amendment Rights.

### Second Cause of Action

69.     The actions of the Defendants as stated in Paragraphs 6 through 67 demonstrates deliberate indifference, official misconduct, and denied Plaintiff of his due process of law and equal protection law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and State Law.

70.     Plaintiff's Fifth, Sixth, and Fourteenth Amendment Rights were violated when:

a.)     Defendants, PPD, Carter, Dorney, McDermott, and her office, knowingly acted with deliberate indifference to a serious risk of harm to Plaintiff, by unnecessarily delaying his criminal charges and criminal trial, and deliberately withholding information from the trial court, defense counsel, and appeal courts;

b.)     Defendants knowingly withheld fabricated evidence and perjured testimonies for thirty-six (36) years, preventing Plaintiff a timely opportunity to seek collateral relief to prove his innocence;

c.)     Defendants failed in their legal duty as public and court officers to disclose Plaintiff's false arrest, perjured testimonies, fabricated evidence, and to ascertain that the law is enforced and obeyed;

d.)     Defendants knowingly acted with deliberate indifference to a serious risk of harm to Plaintiff by conspiring, instructing, and allowing Defendant Carter to fabricate evidence to create concrete evidence (a fabricated bullet mark) to frame him for a fabricated shooting;

e.)     Plaintiff's Fourteenth Amendment rights to substantive and procedural due process were violated when defendants, PPD, Carter, Dorney, McDermott, and her office, knowingly acted with deliberate indifference to a serious risk of harm to Plaintiff by allowing false criminal charges to be filed against him, and allowed the false criminal charges to proceed to trial, and arrested him without probable cause;

f.)       Defendants conspired and allowed a lying, corrupt cop with no ballistic training or experience, to give unlawful expert testimony about ballistics to confuse, poison, and mislead the Jury;

g.)       Defendants conspired to conceal their crimes (concealment of false arrest, fabricated police evidence, and three perjured testimonies);

h.)       Defendants tampered with, changed, fabricated, and destroyed police evidence;

i.)       Defendants conspired and failed to arrest Plaintiff for the alleged shooting until over thirty (30) days later to prevent him from getting a hand/cloth swab gun residue test;

j.)       Defendants conspired and arrested Plaintiff, who acted in self-defense instead of the actual attacker, Bruce Beatty, after he admitted to attacking Plaintiff with a baseball bat;

k.)       Defendant Carter conspired and instructed Bruce Beatty to change his initial Preliminary Hearing testimony to have an innocent person wrongfully convicted of a crime that never occurred;

l.)       Defendants destroyed 36-years of Plaintiff's life by causing a wrongful felony conviction, which greatly impacted his life, employment, and health;

m.)       Defendants' conspiracy and misconduct forced Plaintiff to drop out of college for music education and shattered his dream and plan of becoming a school music teacher; and,

n.)       Defendants' misconduct and deliberate indifference caused Plaintiff to struggle with a crippling felony conviction and reputation as a dangerous convict for thirty-six (36) years.

### Third Cause of Action

71.       The actions of the Defendants as stated in Paragraphs 6 through 67 violated federal civil rights laws by discriminating against Plaintiff.

72.       The actions of the Defendants as stated in Paragraphs 6 through 67 are not protected under the Eleventh Amendment.

73.       The aforementioned Defendants were acting under the color of state and Federal law at the time of the alleged incidents.

74.       Defendant Carter was not allowed to violate state or federal law in her official capacity.

75.       Defendant McDermott was not allowed to violate state or federal law in her official capacity.

76.       Defendant Dorney was not allowed to violate state or federal law in his official capacity.

77.       The actions of the Defendants (and/or their employees) have denied Plaintiff's rights in violation of 42 U.S.C. § 1983 and the U.S. and State Constitutions, including the common law.

### Fourth Cause of Action

78.       The actions of the Defendants as stated in Paragraphs 6 through 67 violated federal civil rights laws by harassing and discriminating against Plaintiff by prosecuting him with malicious intent by using and then concealing the fabricated evidence to cover their crimes while acting under color of state and Federal laws.

### Fifth Cause of Action

79.     The actions of the Defendants as stated in Paragraphs 6 through 67 violated federal civil rights laws including the Fourth Amendment when Plaintiff was framed and unlawfully arrested by the Defendants without probable cause.  During the thirty-six days of the conspiracy to build fabricated evidence and find something for which to arrest Plaintiff, he was ultimately arrested with a lack of probable cause.

WHEREFORE, Plaintiff demands judgment in excess of $1,000,000.00 for each year he was falsely imprisoned and under government restraint, and the aforementioned damages, in addition to interest from the date of the loss, the costs of this lawsuit, legal fees, punitive damages, and whatever additional relief the Court may deem proper.

### PRAYER FOR RELIEF

Accordingly, the Plaintiff demands damages in excess of $1,000,000.00 to include;

1.     Punitive Damages
2.     The Costs of this lawsuit with legal fees
3.     The Costs of having to live with a felony conviction and reputation as a dangerous person
4.     Damages for his mental destress and embarrassment
5.     Damages for his injury
6.     Prejudgment and post judgment interest
7.     Damages attributable to the accused officer herself
8.     Damages attributable to the accused officer himself
9.     Damages attributable to the accused prosecutor herself
10.    Damages for false arrest and false imprisonment
11.    Whatever other relief the Court deems proper

Respectfully submitted,

Andrew Fullman, Plaintiff

Date:  May 4, 2023

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW FULLMAN | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PHILADELPHIA, | ) | |
| JOHNNIE MAE CARTER #1305, | ) | |
| BARBARA A. MCDERMOTT, | ) | |
| WILLIAM DORNEY, | ) | |
| | ) | |
| Defendants. | ) | No. 17-2673 |

## UNSWORN DECLARATION

I, Andrew Fullman, do hereby verify that the facts set forth in the within Amended Civil

Complaint, are true and correct to the best of my personal knowledge or information and belief, and that any false

statement therein are made subject to the penalties relating to unsworn falsification to authorities.  See Title 28

Section 1746.

EXECUTED ON May 4, 2023

Andrew Fullman
Pro Se Plaintiff

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW FULLMAN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | **NO. 17-2673** |

*FILED*

JUL 3 1 2017

KATE BARKMAN, Clerk
By_____Dep. Clerk

**MEMORANDUM**

**ROBRENO, J.**                                                        JULY 31, 2017

Plaintiff Andrew Fullman brings this civil action pursuant to 42 U.S.C. § 1983, against

the City of Philadelphia and others based on an alleged wrongful conviction and the police

department's unrelated failure to investigate certain recent crimes that plaintiff reported.

Plaintiff seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant

plaintiff leave to proceed *in forma pauperis* and dismiss his complaint.

## I.      FACTS[1]

Plaintiff was convicted of aggravated assault and gun-related offenses in 1987, for having

shot at Bruce Beatty in the course of an interaction between the two men. *See Commonwealth v.*

*Fullman*, Docket No. CP-51-CR-1124071-1986 (Phila. Ct. of Common Pleas). Plaintiff alleges

that, although he displayed his gun after Beatty attacked him with a baseball bat, he never shot at

Beatty in the course of the incident. Plaintiff was convicted based in part on the trial testimony

of Officer Johnnie Carter, who testified that she observed a mark at the scene that was consistent

with a bullet ricochet mark. Officer Carter testified that she could characterize the mark based

on her experience having seen bullet ricochet marks at the Police Academy firing range.

---

[1] The following facts are taken from the complaint, exhibits attached to the complaint, and the
docket for plaintiff's underlying conviction.

EXHIBIT A (9) Pages

CC: A. Fullman

Plaintiff was sentenced to a term of five to ten years of imprisonment, which he has served in full.

It appears that plaintiff filed a petition for post-conviction relief in 2011 based on newly discovered evidence "of police perjury and falsification of evidence." (Compl. Ex. E-2 at 2, ¶ 5.) Specifically, plaintiff learned that Officer Carter had been "discharged for unprofessional behavior, corruption, and for committing perjury regarding her testimony about observing bullet ricochet marks at the Philadelphia Police Academy, which was impossible due to the layout and rubber backstop the Academy used to catch bullets." (*Id.* at 7.) The judge presiding over the case denied the petition because the fact plaintiff had finished serving his sentence precluded him from obtaining relief under Pennsylvania's Post-Conviction Relief Act (PCRA).

Plaintiff filed a second petition for post-conviction relief on November 28, 2016, following his discovery on October 14, 2016 of allegedly exculpatory evidence including "Officer Carter's admittance to instructing Bruce Beatty to deny having a baseball bat [at the time of the incident] and instructing [Beatty] to change his *preliminary hearing testimony* that he initially saw the bullet mark on the sidewalk, to testifying at the *trial* that he saw the bullet mark on the street so it would be consistent with Officer Carter's false testimony to create false concrete evidence of a shooting to have [plaintiff] falsely convicted." (Compl. Ex. E-2 at 7.) As with his first petition, plaintiff's second petition was dismissed because he had already served his sentence.

In his complaint in the instant civil action, plaintiff alleges that the Philadelphia Police Department and Philadelphia District Attorney "maliciously withheld exculpatory evidence regarding his criminal case to win their false charges against him and to conceal prosecutorial misconduct, conspiracy, corruption and obstruction of justice in the case." (Compl. at 2, ¶ 10.) As in his petition for post-conviction relief, plaintiff contends that Officer Carter falsely testified

against him at trial to frame him for a shooting that did not occur. He believes that he was framed because he is African-American and homosexual. Plaintiff attached to his complaint a copy of his second post-conviction petition and an affidavit of a police officer who attested that he attended the Police Academy in May of 2000, and that the layout of the firing range makes it impossible for there to be bullet ricochet marks. Plaintiff also alleges that the PCRA is unconstitutional because it does not provide a basis for him to challenge his conviction now that he has finished serving his sentence.

Unrelated to his criminal conviction, plaintiff witnessed two shootings in May and August of 2014. Plaintiff reported the crimes, but the Philadelphia Police Department was allegedly unwilling to investigate and Seth Williams, the Philadelphia District Attorney at the time, was allegedly unwilling to prosecute the perpetrators despite knowing their identities. Plaintiff further alleges that police officers covered up evidence of the shooting, and that the Internal Affairs Division failed to investigate the cover-up. Exhibits to the complaint reflect that the Internal Affairs Division conducted an investigation in response to plaintiff's concerns and determined that plaintiff's allegations were unfounded. Plaintiff also alleges that certain police officers informed one of the shooters that he had given a statement, and that the alleged shooter "harassed and intimidated" plaintiff for having given that statement to the police. (Compl. at 6, ¶ 42.) Letters attached to the complaint suggest that plaintiff believes his statement was shown to the perpetrators in retaliation for plaintiff having filed complaints against the police.

Based on the facts above, plaintiff initiated this civil action, pursuant to 42 U.S.C. § 1983, against the City of Philadelphia, the Philadelphia Police Department and its Internal Affairs Division, the Philadelphia District Attorney (by which plaintiff appears to mean the District Attorney's Office), Seth Williams (until recently the Philadelphia District Attorney), Barbara

3

McDermott (at the time the Assistant District Attorney who prosecuted plaintiff), and Richard Ross, Jr (Commissioner of the Philadelphia Police Department). He primarily seeks damages. He also asks the Court to "[o]rder the [Police] Department and Philadelphia District Attorney to properly investigate" the 2014 shootings. (Compl. at 7, ¶ 49.)

## II.     STANDARD OF REVIEW

The Court grants plaintiff leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* The Court may also consider matters of public record and exhibits attached to the complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

### A. Claims Against Departments of the City of Philadelphia

Plaintiff's claims against the Philadelphia Police Department, the Internal Affairs Division, and the Philadelphia District Attorney's Office must be dismissed because those entities are not separately suable from the City of Philadelphia. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997); *Gremo v. Karlin*, 363 F. Supp. 2d 771, 780 (E.D. Pa. 2005); *see*

*also* 53 Pa. Cons. Stat. Ann. § 16257.  Accordingly, the Court will dismiss any claims against

those entities and construe them as having been brought against the City of Philadelphia, which

is also a defendant in this matter.

### B.  Claims Based on Plaintiff's Conviction and Imprisonment

Plaintiff cannot state a cognizable claim based on his allegations that Officer Carter

falsely testified against him at trial and conspired with Beatty to frame him for a shooting that

did not occur.  In *Heck v. Humphrey*, the Supreme Court held that "to recover damages for

allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove

that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S.

477, 486-87 (1994) (footnote and citation omitted).  Accordingly, "a section 1983 action for

damages [based on unconstitutional conviction and imprisonment] must be dismissed unless

there was no conviction or sentence or the plaintiff can demonstrate that a conviction or sentence

has already been invalidated." *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) (internal

quotations, citations, and alteration omitted).

Here, plaintiff alleges that Officer Carter conspired with Beatty to frame him for a shooting

that did not take place and that he was arrested, prosecuted, and convicted based on Officer

Carter's false police report and false testimony.  However, success on those allegations would

necessarily imply the invalidity of plaintiff's intact convictions. *See Skinner v. Switzer*, 562 U.S.

521, 536 (2011) ("[A] *Brady* claim, when successful postconviction, necessarily yields evidence

undermining a conviction.").  The Court appreciates that plaintiff lacks the ability to challenge

his convictions under Pennsylvania's Post-Conviction Relief Act or by filing a petition for a writ of *habeas* corpus. *See Maleng v. Cook*, 490 U.S. 488, 492 (1989) ("[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it."); *Commonwealth v. Ahlborn*, 699 A.2d 718, 720 (Pa. 1997) ("The statute clearly contemplates that the petitioner will be serving a sentence at both the pleading and proof stages of the proceeding."). However, that reality does not alter the conclusion that *Heck* renders plaintiff's claims non-cognizable while his convictions remain intact.[2] *See Williams v. Consovoy*, 453 F.3d 173, 179 (3d Cir. 2006) (claims that are otherwise barred by *Heck* are not cognizable merely because *habeas* relief is no longer available). In the event plaintiff manages to successfully invalidate his convictions in the future, he may reassert his claims.[3]

Plaintiff's challenges to the constitutionality of the PCRA are cognizable in a § 1983 action. *See Skinner*, 562 U.S. at 534. Notably, the Pennsylvania Supreme Court has rejected an argument that the PCRA is unconstitutional for failing to provide post-conviction relief to individuals who have served their sentences, holding that "[b]ecause individuals who are not serving a state sentence have no liberty interest in and therefore no due process right to collateral review of that sentence, the statutory limitation of collateral review to individuals serving a

---

[2] In any event, Barbara McDermott is entitled to absolute prosecutorial immunity from plaintiff's claims because she is being sued for acts she took in the course of prosecuting the Commonwealth's case against plaintiff. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case").

[3] "[T]he statute of limitations [on *Heck*-barred claims] begins to accrue when the termination of criminal proceedings becomes favorable; that is, when 'the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.'" *Curry*, 835 F.3d at 379 (quoting *Heck*, 512 U.S. at 487).

procedure that violated plaintiff's rights. *See Barnes v. First Corr. Med.*, 463 F.3d 307, 320

sentence of imprisonment, probation, or parole is consistent with the due process prerequisite of

a protected liberty interest." *Com. v. Turner*, 80 A.3d 754, 766 (Pa. 2013). This Court need not

address the merits of plaintiff's challenge, however, because none of the defendants whom he

sued are appropriate defendants for purposes of bringing such a claim.

### C. Failure to Investigate 2014 Shooting Incidents and Prosecute Perpetrators

Plaintiff cannot state a claim based on any failure to investigate the 2014 shootings and arrest

and prosecute the perpetrators. "[A] private citizen lacks a judicially cognizable interest in the

prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619

(1973). Furthermore, "an allegation of a failure to investigate, without another recognizable

constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F.

App'x 378, 383 (3d Cir. 2003) (quotations omitted). Accordingly, plaintiff cannot bring any

claims based solely on alleged failures of individuals in the police department and District

Attorney's Office to investigate, arrest, and prosecute criminals, even if he personally reported

the crimes. *See Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per

curiam) ("Boseski has no cognizable claim against a government entity for its failure to

investigate or bring criminal charges against another individual."). In any event, Seth Williams

is entitled to absolute immunity from § 1983 claims for damages based on any involvement he

had as District Attorney in whether the office would prosecute charges in the cases in question.

*See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

To the extent plaintiff is raising a retaliation claim or a claim based on the disclosure of his

statement, he has not stated a claim against the named defendants.[4] "Because vicarious liability

---

[4] This is not the first time that plaintiff has claimed to be a victim of retaliation. *See Fullman v. City of Philadelphia*, No. CV 10-1536, 2016 WL 7383194, at *11 (E.D. Pa. Dec. 20, 2016).

is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The complaint fails to explain how any of the named defendants were responsible for any alleged constitutional violations related to the 2014 shootings, whether due to their own misconduct or their deliberate indifference to known deficiencies in a policy or procedure that violated plaintiff's rights. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds, Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Plaintiff has also failed to state a claim against the City, because he has not identified a municipal policy or custom that led to any violation of his rights. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiff's complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff will not be given leave to amend his claims that are barred by *Heck* because amendment would be futile, although he may refile those claims if his convictions are ever invalidated. However, plaintiff may file an amended complaint as to his other claims in the event he can state a plausible basis for relief. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW FULLMAN                    :          CIVIL ACTION

v.                                :

CITY OF PHILADELPHIA, et al.      :          NO. 17-2673

FILED
JUL 3 1 2017
KATE BARKMAN, Clerk
By_____Dep. Clerk

### ORDER

AND NOW, this **31** day of July, 2017, upon consideration of plaintiff's motion to proceed *in forma pauperis* and his *pro se* complaint, it is ORDERED that:

1.      Leave to proceed *in forma pauperis* is GRANTED.

2.      The complaint is DISMISSED for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for the reasons stated in the Court's Memorandum.

3.      Plaintiff is given thirty (30) days to file an amended complaint.  If he chooses to file an amended complaint, plaintiff is reminded that he must identify all defendants in the caption of the amended complaint and state the factual basis for his claims against each named defendant.  Plaintiff may not reassert any claims barred by *Heck* in his amended complaint; however, those claims are dismissed without prejudice to plaintiff filing a new civil action against an appropriate defendant(s) in the event his convictions are invalidated.  If plaintiff fails to file an amended complaint, his case may be dismissed for failure to prosecute.

4.      Upon the filing of an amended complaint, the Clerk shall not make service until so ORDERED by the Court.

BY THE COURT:

_____
EDUARDO C. ROBRENO, J.

cc: A. Fullman

# EXHIBIT B

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

### <u>SWORN STATEMENT</u>

I, Keenan Morris being sworn, hereby state the following.:

1)  I attended the Philadelphia Police Academy on or about May of 2000 and successfully completed my police recruit training and was hired by the Southeastern Pennsylvania Transportation Authority (SEPTA) as a Septa Police Officer in Philadelphia County.

2)  During my recruit training at the Philadelphia Police Academy, I never observed any bullet ricochet marks at the shooting range which would be impossible due to the layout of the firing range and rubber like material at the end of the firing range used to catch the bullets.   The shooting range is located in a field that is mostly grass.   To the best of my personal knowledge and experience, there aren't any bullet ricochet marks at the Philadelphia Police Academy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.   I understand that the statement(s) herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Respectfully submitted,

Date: _July 24, 2016_____

_Keenan Morris_____
Keenan Morris

Sworn to and subscribed before me this

_24th_day of _June_____, 2016.

_Norbu Lama_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
NORBU LAMA, NOTARY PUBLIC
CITY OF PHILADELPHIA, PHILADELPHIA COUNTY
MY COMMISSION EXPIRES FEB 9, 2019

EXHIBIT B

# EXHIBIT C

# Pennsylvania Board of Pardons
# Application for Clemency

This application is for both **non-incarcerated** (public) and **incarcerated** (confined) applicants to complete.

**Official Use Only. Do not complete this Section.**

| Application Number: | Board of Pardons Number: | Session Date: |
|---|---|---|
| | | |

## Section 1:  Type of Clemency Requested

- [x] Pardon
- [ ] Commute Life Imprisonment to Life on Parole
- [ ] Commute Death Sentence to Life Imprisonment
- [ ] Commute Parole
- [ ] Commute Minimum Sentence
- [ ] Commute Maximum Sentence
- [ ] Expedited Review for: Non-violent Marijuana Conviction(s) and or Paraphernalia

Have you previously filed a clemency application in any state, including Pennsylvania, or with the federal government?
- [ ] Yes (If yes, please provide all known information from your most recent filing.)   [x] No

| Date Applied | Application Number | State | Granted or Denied | Date Granted (if applicable) |
|---|---|---|---|---|
| | | | | |

## Section 2:  Applicant Information

| Preferred Salutation: | First Name: Andrew | Full Middle Name (if applicable): — | Last Name: Fullman | Suffix (if applicable): |
|---|---|---|---|---|

Aliases and Other Names:  State every other name by which you have been known. Include maiden names, names by a former marriage, aliases and nicknames.

N/A

Date of Birth: 05/20/1965

Social Security Number: 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

Name of Institution (if applicable): N/A

Inmate Number (if applicable): N/A

Parole Number (if applicable): N/A

Address (Number and Street): 810 Arch Street

Apartment Number/Floor (if applicable): 304

| City: Philadelphia | State: PA | Zip Code: 19107 | Email Address (if applicable): Andrewf816@gmail.com |
|---|---|---|---|

Primary Phone Number (if applicable): (610) 457-9498

Secondary Phone Number (if applicable): (610) 457-9498

Representation: [x] Self (Proceed to Section 3)
- [ ] Friend
- [ ] Family Member
- [ ] Attorney
- [ ] Board of Probation and Parole (See Below)

Representative's Name:

Address:

Currently incarcerated applicants must have representation as they <u>cannot</u> represent themselves if granted a public hearing. If representation is needed, contact the:

Pardons Case Specialist/Parole Manager
Bureau of Standards and Accreditation
Pennsylvania Board of Probation and Parole
1920 Technology Parkway
Mechanicsburg, PA 17050
(717) 728-0386 or (717) 728-4727

Telephone Number:

Email Address:

EXHIBIT C   (52) Pages

**Section 3: Convictions For Which Clemency Is Requested**

**Case #1 (Oldest Case)**

| Date of Incident: | Offense(s): | Official Use Only. Do not complete this Section. | |
|---|---|---|---|
| | | Sentence(s): | Grading: |

10/04 /1986

1. Aggravated Assault
   Simple Assault
2. _____
3. Possessing Instrument of Crime

**Arrest Date:**

11/ 08/1986

4. _____
5. _____
6. _____

**OTN Number:**

M2881782

7. _____
8. _____
9. _____
10. _____

**Describe the incident and how you were involved. Where were you, what exactly did you do, and how were you caught?**

On October 4, 1986, I was returning from watching airplanes land at the Philadelphia International Airport with a friend named Samuel Blackwell, when Mrs. Barbara Beatty saw me and called out, "Andrew, come back, I want to talk to you!" Upon backing up, Mrs. Beatty's son, Bruce Beatty, darted out of the house with a wooden baseball bat and began to attack me thus striking my car. The attack caught us by surprise and I went into my briefcase, retrieved my empty gun and displayed it in self-defense to stop the attack but I never fired my gun even though it would have been self-defense. Upon seeing the gun Mr. Beatty immediately stopped the attack and backed up at which time Mr. Blackwell drove away. Approximately five (5) weeks later, I was arrested for allegedly firing a shot at Mr. Beatty. I was considered armed and dangerous, but still allowed to remain free for over a month after the alleged shooting. The Philadelphia Police Department decided not to arrest me until approximately five (5) weeks after the October 4, 1986 alleged incident, even though my identity, residence, and place of employment at the United States Postal Service were available on the date of the incident. The delay in arresting me prevented a ballistic investigation of the crime scene and also prevented me from getting my hands swabbed for gun residue which would have proven I did not fire my gun on October 4, 1986. Philadelphia Police Officer Johnnie Mae Carter, Badge No. 1305, testified at my criminal trial that she saw a fresh bullet mark in the street at the crime scene and had seen hundreds of bullet ricochet marks during her training at the

XXCheck this box if you are attaching a Section 3 supplemental page.

**Official Use Only. Do not complete this Section.**

Plea/Verdict: _____     County: _____

Plea/Verdict Date: _____     Sentence Date: _____

Docket Number: _____     Financial Obligations Satisfied: ☐Yes ☐No     Balance $ _____

2

| Section 3:  Additional Offenses, Sentences, & Facts of Incident (Supplement) | | |
|---|---|---|
| Case #: | OTN #: M2881782 | **Official Use Only. Do not complete this Section.** |

**Additional Offenses from Section 3:**

Docket Number:

| | Sentence(s): | Grading: |
|---|---|---|
| 11_____ | | |
| 12_____ | | |
| 13_____ | | |
| 14_____ | | |
| 15_____ | | |
| 16_____ | | |
| 17_____ | | |
| 18_____ | | |
| 19_____ | | |
| 20_____ | | |

**Additional Facts from Section 3:**

Philadelphia Police Academy. **See Exhibit "A"**. Officer Carter's testimony that she could characterize the alleged ricochet mark based on her experience of having seen "hundreds" of bullet ricochet marks at the Philadelphia Police Academy's firing range sounded logical to a reasonable or lay person such as a jury, but it was a serious misrepresentation of facts. An investigation years later revealed that there are no such bullet ricochet marks at the Philadelphia Police Academy as described by Officer Carter due to a rubber backstop at the end of the firing range which is used to catch bullets and bullet fragments. In addition, Mr. Beatty initially testified at the preliminary hearing that he saw the bullet ricochet mark on the sidewalk, and at trial he changed his testimony and testified that the bullet ricochet mark was in the street even though I was on the passenger side of the car which was parked against the curb on the right side of the street where Mr. Beatty was standing with the wooden baseball bat still in his hand.

Important exculpatory evidence, which was withheld from me and my defense attorneys for over thirty-three (33) years, was leaked on October 14, 2016. When the leak of new information occurred, it had compelling information that revealed that prior to Officer Carter's discharge from the Philadelphia Police Department for misconduct among other reasons, she admitted to instructing the state's witness, Bruce Beatty, to deny having a baseball bat on October 4, 1986, and further intructed him to change his preliminary hearing testimony that he initially saw the bullet ricochet on the sidewalk, to testifying at the trial that he saw the bullet mark on the street so his testimony would be consistent with her testimony, thus creating false concrete evidence to support that a shooting had occurred to have me falsely convicted. (*This leaked exculpatory evidence and Officer Carter's termination reportedly for lying under oath about her ballistic experience and misconduct was never meant for me to learn about

3.

## Section 3:  Convictions For Which Clemency Is Requested (Supplement)

Case # _____

| Date of Incident:<br><br>____/____/____<br><br><br>Arrest Date:<br><br>____/____/____<br><br><br>OTN Number:<br>M2881782 | Offense(s):<br>1.<br>2.<br>3.<br>4.<br>5.<br>6.<br>7.<br>8.<br>9.<br>10. | **Official Use Only. Do not complete this Section.**<br>Sentence(s): | Grading: |
|---|---|---|---|

Describe the incident and how you were involved. Where were you, what exactly did you do, and how were you caught?

according to an attorney.) Philadelphia Assistant District Attorney Barbara McDermott (now a Common Pleas Court Judge), used Officer Carter's fabricated testimony to form a case against me. Officer Carter was discharged from the Philadelphia Police Department decades before the obstruction of justice and prosecutorial misconduct came to light. Officer Keenan Morris, who also attended and graduated from the Philadelphia Police Academy, submitted a sworn statement which totally contradicts Officer Carter's testimony of having seen hundreds of bullet ricochet marks at the Police Academy. Officer Morris stated that such bullet marks as described by Officer Carter are nonexistent at the Philadelphia Police Academy because the firing range is in a grassy field and has a rubber backstop at the end of it. **See Exhibit "B"**. A few other Philadelphia police officers and a sergeant also confirmed that there are no such bullet ricochet marks at the Philadelphia Police Academy's firing range. Had this exculpatory evidence been available and presented to the Court or my direct appeal attorneys prior to the expiration of my parole, the Court would have acquitted me and proceeded with prosecuting Officer Carter for obstruction of justice and tampering with evidence and a state's witness.

Friends of the Beatty family including Bridgette Beatty's boyfriend, Ronald Coleman, also had me falsely arrested on additional gun charges twice to

☒ Check this box if you are attaching a Section 3 supplemental page.

**Official Use Only.  Do not complete this Section.**

Plea/Verdict: _____   County: _____

Plea/Verdict Date: _____   Sentence Date: _____

Docket Number: _____   Financial Obligations Satisfied: ☐Yes ☐No   Balance $ _____

4.

## Section 3: Convictions For Which Clemency Is Requested

### Case #1 (Oldest Case)

| Date of Incident: | Offense(s): | Official Use Only. Do not complete this Section. | |
|---|---|---|---|
| | | Sentence(s): | Grading: |
| ___/___/___ | 1._____ | | |
| | 2._____ | | |
| | 3._____ | | |
| Arrest Date: | 4._____ | | |
| | 5._____ | | |
| ___/___/___ | 6._____ | | |
| | 7._____ | | |
| OTN Number: | 8._____ | | |
| M2881782 | 9._____ | | |
| | 10._____ | | |

**Describe the incident and how you were involved. Where were you, what exactly did you do, and how were you caught?**

harass me and to portray me in a false light to help convict me on the charges for which I'm seeking a pardon. However, the Honorable Court recognized the conspiracy and dismissed both cases. In addition, the Community Legal Services has recently removed those criminal charges from my arrest record via expungement. **See Exhibit "C".**

WHEREFORE, I respectfully cannot admit to this crime while being truthful because I did not fire my gun, but I do take full responsibility for showing my gun and putting myself in this situation on October 4, 1986. I am very sorry for the incident. Had I've gone to the shooting range first as initially planned, I wouldn't have gotten myself into this situation. **See Exhibit "D".** Therefore, I am respectfully requesting a pardon for this alleged crime. Thank you very much.

x☒ Check this box if you are attaching a Section 3 supplemental page.

*Official Use Only.  Do not complete this Section.*

Plea/Verdict: _____     County: _____

Plea/Verdict Date: _____     Sentence Date: _____

Docket Number: _____     Financial Obligations Satisfied: ☐Yes ☐No     Balance $ _____

5.

## Section 4:  Additional Criminal Information and Driver History

Aside from the offense(s) for which you seek clemency, have you ever been arrested, taken into custody, held for investigation or questioning, charged by any law enforcement authority, or convicted in any court, either as a juvenile or an adult, for any other incident?  You are not required to list charges that were expunged.

☐ Yes (If yes, please provide the information below.)   ☐ No

**Juvenile Charges, Adjudications of Delinquency and/or Consent Decrees:**

| Date of Incident: | County (if known) and State: | Offense(s): | Adjudicated Delinquent: | Disposition/Sentence: |
|---|---|---|---|---|
| N/A | N/A | N/A | ☐ Yes ☐ No | N/A |
| | | | ☐ Yes ☐ No | |
| | | | ☐ Yes ☐ No | |
| | | | ☐ Yes ☐ No | |
| | | | ☐ Yes ☐ No | |

**Adult Charges:**

| Date of Incident: | Federal or State Charges? | State: | Offense(s): | Disposition/Sentence: |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Traffic Citations/Tickets.**  Include any traffic citations/tickets that you received **outside** of Pennsylvania.

| Date of Citation/Ticket: | State: | Offense(s): | Penalty (Fines, Points, License Suspension/Loss): |
|---|---|---|---|
| N/A | N/A | N/A | N/A |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

☐ Check this box if you are attaching a Section 4 supplemental page.

6.

## Section 5: OPTIONAL Personal Statement

If you decide to include a personal statement, it **may** include:

- ✓ A summary of how your life or circumstances have changed since your last arrest
- ✓ Reasons you seek clemency
- ✓ Reasons you feel you are a good candidate for consideration
- ✓ Information you feel supports your request

I believe my request for a pardon should be granted because I haven't had any problems since the October 4, 1986 incident. I've successfully completed my parole without any parole violations and new arrests. In addition, the United States Postal Service believed I acted in self-defense, and hired me as a Career Letter Sorting Machine (LSM) Distribution Clerk despite my felony conviction while I appealed my conviction on direct appeal prior to losing appeal and having to begin serving my prison sentence. New exculpatory evidence proves my innocence. Therefore, I shouldn't have to wait until I'm seventy (70) years old to possibly be eligible for an expungement under the circumstances. Under the current Pennsylvania law, I am ineligible for Post-Conviction Relief in state or federal court because I have completed my sentence and am no longer on parole or subject to government restraint. Although I immediately filed a petition under the Post-Conviction Relief Act (PCRA) after obtaining the new exculpatory evidence, the Court of Common Pleas in Philadelphia County informed me on October 20, 2017 that I no longerhave any legal standing to bring a PCRA action because I am no longer serving a sentence in the case. **See Exhibit "E."** The Honorable Court couldn't help me even though Officer Carter, the first arresting police officer at the alleged crime scene, was discharged from the Philadelphia Police Department after my conviction. My only possible expungement is to seek a pardon via His Excellency, The Governor.

I would like a pardon because I am having difficulty finding a good job with benefits. I am stuck with a very serious crippling felony conviction that has greatly impacted my life. I have applied for a bus driver position with the Southeastern Pennsylvania Transportation Authority (SEPTA) but was denied employment after passing the exam because of my felony conviction. A copy of the test results and denial letters from SEPTA are marked as **Exhibits "F" and "G"** and attached hereto. I would like to go back to college to further my education in music,but my felony conviction is hindering me. I have attached a copy of my resume hereto as **Exhibit "H"** and a recent program from the church which I'm currently employed as part-time Church Organist. **See Exhibit "I".** The felony conviction has also caused me to lose my employment as Church Organist at the Oak Grove Baptist Church. A new *Child Protective Services Law* (CPSL) disqualifies me from working around children because I am a felon. **See Exhibit "J".** The felony conviction has caused me to lose my employment at the Oak Grove Baptist Church after having been employed there over twenty-one (21) years. **See Exhibit "K".**

I have contributed to the community by becoming a productive citizen and rehabilitating myself upon being paroled. I volunteer in my community and church and also give piano lessons. In my spare time, I compose music for choirs. I am in several religious functions other than church. In addition, I am employed at the Mt. Sinai Baptist Church as part-time Minister of Musicand Organist. I was also employed at the Oak Grove Baptist Church until the new Child Protective Services Law disqualified

x☑ Check this box if you are attaching a Section 5 supplemental page.

**Section 5: OPTIONAL Personal Statement (Supplement)**

If you decide to include a personal statement, it **may** include:

- ✓ A summary of how your life or circumstances have changed since your last arrest
- ✓ Reasons you seek clemency
- ✓ Reasons you feel you are a good candidate for consideration
- ✓ Information you feel supports your request

me from working around children. I participate in community programs such as cleaning up the neighborhood and encouraging young people to stay in school and out of trouble. I also participate in classical piano recitals and gospel music concerts throughout the City of Philadelphia. I also had the privilege of playing the piano to accompany a soloist for Senator Vincent Hughes' Veterans Day Program on November 11, 2015. **See Exhibit "L".** In addition, on Friday, October 19, 2018, I had the great privilege of playing the piano for a National Disability Employment Awaremess Month Celebration Program. **See Exhibit "M".**

A copy of my Pennsylvania State Police Criminal Record is marked as **Exhibit "N"** and attached hereto.

☐ Check this box if you are attaching a Section 5 supplemental page.

## Section 6:  Signature

My signature is verification that I have completed this application truthfully and accurately, and I understand that my statements herein are made subject to the penalties of 18 Pa.C.S. §4904 (relating to unsworn falsification to authorities).

By my signature, I acknowledge that I understand the following:
- Only the convictions provided in Section 3 of this application will be considered for clemency by the Board.
- This application will not be accepted or filed until all questions have been answered.
- This application will not be accepted or filed without the required documents.
- This application will not be accepted or filed until the rules of the Board of Pardons have been met.

Andrew Tullman                                              November 8, 2019

Applicant's Signature:                                      Date:

In accordance to the Board's Regulation 37 Pa. Code § 81.282:
The applicant may be represented by legal counsel or another person designated by the applicant.  The applicant may also be represented by a legal guardian, next friend or other person authorized by law to act on behalf of the applicant.

Signature of a legal guardian, next friend or other          Date:
person authorized by law to act on behalf of the applicant:

## Section 7:  Submitting Your Application

| **Required** | **Optional** | **Recommended** |
|---|---|---|
| Signed Application<br>Court Documents<br>Color Headshot Picture, 2" x 2" | Certificates<br>Diplomas<br>Recommendation Letters<br>Supporting Documents | Keep a copy of everything you submit for your personal records. |

**CONFINED APPLICANTS**
**REPRESENTED BY PROBATION AND PAROLE**

MAIL TO:
Pardons Case Specialist/Parole Manager
Bureau of Standards and Accreditation
Pennsylvania Board of Probation and Parole
1920 Technology Parkway
Mechanicsburg, PA 17050

**REPRESENTED BY SELF, ATTORNEY, FRIEND, OR FAMILY**

If not confined, you may represent yourself.

Applicants represented by anyone other than Probation and Parole should have their representative review the application.

MAIL TO:
Pennsylvania Board of Pardons
333 Market Street, 15th Floor
Harrisburg, PA 17126

**Application Revised 10/1/2019**

MS. McDERMOTT: Officer Johnnie

Carter.

- - -

...POLICE OFFICER JOHNNIE CARTER,

Badge No. 1305, 12th District, after first having

been duly sworn, was examined and testified as

follows:

- - -

DIRECT EXAMINATION

- - -

BY MS. McDERMOTT:

Q.      Officer Carter, were you employed by the

Philadelphia Police Department back on October 4, 1986?

A.      Yes.

Q.      And were you assigned to the 12th District on that

occasion?

A.      That's right.

Q.      Do you remember what shift you were working that

day?

A.      I believe I was working the four to twelve shift.

Q.      Did you have occasion to respond to a radio call

at approximately five thirty p.m., that took you to 2109

Colts Creek?

A.      That's right.

Exhibit "A" (13) Pages

Q.      Would you please tell the members of the jury what happened, first of all, how long did it take you to respond to the radio call?

A.      Approximately a minute-and-a-half.

Q.      Would you describe to the members of the jury what you saw once you got to that location?

A.      When I got there, there was a young man and an older woman who were on the sidewalk in the street. They were visibly shaken and they told me that someone had just shot --

                    MR. BROOKS: Objection.

                    THE COURT: Sustained, Stricken.

BY MS. MCDERMOTT:

Q.      Without telling us what they told you, first of all, can you identify those individuals?

A.      Yes.

Q.      Do you know their names now?

A.      Yes.

Q.      Who was the male?

           Do you see him here today?

A.      Yes, I do.

Q.      And do you remember the name of the woman?

A.      Barbara.

Q.      Now, after you talked to them, what did you do?

A.      From the information they gave me, I immediately put it out over police radio.

Q.      What did you put out over police radio? Do you remember?

A.      Yes, I remember.

Q.      Tell the members of the jury what you put over the radio?

A.      To be on the lookout for a car with a particular tag number that was last seen heading south on Island, with two black males.

Q.      And for what purpose did you tell them to be on the lookout for them?

A.      They were wanted for firing shots at these people.

Q.      While you have occasion along with -- well, did you have occasion to do an examination of the street or the area around 2109 Cobbs Creek?

A.      Yes, I did.

Q.      And did you observe anything unusual?

A.      Yes, I did.

Q.      What did you observe, Officer?

A.      There was an indentation on the tar  there in front of the house that was fresh.

                MR. BROOKS: I would object to that.

THE COURT: Well, overruled.

BY MS. McDERMOTT:

Q.      Could you describe that indentation, Officer?

A.      It was like a skid mark, something small in the ground, like if it had gone in and come out.

Q.      Now, when you say that it was fresh, what did you mean?

A.      The tar was dry, and this particular indentation that I'm talking about was like dug up.

Q.      About how small was this marking?

A.      Maybe about three inches.

Q.      Did you make any determination as to what it was?

A.      What the mark was?   I assumed it was --

                MR. BROOKS: Objection.

                THE COURT: Well, you have to qualify to make a determination, to come to a conclusion that is not within the kin of the jury's --

BY MS. McDERMOTT:

Q.      Officer, have you had occasion to see ricochet marks caused by bullets from guns?

A.      Yes, I have.

Q.      About how many of those have you seen?

A.          There at the Police Academy, my firing, at the range, hundreds of them.

Q.          And does a bullet ricochet leave any specific identifying marks?

A.          Yes, it does.

Q.          Could you please tell the members of the jury what they are.

A.          It's like a tail on the end of it, it's an indentation that goes in and has a tail on the end of it where it shed.

Q.          Now, when you took a look at this mark on the street, could you make a determination as to whether or not it was a ricochet?

-A.          It appeared to be, yes, it did.

                    MR. BROOKS: Objection. Move to
          strike.

          to what it was.

                    THE WITNESS: That's correct.

                    THE COURT: And your opinion ?

                    to that, yes, it...

                    THE COURT: All right. Just an
          opinion.

BY MS. McDERMOTT:

Q.      Now, did you convey this information to any other police personnel at the scene?

A.      My Sergeant, yes.

Q.      Now, just a few more questions, Officer.

You said when you arrived at the location, the older woman and the young male were visibly shaken.

What did you mean by that?

A.      They were upset, they looked frightened and upset.

MS. McDERMOTT: I have no other questions.

THE COURT: You may inquire.

MR. BROOKS: Thank you, Your Honor.

CROSS-EXAMINATION

BY MR. BROOKS:

Q.      Officer, when you arrived on the scene, did you measure how far the indentation was from the sidewalk?

A.      No, I didn't.

Q.      Did you take any type of picture to memorialize it in case it had to be used in evidence, for evidence, at a trial?

A.      No, sir, I didn't.

Q.      Do you know if anyone else in the police department tried to take a picture of that indentation to memorialize that for the purpose of showing a jury or to a Judge at a trial?

A.      No, sir, I don't.

Q.      Do you have a particular expertise in ballistics?

A.      No, sir, I don't.

Q.      Did anyone from the police department, who does have an expertise in ballistics, come and look at that spot to ascertain exactly what the spot was or whether or not it was in fact a ricochet mark?

A.      I wouldn't know that.  I don't know.  I gave the information to the detectives.

Q.      So the best of your knowledge, no one with a ballistics expertise examined that mark; is that correct?

A.      To my knowledge, no.

Q.      Now, there is a ballistics laboratory and there are police ballistics experts in the department, aren't there?

A.      That's right.

Q.      Now, you can't say or give an expert opinion that that particular mark that you saw came from a bullet, can you

                MS. McDERMOTT: Objection, Your Honor.

                THE COURT: She said she had an opini

2.131

MR. BROOKS: I sked her can she testify as a ballistics expert and say that that mark came from a bullet?

THE COURT: I qualified her to give an opinion. She doesn't have to be a ballistics expert. I qualified her because --

MR. BROOKS:   - didn't hear you Your Honor, it must be the air conditioning.

THE COURT: I qualified her. Again, there was no objection.

MR. BROOKS: Again, it's kind of hard for me to hear over there, because you're facing this way.

THE COURT: All right.

MR. BROOKS: Thank you, I have no other questions.

THE COURT: You're excused.

(Witness excused.)

MS. McDERMOTT:  The Commonwealth calls Detective Dorney.

- - -

...DETECTIVE WILLIAM DORNEY, Badge No. 9235, West Detective Division, after

MR. BROOKS: I sked her can she testify as a ballistics expert and say that that mark came from a bullet?

THE COURT: I qualified her to give an opinion. She doesn't have to be a ballistics expert. I qualified her because --

MR. BROOKS:   - didn't hear you Your Honor, it must be the air conditioning.

THE COURT: I qualified her. Again, there was no objection.

MR. BROOKS: Again, it's kind of hard for me to hear over there, because you're facing this way.

THE COURT: All right.

MR. BROOKS: Thank you, I have no other questions.

THE COURT: You're excused.

(Witness excused.)

MS. McDERMOTT:  The Commonwealth calls Detective Dorney.

- - -

...DETECTIVE WILLIAM DORNEY, Badge No. 9235, West Detective Division, after

first having been duly sworn, was examined and

testified as follows:

- - -

DIRECT EXAMINATION

- - -

BY MS. McDERMOTT:

Q.      I said , were you assigned to investig...

alleged shooting in the area of 2109 Cobbs Creek Parkway

on October 4, 1986?

A.      Yes, I was.

Q.      And did you receive information from police

personnel about a ricochet mark?

A.      That's correct.

Q.      And did you go out and take any pictures of that

mark?

A.      No, I didn't.

Q.      Would you explain to the members of the jury,

what -- first of all, would it be your responsibility to

do that?

A.      That's correct.

Q.      So that, assigned to the matter of the ...

you did not.

A.      Yes.  This job came in about 5:22 p.m., and at

that time, I was assigned to another case.  Detective

Gross assisted with the interview of the complainant,

and by the time I got involved in the case, actually,

it was a day or two later.

Q.      So, just because you got involved a day or two

later, could you explain to the members of the jury why

you didn't go out and take a picture? What difference

does that make?

A.      I wouldn't have known exactly where the scene was,

as far as the information to where it happened, and two day

later, the asphalt might not have been there.

Q.      What might have not been there?

A.      A crease mark or a bullet mark.

Q.      Two days later, would it be gone?

A.      It could be, yes.

                    MS. McDERMOTT: I have no other

        questions.

                        - - -

                    CROSS-EXAMINATION

                        - - -

BY MR. BROCK:

Q.      Detective, would it be fair to say that it might

still have been there, if there was one there in the first

place? Is that correct?

A.      It would still be there now, yes.

2.134

Q.        And the people who were shot at, could have conceivably pointed to the place where the mark was; isn't that correct?

A.        That's correct.

                    MR. BROOKS: No further questions.

                    MS. McDERMOTT: I have no other questions.

                    THE COURT: You're excused.

                    (Witness excused.)

                    MS. McDERMOTT: The Commonwealth rests, Your Honor.

                    THE COURT: All right. Let me see counsel at side bar.

                    (Side-bar conference, off the record)

                    THE COURT: These proceedings will be concluded for today and we will return tomorrow. The case will go to you tomorrow some time.

                    We're going to ask you to come in the time at nine o'clock and start as soon as possible. My calendar isn't as it was this morning, so we should get to you shortly after nine o'clock.

2.135

In the interim period, of course, continue
to have an open mind, come to no conclusions,
do not discuss the case among yourselves or
with anyone else.  If anyone approaches you on
the case, remember however innocuous you may
believe the approach to be, you report it to the
Court.  I don't believe that we're covered by the
news media.  I've scanned the Court and have not
noticed their presence here, so there is no danger
of you getting any information from that source.

Remember, your sole source of information
must be the information that you acquire while you
in this courtroom and also don't consider anything
that is extraneous of that, so if you learn
anything about this case, you have to report it
to the Court.

Remember, do not tell your fellow jurors.

I'll see you then tomorrow at nine o'clock
and will ask the Court Officers to take the lunch
hour.

(COURT ADJOURNED)

- - -

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

### SWORN STATEMENT

I, Keenan Morris being sworn, hereby state the following.:

1) I attended the Philadelphia Police Academy on or about May of 2000 and successfully completed my police recruit training and was hired by the Southeastern Pennsylvania Transportation Authority (SEPTA) as a Septa Police Officer in Philadelphia County.

2) During my recruit training at the Philadelphia Police Academy, I never observed any bullet ricochet marks at the shooting range which would be impossible due to the layout of the firing range and rubber like material at the end of the firing range used to catch the bullets.   The shooting range is located in a field that is mostly grass.   To the best of my personal knowledge and experience, there aren't any bullet ricochet marks at the Philadelphia Police Academy.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.   I understand that the statement(s) herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Respectfully submitted,

Date: _July 24, 2016_

_Keenan Morris_
Keenan Morris

Sworn to and subscribed before me this

_24th_ day of _June_ , 2016.

_Norbu Lama_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
NORBU LAMA, NOTARY PUBLIC
CITY OF PHILADELPHIA, PHILADELPHIA COUNTY
MY COMMISSION EXPIRES FEB 9 2019

Exhibit "B"

SP4-106



# PENNSYLVANIA STATE POLICE
## DEPARTMENT HEADQUARTERS
### 1800 ELMERTON AVENUE
### HARRISBURG, PENNSYLVANIA 17110

COMM LEGAL SERV
JAMIE GULLEN
1424 CHESTNUT ST
PHILADELPHIA, PA 19102

This is to certify that on **March 12, 2019**, criminal history record information in the custody of this agency pertaining to:

|  |  |  |  |
|---|---|---|---|
| **NAME:** | FULLMAN, ANDREW | **SSN:** | 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 |
| **AKA:** |  | **OCA:** | 665434 |
| **DOB:** | 1965/05/20 | **ORI:** | PAPEP0000 |
| **SID:** | 174-00-77-1 | **OTN:** | M288178-2 |
| **ARRESTING AGENCY:** | PHILADELPHIA |  |  |
| **DATE OF ARREST:** | 1986/11/08 |  |  |

| OFFENSE DATE | CHARGE(S) | COUNT | GRADE | DISPOSITION |
|---|---|---|---|---|
| 1986/10/04 | CC2705 RECKLESSLY ENDANGERING | 1 | M2 | NOLLE PROSSED |
| 1986/10/04 | CC907B POSSESSING INSTRUMENT OF CRIME | 1 | M1 | NOLLE PROSSED |
| 1986/10/04 | CC6106 FIREARM CARRIED W/O A LICENSE | 2 | M1 | NOLLE PROSSED |
| 1986/10/04 | CC6108 CARRYING FIREARMS IN PHILA | 1 | M1 | NOLLE PROSSED |
| 1986/10/04 | CC907A POSSESSING INSTRUMENT OF CRIME | 1 | M1 |  |

Have been, to the best of my knowledge and belief:

☑ Expunged as directed by the Court's Order / Certification, and in compliance with the Criminal History Record Information Act, 18 Pa.C.S.A. § 9122.

☐ Restricted for Limited Access as directed by the Court's Order pursuant to 18 Pa.C.S.A. § 9122.1 to only a criminal justice agency, or for the official use of a government agency described in § 9121 (b.1) or § 9124 (a) (related to use of records by licensing agencies.)

☐ Expunged as directed by the Court's Order, and in compliance with the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-119 (relating to first time offenders where misdemeanor drug charges have been withdrawn, dismissed or acquitted.)

☐ Expunged as directed by the Court's Order, and in compliance with 18 Pa.C.S.A. § 9122 (related to successful completion of conditions of ARD, or any other pretrial or post-trial

*Exhibit "C" (3) Pages*



**Expungement Ref No:** 2019-526955-F

SP4-106



# PENNSYLVANIA STATE POLICE
## DEPARTMENT HEADQUARTERS
### 1800 ELMERTON AVENUE
### HARRISBURG, PENNSYLVANIA 17110

JAMIE GULLEN ESQ
1424 CHESTNUT STREET
PHILADELPHIA, PA 19102

This is to certify that on March 07, 2019, criminal history record information in the custody of this agency pertaining to:

| | |
|---|---|
| **NAME:** FULLMAN, ANDREW | |
| **AKA:** | |
| **DOB:** 1965/05/20 | **SSN:** 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 |
| **SID:** 174-00-77-1 | **OCA:** 665434 |
| **ARRESTING AGENCY:** PHILADELPHIA | **ORI:** PAPEP0000 |
| **DATE OF ARREST:** 1987/03/07 | **OTN:** M301250-5 |

| OFFENSE DATE | CHARGE(S) | COUNT | GRADE | DISPOSITION |
|---|---|---|---|---|
| 1987/02/12 | CC903 CRIMINAL CONSPIRACY | 2 | | FOUND NOT GUILTY |
| 1987/02/12 | CC2701 SIMPLE ASSAULT | 2 | | FOUND NOT GUILTY |
| 1987/02/12 | CC6108 CARRYING FIREARMS IN PHILA | 2 | M1 | FOUND NOT GUILTY |
| 1987/02/12 | CC6106 FIREARM CARRIED W/O A LICENSE | 2 | M1 | FOUND NOT GUILTY |

Have been, to the best of my knowledge and belief:

☑ Expunged as directed by the Court's Order / Certification, and in compliance with the Criminal History Record Information Act, 18 Pa.C.S.A. § 9122.

☐ Restricted for Limited Access as directed by the Court's Order pursuant to 18 Pa.C.S.A. § 9122.1 to only a criminal justice agency, or for the official use of a government agency described in § 9121 (b.1) or § 9124 (a) (related to use of records by licensing agencies.)

☐ Expunged as directed by the Court's Order, and in compliance with the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-119 (relating to first time offenders where misdemeanor drug charges have been withdrawn, dismissed or acquitted.)

☐ Expunged as directed by the Court's Order, and in compliance with 18 Pa.C.S.A. § 9122 (related to successful completion of conditions of ARD, or any other pretrial or post-trial diversion or probation program.) The fingerprints, name, and criminal history record information pertaining to the above captioned case are being retained solely for the purposes of determining subsequent eligibility of any pretrial or post-trial diversion or probation program, identifying persons in criminal investigations, and determining the grading of a subsequent offense, and shall be made available to any Court only upon request.



Expungement Ref No:        2019-526817-F                                    Page 1 of 2

SP4-106



**PENNSYLVANIA STATE POLICE**
DEPARTMENT HEADQUARTERS
1800 ELMERTON AVENUE
HARRISBURG, PENNSYLVANIA 17110

JAMIE GULLEN ESQ
1424 CHESTNUT STREET
PHILADELPHIA, PA 19102

This is to certify that on March 07, 2019, criminal history record information in the custody of this
agency pertaining to:

|  |  |  |  |
|---|---|---|---|
| NAME: | FULLMAN, ANDREW | | |
| AKA: | | | |
| DOB: | 1965/05/20 | SSN: | 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 |
| SID: | 174-00-77-1 | OCA: | 665434 |
| ARRESTING AGENCY: | PHILADELPHIA | ORI: | PAPEP0000 |
| DATE OF ARREST: | 1987/04/18 | OTN: | M306265-1 |

| OFFENSE DATE | CHARGE(S) | COUNT | GRADE | DISPOSITION |
|---|---|---|---|---|
| 1987/04/18 | CC907A POSSESSING INSTRUMENT OF CRIME | 1 | M1 | FOUND NOT GUILTY |
| 1987/04/18 | CC2706 TERRORISTIC THREATS | 1 | M1 | FOUND NOT GUILTY |
| 1987/04/18 | CC6106 FIREARM CARRIED W/O A LICENSE | 1 | M1 | QUASHED/ DISMISSED/ DEMURRER SUSTAINED |
| 1987/04/18 | CC6108 CARRYING FIREARMS IN PHILA | 1 | M1 | QUASHED/ DISMISSED/ DEMURRER SUSTAINED |
| 1987/04/18 | CC2702 AGGRAVATED ASSAULT | 1 | F | NO DISPOSITION REPORTED |

Have been, to the best of my knowledge and belief:

☑ **Expunged as directed by the Court's Order / Certification, and in compliance with the Criminal History Record Information Act, 18 Pa.C.S.A. § 9122.**

☐ Restricted for Limited Access as directed by the Court's Order pursuant to 18 Pa.C.S.A. § 9122.1 to only a criminal justice agency, or for the official use of a government agency described in § 9121 (b.1) or § 9124 (a) (related to use of records by licensing agencies.)

☐ Expunged as directed by the Court's Order, and in compliance with the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-119 (relating to first time offenders where misdemeanor drug charges have been withdrawn, dismissed or acquitted.)

☐ Expunged as directed by the Court's Order, and in compliance with 18 Pa.C.S.A. § 9122 (related to successful completion of conditions of ARD, or any other pretrial or post-trial



Exhibit "D"

RECEIVED

OCT 3 0 2017

PCRA Unit
CP Criminal Listings

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL SECTION**

| | | |
|---|---|---|
| **COMMONWEALTH** | : | CP-51-CR-1124071-1986 |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW FULLMAN** | : | |

## O R D E R

AND NOW, this 20TH day of October, 2017, this Court having determined that the Petitioner has no standing to bring this PCRA action because he is no longer serving a sentence in this case.

BY THE COURT:

CHARLES J. CUNNINGHAM, III    J.

Exhibit "E" (2) Pages

<u>Comm. v. Andrew Fullman</u>          <u>Case Number: CP-51-CR-1124071-1986</u>

<u>Type of Order: 907 Formal Dismissal</u>

## <u>PROOF OF SERVICE</u>

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirement of Pa. R.CrimP. 114:

**Defense Counsel/Party:** Andrew Fullman               David Belmont, Esq.
                1305 N. 15th Street                Land Title Building
                Philadelphia, PA  19121              100 S. Broad St., Ste. 1420
                                    Philadelphia, PA  19110

Type of Service:  ( ) Personal    ( ) First Class Mail    Other, please specify: <u>Certified</u>

**District Attorney:**      Robin Godfrey, Esq.
                Chief, PCRA Unit
                District Attorney's Office
                Three South Penn Square
                Philadelphia, PA  19107-3499

Type of Service:  ( ) Personal    (X) First Class Mail    Other, please specify: _____

**Additional Counsel/Party:**      Natasha Lowe, Esq.
                Supervisor, PCRA/Appeals Unit
                #206, CJC
                Philadelphia, PA  19107

Type of Service:  ( ) Personal    (X) First Class Mail    Other, please specify:

**Dated: October 20, 2017**

**Judge's Signature**





**Southeastern Pennsylvania Transportation Authority**

Safety, Service, Continuous Improvement
1234 Market Street, Philadelphia, PA 19107-3780

## Results of #2200 - Bus Operator Testing Conducted on 10/23/2007

October 31, 2007

Andrew Fullman
5524 Large Street, Apt. B
Philadelphia, PA 19149

RE: #2200 - Bus Operator

Dear Andrew:

We are pleased to inform you that you passed the pre-employment test for the position of #2200 - Bus Operator, held on 10/23/07. Further consideration for this position will depend on the outcome of background and driver's license checks, which are currently underway. If these checks are favorable, the Recruitment Department will contact you by telephone or mail to schedule an interview for this position. Due to the large number of interested applicants, your patience is appreciated.

The following documentation is required for the interview:

- Valid driver's license.
- Proof of high school graduation (diploma) or GED.
- Military separation papers, if military service is indicated.
- Motor vehicle driving record for the last two years, if your license is NOT from Pennsylvania

If your address or telephone number changes before you are contacted, please go back to "Careers" at www.septa.org and update your application.

Thank you for your interest in employment at SEPTA.

Human Resources Department
SEPTA

Exhibit "F"





1234 Market Street
Philadelphia, PA 19107-3780

Southeastern Pennsylvania Transportation Authority
*Safety • Service • Continuous Improvement*

December 2, 2008

Andrew Fullman
5524 Large Street Apt. B
Philadelphia, PA 19149

Re:  Notice on Job Application

Dear Mr. Andrew Fullman:

This letter is in response to your recent application for the position of Bus Operator with SEPTA.

On your on-line job application you disclosed that you had been convicted of a criminal offense.  In response thereto and with your authorization, SEPTA obtained a copy of your criminal history record from the Pennsylvania State Police and/or other investigative sources.  As is our customary practice, this information (along with your application) was then forwarded to our Legal Division to review your file with respect to your suitability for employment in the above-mentioned position consistent with SEPTA Policy #E20 and state law (18 Pa.S.A.§ 9125).  Convictions of certain misdemeanor and felony offenses may disqualify an applicant from employment with the Authority.

Based on foregoing review of your conviction record, we must regretfully advise that SEPTA has disapproved your candidacy for this particular position.  Accordingly, your current application for Bus Operator is no longer under consideration.  However, this decision does not necessarily preclude you from applying for other vacant positions in the Authority.

Sincerely,

SEPTA
Human Resources Division

Exhibit "G"

# ANDREW FULLMAN

610-457-9498

PHILADELPHIA, PA

andrewf816@gmail.com

**OBJECTIVE:**

To obtain a bus operator position in a company who will benefit from my many years of experience and skills.

**PERSONAL QUALITIES:**

- Hard worker
- Friendly
- Dependable
- Safety-minded
- Fast learner
- Self-starter
- Professional
- Responsible

**EMPLOYMENT HISTORY:**

**MT. SINAI TABERNACLE BAPTIST CHURCH**, *Philadelphia, PA*                    2000 - Present
Church Organist/Pianist
Teach choirs and provide music for services.

**Oak Grove Baptist Church**, *Philadelphia, PA*                    1996 - 2017
Church Organist/Pianist
Taught choirs and provided music for services.

**DLC Transportation, Inc.**, *Philadelphia, PA*                    2002 - 2004
Bus Operator
Operated shuttle bus to transport college students between Temple University college campus and the dormitory.

**Cape Transit Corp.**, *Pleasantville, NJ*                    1998 - 2002
Bus Operator
Operated charter bus for chartered trips and line-runs to and from casinos located in New Jersey and Delaware.

**Laidlaw Transit, Inc.**, *Philadelphia, PA*                    1996 - 1998
Bus Operator
Operated bus at the Philadelphia International Airport for parking lot customers and airport employees, that they could have transportation to and from the airport.

**C&C Transit Co., Inc.**, *Philadelphia, PA*                    1996 - 1996
School Bus Operator
Following completion of school bus driver training, I was employed to transport school children to and from school and field trips.

**EDUCATION:**

**Settlement Music School**, *Philadelphia, PA*                    1980 - 1983
Course of study: Piano Major/Outstanding Certificate of Diploma

**John Bartram High School**, *Philadelphia, PA*                    1979 - 1983
Diploma received

Exhibit "H"



**pennsylvania**
DEPARTMENT OF HUMAN SERVICES

ANDREW FULLMAN
1305 N 15TH ST APT C
PHILADELPHIA, PA 19121

SSN: XXX-XX-
TCN: DPW4M48256

Your Federal Bureau of Investigation (FBI) fingerprint based record check has been processed in accordance with Public Law 92-544 and the Child Protective Services Law (Title 23, Pa C.S. Chapter 63). **The following is the result of your federal criminal history background check as of 07/20/2017.**

☐   <u>NO RECORD EXISTS</u>

☐   <u>RECORD EXISTS</u>, but conviction(s) **does not prohibit hire** in a childcare position according to the Child Protective Services Law.

☐   <u>RECORD EXISTS</u>, but no conviction(s) is shown. This **does not prohibit hire** in a childcare position according to the Child Protective Services Law.

☒   <u>DISQUALIFICATION</u> - Record exists and contains a conviction(s) that is grounds for denying employment in a childcare position according to the Child Protective Services Law.

If you are questioning the accuracy of this response, please submit court documents to support your position. You may request a copy of your record from one year following receipt of verification by making a written request to the address listed above. Applicants are encouraged to provide this verification to the prospective employer immediately upon receipt.

Sincerely,

*Christina E. Phillips*

Christina Phillips, Bureau Director
Bureau of Policy, Programs and Operations

Office of Children, Youth and Families
ChildLine and Abuse Registry | Criminal Verification Unit
PO Box 8053 | Harrisburg, PA 17105-8053 | P 1.877.371.5422 | F 717.772.6533 | www.dhs.state.pa.us

Exhibit "J"




**Oak Grove Baptist Church**
2853 North 21st Street ~ Philadelphia, PA 19132
Reverend William Sullivan Sr., Founder
Reverend James Elizy, Interim Pastor

Worthington Brooks, Chairman Deacons Ministry
Clifton Corbin, Chairman Board of Trustee's
Kyana Hopkins-Thomas, Church Secretary

Phone: 215-226-5862
Phone (Voicemail): 215-226-5863

November 1, 2017

Mr. Andrew Fullman
1305 North 15th Street
Philadelphia, Pa. 19121-4372

Dear Mr. Fullman

After reviewing the ruling being sent down by the Pennsylvania Department of Human Services with our attorney Sherman C. Toppin, and the documents accompanying g them requesting an Appeal of Disqualification Decision.   I must inform you that the unfavorable ruling hinders us from providing a clearance at this time.   We have however, noted that you are in the midst of petitioning the court to remove this ruling and expunge your records.   Once this has been done we will revisit this matter, but until that time we cannot.

Our heart is heavy because you have become a viable force within this ministry but we must be obedient to the law of the land.   Please keep us apprised of your quest.

Very truly yours,

Deacon Worthington Brooks, Acting Pastor
Trustee Charlotte Thurmond, Child Care & Abuse Administrator

Cc:   File

Exhibit "K" (2) Pages 



**Oak Grove Baptist Church  2853 North 21st Street  Philadelphia, PA 19132**
**Reverend William Sullivan Sr., Founder**
**Reverend William Sullivan Jr., Pastor**



Worthington Brooks Chairman Board Of Deacons
Lawrence H. Fitts, Chairman Board Of Trustees
Lena Werts, Recording Secretary

Phone: 215-226-5862
Phone (Voicemail): 215-226-5863
Fax: 215-226-1764

January  2013

Dear  Brother Fullman,

As the New Year begins and the old year fades away, please allow us the opportunity to
wish you and your family God's Riches Blessings.  I would like to take this  time to say
Thank You for  your dedication and steadfastness in performing the position of  Organist,
for the Oak Grove Baptist Church.  I look forward to another blessed year of service and
hope that you will continue to allow God to use you to bless us.

Again, on behalf of the Board of Trustee's of  the  Oak Grove Baptist  Church we thank
you for a year of dedicated services.

In Christian Fellowship,

Trustee Lawrence Fitts, Chairman
Board  of  Trustee's of the  Oak Grove Baptist  Church

Trustee Mary DuBose, Vice Chairman
Board of Trustee's of  the Oak Grove Baptist Church

Rev. William Sullivan, Jr., Pastor

LF:ct



## SENATOR VINCENT HUGHES

*in partnership with*

**SugarHouse Casino, Black Women's Health Alliance**
**Ross Common International Inc. and S.R. Wojdak & Associates**

*celebrate*

## VETERANS DAY

**Featuring a private screening of the movie: "Sweet Georgia Brown"**

## November 11, 2015
## 1 p.m. – 5 p.m.

*School of the Future*
*4021 Parkside Avenue • Philadelphia, PA 19131*

## Her Boots Were Made for Battle



**Celebrating the Evolution of African American Women in the Military**

Exhibit "L" (3) Pages

# Special Thank You

to our *Veterans Planning Committee Members*

**Shirley Contee Ellis & Marshall Houston**

# Special Thank You

to the *OUTSTANDING STUDENTS* at

**Discovery Charter School**

**Dr. Ethel Allen Drumline**

**Frankford High School JROTC**

**Philadelphia Military Academy**

★ ★ ★ ★

**Ardie Stuart-Brown**, *Actress (Harriet Tubman)*

**Marquisha Ivory**, *Soloist*

**James McTillman**, *Soloist*

**Andrew Fullman**, *Pianist*

★ ★ ★ ★

**Catering Service**
*All About Seafood • 5352 Woodland Avenue • Philadelphia, PA • 215-727-3805*

**Graphic Design Services**
*William Washington • Wasphil Design Studios • 151 E. Main Street • Lansdale, PA*

**DJ Services**
*DJ Misstique • 267-408-5388*

# Thank you to my Staff

**Tamica Tanksley – Event Coordinator**

**Ronald Allen**

**Lorraine Calien**

**Marcella Daniels**

**Tammy Hoskins**

**Willie Jordan**

**Robin Maddox**

**Jewel Moore**

**Omar Sabir**

**Ben Waxman**

**Tiffany Wilson**

★ ★ ★ ★

*Interns*

**Deborah Isaac**

**Kenny Li**

**SENATOR VINCENT HUGHES**
Black Women's Health Alliance & SugarHouse Casino

## Her Boots Were Made for Battle

*Celebrating the Evolution of African American Women in the Military*

**ANDREW FULLMAN**

**SENATOR VINCENT HUGHES**
Black Women's Health Alliance & SugarHouse Casino

## Her Boots Were Made for Battle

*Celebrating the Evolution of African American Women in the Military*

## Program

Friday, October 19, 2018
11:00AM-2:00PM


*Lite music playing until 11:30am*
*Mr. Andre Fullman*


11:00am-11:20am...........................................................................*Lunch is served*

11:30am.........................................Opening & Welcome.................................Gale

Governors Proclamation.............................................................Bonnie Morse

### Awards Presentation

Honorees.............................Drake Armstrong/Shirley Lock..............Monique/Gale
Retirees

PAR Award............... .. .............Employer of the Year.......................Traci/Gale
Marriott Hotel

PAR Award...............................Individual Award.........................Monique/Gale
Receipt Award Charles Potere

Courage Award..................................................................................Gale

Desert is served.................................................................Cutting of the cake

Closing Remarks:

Exhibit "M"

THANK YOU

Barber National Institute
*Making dreams come true.*

# NATIONAL DISABILITY EMPLOYMENT AWARENESS MONTH CELEBRATION

*THEME*
*AMERICA'S WORKFORCE*
*"EMPOWERING ALL"*

# Pennsylvania State Police

1800 Elmerton Avenue
Harrisburg, Pennsylvania 17110

## Response for Criminal Record Check

**ANDREW FULLMAN**
**810 ARCH STREET**
**APT. 304**
**PHILADELPHIA  PA  19107**

**TELEPHONE (610) 457-9498**

TO WHOM IT MAY CONCERN:

THE PENNSYLVANIA STATE POLICE DOES HEREBY CERTIFY THAT:

| | |
|---:|:---|
| **Name:** | Fullman,Andrew |
| **Date of Birth:** | 05/20/1965 |
| **Social Security #:** | xxx-xx-5992 |
| **Sex:** | M |
| **Race:** | Black |
| **Date of Request:** | 01/14/2019 01:21 AM |
| **Purpose of Request:** | Other |

**Maiden Name and/or Alias (1)**      **(2)**
     **(3)**      **(4)**

### *** RECORD FOR CONTROL #R21013898 ***

THE RESPONSE IS BASED ON A COMPARISON OF DATA PROVIDED BY THE REQUESTOR AGAINST INFORMATION CONTAINED IN THE FILES OF THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY. PLEASE CONFIRM IDENTIFIERS PROVIDED. POSITIVE IDENTIFICATION CANNOT BE MADE WITHOUT FINGERPRINTS THE PENNSYLVANIA STATE POLICE RESPONSE DOES NOT PRECLUDE THE EXISTENCE OF CRIMINAL RECORDS, WHICH MIGHT BE CONTAINED IN THE REPOSITORIES OF OTHER LOCAL, STATE, OR FEDERAL CRIMINAL JUSTICE AGENCIES.

THE INFORMATION ON THIS CERTIFICATION FORM CAN BE VALIDATED BY ACCESSING THE PENNSYLVANIA ACCESS TO CRIMINAL HISTORY (PATCH) RECORD CHECK STATUS SCREEN (https://epatch.state.pa.us/RCStatusSearch.jsp) AND SUBMITTING A STATUS CHECK REQUEST THAT CONTAINS THE FOLLOWING - SUBJECT'S NAME (EXACTLY AS INITIALLY ENTERED), CONTROL NUMBER AND DATE OF REQUEST. PATCH WILL FIND AND DISPLAY THE CORRESPONDING RECORD CHECK REQUEST. DETAILS ON THE REQUEST CAN BE VIEWED BY CLICKING ON THE CONTROL NUMBER. YOU WILL BE ABLE TO VERIFY IF THIS REQUEST WAS SENT OUT AS A NO RECORD OR RECORD RESPONSE BY THE PENNSYLVANIA STATE POLICE.

QUESTIONS CONCERNING THIS CRIMINAL RECORD CHECK SHOULD BE DIRECTED TO THE PATCH HELP LINE TOLL FREE AT 1-888-QUERY-PA (1-888-783-7972).

Certified by:

*[signature]*

**Lt. Earl H. Rhoades**
Director of Criminal Records & Identification
Pennsylvania State Police

DISSEMINATED BY: 543105
01/17/2019 10:05 AM

**SP4-137B**

COMPILED: 2019/01/17
NCJ RAP

PAGE: 1 of 2

**PENNSYLVANIA STATE POLICE**
**CENTRAL REPOSITORY**
**1800 ELMERTON AVENUE**
**HARRISBURG, PENNSYLVANIA 17110**
**(888)783-7972**

*Exhibit N (5) Pages*

USE OF THE FOLLOWING CRIMINAL HISTORY RECORD IS
REGULATED BY ACT 47, AS AMENDED.
========================================================================

## IDENTIFICATION

NAME: FULLMAN,ANDREW
SID: 174-00-77-1                     DOB: 1965/05/20        SOC: XXX-XX-5992
SEX: MALE           RAC: BLACK       HAI: BLACK             EYE: BROWN
HGT: 5'09"          WGT: 187
POB:                US CITIZEN: YES
COUNTRY OF CITIZENSHIP:
========================================================================

## CRIMINAL HISTORY

NAME: FULLMAN,ANDREW                     OTN: M288178-2
ARRESTED: 1986/11/08  PAPEP0000  PHILADELPHIA                  OCA: 665434
DISPO DATE: 1988/05/17            COMMON PLEAS DOCKET: CP8611-2407

### *** COURT DATA ***

| OFFENSE DATE | CHARGE | COUNT | GRADE | DISPOSITION |
|---|---|---|---|---|
| 1986/10/04 | CC2702 AGGRAVATED ASSAULT | 1 | F2 | FOUND GUILTY/ STATE CORRECTIONAL FACILITY/ 005 YRS - 010 YRS/ FINES AND COSTS |
| 1986/10/04 | CC2701 SIMPLE ASSAULT | 1 | M2 | FOUND GUILTY/ FINES AND COSTS |
| 1986/10/04 | CC907A POSSESSING INSTRUMENT OF CRIME | 1 | M1 | FOUND GUILTY/ STATE CORRECTIONAL FACILITY/ 001 YRS - 002 YRS/ FINES AND COSTS |

FOR MORE INFORMATION, CONTACT THE APPROPRIATE COURT OF RECORD
========================================================================

### ADDITIONAL IDENTIFIERS

AKAs: FULLMEN,ANDREW
DOBs:
SOCs: XXX-XX-5992
MNUs:
========================================================================

F=FELONY, M=MISDEMEANOR, S=SUMMARY AND THE NUMERIC=DEGREE
ARREST(S) SUPPORTED BY FINGERPRINT CARD(S) ON FILE

RESPONSE BASED ON COMPARISON OF REQUESTER FURNISHED INFORMATION AND/OR
FINGERPRINTS AGAINST A NAME INDEX AND/OR FINGERPRINTS CONTAINED IN THE FILES OF
THE PENNSYLVANIA STATE POLICE CENTRAL REPOSITORY ONLY, AND DOES NOT PRECLUDE

THE PENNSYLVANIA STATE POLICE IS IN THE PROCESS OF SWITCHING FROM SCN CHARGE
CODES TO THE PURDON'S FORMAT. RAP RESPONSES MAY SHOW BOTH SCN AND PURDON'S
FORMATTED CHARGES.

***************************** END OF RAP SHEET *****************************



**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL**
**OFFICE OF JUDICIAL RECORDS**
Juanita Kidd Stout Center for Criminal Justice
1301 Filbert Street, Room 310
Philadelphia, PA 19107
215-683-7700
(215) 683-7713 (Fax)

Eric Feder
Deputy Court Administrator
Director, Office of Judicial Records

Marc Gaillard, Deputy Director
Elaine Q. Ratliff, Deputy Director

COMMONWEALTH : ☐ MUNICIPAL COURT OF PHILADELPHIA

VS. : ☑ TRIAL DIVISION—CRIMINAL

ANDREW FULLMAN : DOCKET # CP-51-CR-1124071-1986

*I CERTIFY* the foregoing to be a true and correct copy of the full, entire, and complete Record in the case above stated, as the same now remains of Record in this Office.

*IN TESTIMONY WHEREOF*, I have hereunto set my hand and affixed the seal of the said Court this 5th day of DECEMBER , A.D. 2019 .

Deputy Director

Exhibit "O"  (7) Pages

| COMMONWEALTH VS. | NAME, A/K/A, ADDRESS, ZIP CODE | | YEAR, TERM & NO. |
|---|---|---|---|
| RECORD CON. NO. | ANDREW    FULLMAN | | 86112408 |
| POLICE PHOTO NO. | 05835 WASHINGTON   AVE   OTN#M2881782 | | THIS CASE INVOLVES NOS. — TO — |
| 665434 | PHILA.    PA 19143 | | |
| **STATUS OF DEFENDANT** | PLACE OF PRELIM. HEARING | | ISSUING AUTH. |
| Bail Set $ 05000 | 13 1801 VINE ST | | KNAUER, JR        311 |
| Bail Made $ | DT. OF INCIDENT | BIRTH DATE | SEX   RACE   D. C. NO. |
| SIGN OWN BAIL - CODE | 10/04/86 | 5/20/65 | M    N 1  861268933 |
| Surety Name | ATTY. CD. | N. C. CASE NO. | COMPLAINT DT.   DT. PREL. HEARING |
| & Address SURETY CODE    6 | 159260 | 86/11-0689 1/1 | 11/08/86     11/14/86 |
| DISM.     BILL NO. | DATE | DATE OF ARRAIGN. | POL. SUBD. |
| | NOVEMBER 19, 1986 | 11/28/86 | |
| **CHARGE CODES & CHARGES** | | | |
| 36002 = SIMPLE ASSAULT 2701 | | | |
| 36001 = AGGRAVATED ASSAULT 2702 | ✓ | | |

**PRE-TRIAL/ TRIAL**

Defendant requests a trial by jury  6/13/87  Gordon
DATE 6/12/87  ROOM 443  COURT STENO.  COURT CLERK 6/15/87
Irwin Cole - William Thomas
PLEA Hon Angelo A. Guarino  Barbara J. McDermott   Quentin Brooks, Esq.
Jury selection begun & completed
6/16/87 Jury sworn
Defendant plea: Not guilty as to 2#2
Testimony began
6/18/87 After hearing testimony & arguments, the jury
retires to deliberate.      The jury returns with a
verdict of guilty Agg Assault. Simple asslt merges
Sentence deferred pending the filing of motions for new
trial and the arrest of judgment. The bench was & psychiatric
reports are ordered. 8/31/87 Rm 443. Bail is increased to
$50,000 (fifty thousand) See bail $5,000 (five thousand)
VERDICT Additional bail $45,000 (forty five thousand) Total bail
$50,000 (fifty thousand)                              DATE

April 25, 1988 - R443  Hon Angelo A. Guarino                 By the Court
ADA B. McDermott - DEF Burton Rose, assoc w/A. C. Peruto, Esq.
BT STENO - Bruce Bursilow - CLK Gbeele                    Guarino  J.
Defense Trial & Supplemental Motions -                        Judge
Heard and Denied by the Court ( Guarino   J.
SENTENCE — R443

DATE May 17, 1988  ROOM 443  COURT STENO. David Deik  COURT CLERK Gbeele
JUDGE Hon Angelo A. Guarino  ADA Barbra McDermott  COUNSEL A. Charles Peruto, Sr., Esq.

Further hearing on Post verdict Motions - Denied
Defendant to serve not less than five (5) years, nor more than
ten (10) years at the S.C.I. at Graterford with credit for time served
(11-8-86, 11-9-86 & 6/18-87 - 6-25-87) Sentence stayed pending appeal -
Additional bail in the amount of (35,000") Thirty-five Thousand dollars -10%
Cash is hereby ordered to be posted by defendant (previously $50,000") =
Total bail is $85,000") Order for posting of bail is stayed until
5-19-88-9:00 AM - R443.          By the Court
Guarino   J.
044157

COMMONWEALTH VS.

RECORD CON. NO.

NAME, A/K/A, ADDRESS, ZIP CODE
ANDREW FULLMAN
05835 WASHINGTON AVE OTN#42881782
PHILA. PA 19143

YEAR, TERM & NO. 8611 2410
THIS CASE INVOLVES NOS 2407 TO 2410

POLICE PHOTO NO. 665434

STATUS OF DEFENDANT

PLACE OF PRELIM. HEARING 13 1801 VINE ST

ISSUING AUTH. KNAUER,JR. 311

Bail Set $ 05000 Bail Made $
SIGN OWN BAIL - CODE

Surety Name & Address SURETY CODE 6

| DT. OF INCIDENT | BIRTH DATE | SEX | RACE | D. C. NO. |
|---|---|---|---|---|
| 10/04/86 | 5/20/65 | M | N 1 | 861268933 |

| ATTY. CD. | M. C. CASE NO. | COMPLAINT DT. | DT. PREL. HEARING |
|---|---|---|---|
| 159260 | 86/11-0689 1/1 | 11/08/86 | 11/14/86 |

| DISM. | BILL NO. | DATE | DATE OF ARRAIGN. | POL. SURG. |
|---|---|---|---|---|
| | | NOVEMBER 19, 1986 | 11/28/86 | |

CHARGE CODES & CHARGES
43001 - POSSESSING INSTRUMENTS OF CRIME GENERALLY 907A M1 ✓
81005 - POSSESSING INSTRUMENTS OF CRIME - CONCEALED WEAPON 907B M1 Comm Not moving to trial
~~81006 - PROHIBITED OFFENSIVE WEAPONS 908 M1~~

PRE-TRIAL/TRIAL WAIVER/JURY Defendant requests a trial by jury 6/12/87 M Gordon

DATE 6/12/87 ROOM 443 COURT STENO Alexis Cox Wilkens COURT CLERK Clemmons 6/10/87

JUDGE Hon Angelo A. Guarino ADA Barbara McDermott Esq. COUNSEL Quinton Brooks Esq.

PLEA Jury selection began + completed
6/16/87 Jury sworn
Defendant plea: Not guilty to ct #1
Testimony began.
6/18/87 After hearing testimony + arguments jury retires to deliberate.
upon due deliberation, the jury returns with a verdict of Guilty P.I.C. Gen. Sentence deferred pending the filing of post trial motions. Pre sentence + psychiatric reports are ordered. C 9/10/87 Rm 443. Bail is increased to $50,000. April 25, 1988 R443

VERDICT Hon Angelo A. Guarino — DATE

With leave of Court, Comm moves to Nolle Prosse written Bill of Indictment as to Count 2.
[illegible]
Approved ADA Steven Rubin for ADA Barbara McDermott

By the Court
Guarino J.
Judge

SENTENCE

DATE May 17, 1988 ROOM 443 COURT STENO David Oeir COURT CLERK J. Wells

JUDGE Hon Angelo A. Guarino ADA Barbara McDermott COUNSEL A. Charles Peruto, Esq.

Further hearing on post verdict Motions - Denied.
Deft to served not less than one (1) year, nor more than two (2) years at the C.C.I., to run Concurrently with CP 8611-2408 Aggravated Sentence Stayed Pending Appeal - Bail increased from $35,000.00 to $85,000.00 - Order for posting of bail is stayed until 5-19-88 - R 443.
By the Court
Guarino J.

4-25-88 R443
Hon Angelo A. Guarino
ADA B. McDermott
Def - Quinton Rose, Esq. Assoc w/ A. C. Peruto
Steno - L. Brandon
Clk - J. Wells
Defense Post Trial & Supplemental Motions - Heard and Denied
5-11-88 By the Court
R443 A. Guarino J.

~~4-024205~~ ~~90~~044159

CP-51-CR-1124071-1986
(MC-51-CR-1106891-1986)

COMMONWEALTH OF PENNSYLVANIA
PHILADELPHIA COUNTY

✓ FELONY P/H
__ MISDEMEANOR TL
__ DIVERSION CASE
__ FOJ
__ DOM VIOL

CRIMINAL COMPLAINT
COMMONWEALTH OF PENNSYLVANIA
COMMONWEALTH OF PENNSYLVANIA VS. ANDREW FULLMAN

M.C.#:                                    D.C.#:   86 12 68933

I, the undersigned, do hereby state under oath or affirmation:

(1) My name is: MARK A. WINTER, Assistant District Attorney.

(2) I accuse ANDREW FULLMAN, who lives at 5835 WASHINGTON AVE., PHILA., PA.,
with violating the penal laws of Pennsylvania.

(3) The day and date when the accused committed the offense was on or about:
SATURDAY, OCTOBER 4, 1986.

(4) The offense was committed in the County of Philadelphia.

(5) The acts committed by the accused were:  Defendant did attempt to cause
and/or did intentionally, knowingly, or recklessly cause serious bodily injury
to BRUCE BEATTY (age 17,) on the highway at 2109 COBBS CREEK PKWY. by firing a
shot at him from a handgun; in violation of Pa. Penal Laws, Section(s) and
Title(s):  2702 AGG. ASSLT. F2; 2701 SIMPLE ASSLT. M2; ▓▓▓▓▓▓ 907 PIC
M1; ▓▓▓▓▓▓▓▓▓ all of which is against the peace and dignity of
the Commonwealth.

(6) I ask that a warrant of arrest or a summons be issued and that the accused
be required to answer the charges I have made.

(7) I swear to or affirm the within complaint upon my knowledge, information and
belief, and sign it on 10-08-86  before Phila. Municipal Court Judge/Bail
Commissioner _____
                                    Mark C. Winter
                                    Signature of Affiant
                                    Del Doan 9313

On 10/26/86,  the above named affiant swore or affirmed that the facts set forth
in the complaint were true and correct to the best of his/her knowledge,
information and belief, and signed it in my presence.  I believe the within
affiant to be a responsible person and that there is probable cause for the
issuance of process.
                                    Stanley E Signs  SEAL
                                    Issuing Authority

WAIVER:  On _____, I appeared before Judge/Bail Commissioner _____
who read the above complaint to me and explained its contents, and I hereby
waived preliminary hearing and consent to be bound over to Court.

_____                    _____
Defendant                                   Defense Attorney

SIX HOUR
90044459

97 014104

# First Judicial District of Pennsylvania
## Accounting for Responsible Participant

**Selection Criteria:**   Responsible Participant: Fullman, Andrew
Sections Printed: Payment Plan Summary, Account Detail

**Total Amount Owed By Participant (on all cases):  $0.00**

### Case Summary

| Docket Number | Caption | Payment Plan No | Case Category | Case Status |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Total Assessments: | (a) | Bail/Collateral Set: | (e) | Escrow Amount: |
| Total Adjustments: | (b) | Bail/Collateral Receipted: | (f) | Escrow Disbursed: |
| Total Payments: | (c) | Balance: | (g) | Escrow Balance: |
| Total Balance: | (d) | | | |

## Payment Plan Summary

*There are no payment plans for this participant*

## Participant Account Detail

*There is no account activity for this participant*

FINES AND COSTS
HAVE BEEN PAID

WITNESSES

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA        ss.

In the Common Pleas Court of the County of Philadelphia

CRIMINAL SECTION

THE DISTRICT ATTORNEY OF PHILADELPHIA COUNTY BY THIS INFORMATION CHARGES—

FIRST COUNT —THAT ON OR ABOUT        OCTOBER 4, 1986
IN PHILADELPHIA COUNTY,

ANDREW FULLMAN

UNLAWFULLY DID POSSESS AN INSTRUMENT OF CRIME WITH INTENT TO
EMPLOY IT CRIMINALLY.

SECOND COUNT—THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,
ANDREW FULLMAN

UNLAWFULLY DID POSSESS A FIREARM OR OTHER WEAPON CONCEALED UPON
HIS PERSON WITH INTENT TO EMPLOY IT CRIMINALLY.

~~THIRD COUNT —THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,~~

~~NOT AUTHORIZED BY LAW, UNLAWFULLY DID MAKE, REPAIR, SELL
OR OTHERWISE DEAL IN, USE OR POSSESS AN OFFENSIVE WEAPON.~~

INSTRUMENT OF CRIME —        HANDGUN

FIREARM OR OTHER WEAPON —        HANDGUN

~~XXXXXXXXXXXXXXXXXXXXXXX~~

X

18 PA. S. 907A-907B-~~908~~
All of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.

| NOVEMBER 19, 1986 | DISTRICT ATTORNEY RONALD D. CASTILLE | ASSISTANT DISTRICT ATTORNEY JOSEPH |
|---|---|---|

30-91A (Rev. 5/81)



WITNESSES

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA      ss.

In the Common Pleas Court of the County of Philadelphia
CRIMINAL SECTION

THE DISTRICT ATTORNEY OF PHILADELPHIA COUNTY BY THIS INFORMATION CHARGES-

OCTOBER 4, 1986

FIRST COUNT -THAT ON OR ABOUT
IN PHILADELPHIA COUNTY,

ANDREW FULLMAN

UNLAWFULLY DID ATTEMPT TO CAUSE BODILY INJURY OR DID
INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSE BODILY INJURY
TO ANOTHER.

SECOND COUNT-THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,

~~UNLAWFULLY AND NEGLIGENTLY DID CAUSE BODILY INJURY WITH A
DEADLY WEAPON TO ANOTHER.~~

~~THIRD COUNT -THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,~~
ANDREW FULLMAN

UNLAWFULLY DID ATTEMPT BY PHYSICAL MENACE TO PUT ANOTHER IN
FEAR OF IMMINENT SERIOUS BODILY INJURY.

THIRD
~~FOURTH~~ COUNT-THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,
ANDREW FULLMAN

FELONIOUSLY DID ATTEMPT TO CAUSE, OR INTENTIONALLY, KNOWINGLY
OR RECKLESSLY DID CAUSE, SERIOUS BODILY INJURY TO ANOTHER UNDER
CIRCUMSTANCES MANIFESTING EXTREME INDIFFERENCE TO THE VALUE OF
HUMAN LIFE.

FOURTH
~~FIFTH~~ COUNT-THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,
ANDREW FULLMAN

~~FELONIOUSLY DID ATTEMPT TO CAUSE, OR INTENTIONALLY, KNOWINGLY
OR RECKLESSLY DID CAUSE SERIOUS BODILY INJURY TO A POLICE
OFFICER MAKING OR ATTEMPTING TO MAKE A LAWFUL ARREST OR
TO AN OPERATOR OF A VEHICLE USED IN PUBLIC TRANSPORTATION
WHILE OPERATING SUCH A VEHICLE.~~

SIXTH COUNT -THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,

UNLAWFULLY DID ATTEMPT TO CAUSE, OR INTENTIONALLY OR KNOWINGLY
DID CAUSE, BODILY INJURY TO A POLICE OFFICER MAKING OR
ATTEMPTING TO MAKE A LAWFUL ARREST.

~~SEVENTH COUNT THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,~~

UNLAWFULLY DID ATTEMPT TO CAUSE, OR INTENTIONALLY OR KNOWINGLY
DID CAUSE, BODILY INJURY TO ANOTHER WITH A DEADLY WEAPON.

~~EIGHTH COUNT  THAT ON THE SAME DAY AND YEAR, IN PHILADELPHIA COUNTY,~~

UNLAWFULLY DID ATTEMPT TO CAUSE OR INTENTIONALLY OR KNOWINGLY
CAUSED BODILY INJURY TO A TEACHING STAFF MEMBER, SCHOOL BOARD
MEMBER, OTHER EMPLOYEE OR STUDENT OF ANY ELEMENTARY OR
SECONDARY PUBLICLY FUNDED EDUCATIONAL INSTITUTION, ANY
ELEMENTARY OR SECONDARY PRIVATE SCHOOL LICENSED BY THE
DEPARTMENT OF EDUCATION OR ANY ELEMENTARY OR SECONDARY
PAROCHIAL SCHOOL WHILE ACTING IN THE SCOPE OF HIS OR HER
EMPLOYMENT OR BECAUSE OF HIS OR HER EMPLOYMENT RELATIONSHIP
TO THE SCHOOL.

VICTIM - BRUCE BEATTY
18 PA. S. 2701-2702

All of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.

NOVEMBER 19, 1986

DISTRICT ATTORNEY
RONALD D. CASTILLE

ASSISTANT DISTRICT ATTORNEY
JOSEPH

30-91A (Rev. 5/81)

# EXHIBIT D-1



LIEUTENANT GOVERNOR'S OFFICE
**PENNSYLVANIA BOARD OF PARDONS**
333 MARKET STREET, 15TH FLOOR
HARRISBURG, PA 17126-0333
(717) 787-2596

December 5, 2022

Lieutenant Governor John Fetterman
Chairman

Mr. Andrew Fullman
810 Arch Street
Apartment 304
Philadelphia, PA 19107

**RE: Board of Pardons Number: C-8957**
**Application Number: 55164**

Dear Mr. Fullman:

Please be advised that the Honorable Tom Wolf, Governor of the Commonwealth of Pennsylvania, has concurred with the Board's recommendation to grant your pardon. Enclosed is the Charter of Pardon signed by the Governor on December 2, 2022.

Please note, a Pardon is not the same as an expungement, but it does make it possible to have your criminal record expunged. The court in the county where the offense(s) occurred can order an expungement of your record. Expungement procedures vary from county to county, and therefore, you must contact the Clerk of Courts Office in the county where the offense(s) occurred to get more information.

Respectfully,

K. Celeste Trusty
Secretary
Board of Pardons

KCT/jg
Enclosures

EXHIBIT D-1

# EXHIBIT D-2



# Commonwealth of Pennsylvania

# Governor's Office

## TO ALL TO WHOM THESE PRESENTS SHALL COME GREETING:

*Whereas,* In the Court of Common Pleas in and for the County of Philadelphia docketed to number CP-51-CR-1124071-1986, OTN: M288178-2, a certain Andrew Fullman was convicted of the crime(s) of Aggravated Assault (F2), Possessing Instruments of Crime (M1) and Simple Assault (M2).

*And Whereas,* The Board of Pardons, after full hearing, upon due public notice, and in open session, have recommended to me, in writing, with the reasons therefor, the pardon of the said Andrew Fullman which recommendation and reasons have been filed in the office of the Lieutenant Governor.

*Therefore, know ye,* That in consideration of the premises and by virtue of the authority vested in me by the Constitution, I have pardoned the said Andrew Fullman, born on May 20, 1965, identified by SSN: XXX-XX-5992 of the crime(s) whereof he was convicted as aforesaid, and he is hereby thereof fully pardoned accordingly.

*Given* under my hand and the Great Seal of the State, at the City of Harrisburg, this **2nd** day of **December** in the year of our Lord two thousand and twenty-two.

By the Governor.



_Tom Wolf_
of Pennsylvania

EXHIBIT D-2

_Leigh M. Chapman_
Acting Secretary of the Commonwealth

# EXHIBIT E-1

Commonwealth of Pennsylvania
Court of Common Pleas
County of Philadelphia
1st Judicial District



**NOTICE OF
EXPUNGEMENT**

Commonwealth of Pennsylvania
v.
Andrew Fullman

| Philadelphia Office of Judicial Records - Criminal
1301 Filbert St.
TD1202
Philadelphia, PA  19107 |

Docket No:         CP-51-CR-1124071-1986

You are hereby DIRECTED to appear for a/an Expungement in the above-captioned case to be held on/at:

| Date: March 17, 2023 | Location: 1104 - The Justice Juanita Kidd Stout Center for |
|---|---|
| Time:  9:00 am | Criminal Justice
1301 Filbert Street
Philadelphia, PA  19107 |

**To the Defendant:**

**You should discuss this matter promptly with your attorney. If you fail to appear as required or comply with the conditions of the bail bond, if any, then the bond shall remain in full force, and the full sum of the monetary condition of release may be forfeited and your release may be revoked. In addition, a warrant for your arrest may be issued. Bring this notice with you.**

**If you fail to appear without cause at any proceeding for which your presence is required, including trial, your absence may be deemed a waiver of your right to be present, and the proceeding, including the trial, may be conducted in your absence.**

**If you are disabled and require a reasonable accommodation to gain access to the Philadelphia County Court of Common Pleas and its services, please contact the Philadelphia County Court of Common Pleas at the above address or telephone number. We are unable to provide transportation.**

Recipient:  (Andrew Fullman)

Primary Participant Name and Address:
Fullman, Andrew
~~WASHINGTON AVE~~
PHILA., PA  19100

215-683-7518
Call 1 week before
court date to see
EXHIBIT E-1(7) Pages   if you need to
appear.

Commonwealth of Pennsylvania

v.

Andrew Fullman
_____
~~_____~~
Philadelphia, PA 191~~__~~

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA**

**CRIMINAL DIVISION**

**DOCKET NO:**
CP-51-CR -1124071_____ -1986 __

Lower Court Docket Number (If Applicable):

MC -51- CR - 1106891 _____ 1986 __

-51- - _____ - _____

-51- - _____ - _____

# ORDER

AND NOW, this _____ day of _____, 20___, after consideration of the petition for expungement Pursuant to Pa.R.Crim.P. 790 presented by Andrew Fullman_____ , it is ORDERED that the Petition/Motion is _____.

The defendant's arrest record regarding these charges shall be expunged. Further, it is ORDERED that the arresting agency shall destroy all criminal records, fingerprints, photographic plates and photographs pertaining to the charge(s) specified below, which resulted from the arrest(s) of Andrew Fullman_____. In addition, all criminal justice agencies upon which this order is served shall expunge and destroy the official and unofficial arrest and other criminal records, files and other documents pertaining to the captioned proceedings.

The information required under Pa.R.Crim.P. 790 appears on the attached page(s) which is hereby incorporated into this ORDER by reference.

BY THE COURT:

_____

County of Philadelphia
1st Judicial District



Commonwealth of Pennsylvania
v.

Andrew Fullman

Docket No: CP -51-CR - 1124071 - 1986

## Petition for Expungement Pursuant to Pa.R.Crim.P. 790

AND NOW, the petitioner avers the following and requests that this petition for expungement pursuant to
Pa.R.Crim.P. 790 be granted for the reasons set forth below.

### PETITIONER INFORMATION

| | | |
|---|---|---|
| Full Name: Andrew Fullman | DOB: ████ | Social Security Number: ████ |
| Address: ████████ Philadelphia, PA 191██ | Alias(es): N/A | |

### CASE INFORMATION

List name, address of the Judge of the Court of Common Pleas or Philadelphia Municipal Court who accepted the guilty plea or heard the case:

| | |
|---|---|
| Judge: Guarino, Angelo A. | Address: 1301 Filbert Street Philadelphia, PA 19107 |
| Philadelphia Municipal Court or Court of Common Pleas Docket Number: CP51CR11240711986/MC51CR11068911986 | OTN: M 288178-2 |
| Name of Arresting Agency: Philadelphia Police Department | Date of Arrest: 11/08/1986 | Date on Citation or Complaint: |

List name and mailing address of the affiant as shown on the complaint, if available:

| | |
|---|---|
| Name of Affiant: Philadelphia Police Department | Address: 400 N Broad Street Philadelphia, PA 19130 |

List specific charges, as they appear on the charging document, to be expunged and the disposition of each charge
(please attach additional sheet(s) of paper if necessary):

| PA Statute (Title) | Section | Subsection | Statute Description | Counts | Grade | Disposition |
|---|---|---|---|---|---|---|
| 18 | 2702 | | Aggravated Assault | | | Guilty |
| 18 | 2701 | | Simple Assault | | | Guilty |
| 18 | 907 | | Possessing Instrument of a Crime | | M1 | Guilty |

If the sentence imposed included a fine, costs or restitution, has the amount due been paid?  Yes ■  No ☐

List the reason(s) for the expungement (please attach additional sheet(s) of paper if necessary):

Clear Record

☑ I have attached a copy of my Pennsylvania State Police Criminal History which I have obtained within 60 days before filing this petition.

☐ I have not attached a copy of my Pennsylvania State Police Criminal History. State reason(s) below:

When this petition is filed with the Clerk of Courts, the petitioner shall serve a copy upon the attorney for the Commonwealth.

I, the undersigned petitioner, avers that the facts set forth in this petition are true and correct to the best of my personal knowledge and belief, and are made subject to the penalties of unsworn falsification to authorities under 18 Pa.C.S § 4904.

Andrew Fullman
_____
Signature of Petitioner

12/12/2022
_____
Date

1 of 3

③



## First Judicial District of Pennsylvania
## Secure Court Summary

**Fullman, Andrew**
~~501 WASHINGTON AVE~~
PHILA., PA  19100
Aliases:
Andrew Fullman

DOB: ~~~~
SID: 174-00-77-1
PID: 0665434
License:

Sex: Male
Eyes: Brown
Hair: Black
Race: Black

**Closed**

**Philadelphia**

**CP-51-CR-1124071-1986**          Proc Status: Awaiting Expungement          DC No: 8612068933 OTN: M 288178-2

Arrest Dt; 11/08/1986        Disp Date: 05/17/1988        Disp Judge: Guarino, Angelo A,

Def Atty: Belmont, David - (CA)

| Seq No | Statute | | Grade | Description | | Disposition |
|--------|---------|--|-------|-------------|--|-------------|
| | Sentence Dt. | Sentence Type | | Program Period | Sentence Length | |
| 1 | 18 § 2702 | | | AGGRAVATED ASSAULT | | Guilty |
| | 05/17/1988 | Confinement | | | Min: 5 Year(s) Max: 10 Year(s) | |
| 2 | 18 § 2701 | | | SIMPLE ASSAULT | | Guilty |
| 3 | 18 § 907 | | M1 | Possessing Instruments of a Crime | | Guilty |
| | 05/17/1988 | Confinement | | | Min: 1 Year(s) Max: 2 Year(s) | |

**MC-51-CR-1106391-1986**          Proc Status: Completed          DC No: 8612068933 OTN: M 288178-2

Arrest Dt: 11/08/1986        Disp Date: 11/14/1986        Disp Judge: Knauer, Wilhelm F. Jr.

| Seq No | Statute | Grade | Description | Disposition |
|--------|---------|-------|-------------|-------------|
| 1 | 18 § 2702 | | AGGRAVATED ASSAULT | Held for Court |
| 2 | 18 § 2701 | | SIMPLE ASSAULT | Held for Court |
| 3 | 18 § 907 | | POSSESSING INSTRUMENTS OF CRIME WEAPON | Held for Court |

---

CPCMS 3541                                   1                     Printed: 12/12/2022  9:10 AM

Recent entries made in the court filing offices may not be immediately reflected on the court summary report. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Court Summary Report information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

Please note that if the offense disposition information is blank, this only means that there is not a "final disposition" recorded in the Common Pleas Criminal Court Case Management System for this offense.  In such an instance, you must view the public web docket sheet of the case wherein the offense is charged in order to determine what the most up-to-date disposition information is for the offense.

④

# Commonwealth of Pennsylvania



# Governor's Office

## TO ALL TO WHOM THESE PRESENTS SHALL COME GREETING:

*Whereas,* In the Court of Common Pleas in and for the County of Philadelphia docketed to number CP-51-CR-1124071-1986, OTN: M288178-2, a certain *Andrew Fullman* was convicted of the crime(s) of Aggravated Assault (F2), Possessing Instruments of Crime (M1) and Simple Assault (M2).

*And Whereas,* The Board of Pardons, after full hearing, upon due public notice, and in open session, have recommended to me, in writing, with the reasons therefor, the pardon of the said *Andrew Fullman* which recommendation and reasons have been filed in the office of the Lieutenant Governor.

*Therefore, know ye,* That in consideration of the premises and by virtue of the authority vested in me by the Constitution. I have pardoned the said *Andrew Fullman,* born on May 20, 1965, identified by SSN: XXX-XX-5992 of the crime(s) whereof he was convicted as aforesaid, and he is hereby thereof fully pardoned accordingly.



*Given* under my hand and the Great Seal of the State, at the City of Harrisburg, this **2nd** day of _December_ in the year of our Lord two thousand and twenty-two.

By the Governor:

_____
Governor of Pennsylvania

_____
Acting Secretary of the Commonwealth

ⓖ



Commonwealth of Pennsylvania
Court of Common Pleas
County of Philadelphia
1st Judicial District

**RECEIPT**

**Receipt Number: 51-2022-R000076389**
**Recorded Date: 12/12/2022  09:51AM**
Receipt Date: 12/12/2022

| | |
|---|---|
| **Payor:**  **Andrew Fullman** | **Payable to:**  **First Judicial District of Pennsylvania** |
| ~~████████████~~ | **Attention Accounting Unit** |
| **PHILA., PA  19100** | **714 Market Street** |
| | **Philadelphia, PA  19106** |

**Payment Source:  Window**

| Payment Date | Payment Method | Check / Money Order Number | Bank Transit Number | Void | Payment Amount |
|---|---|---|---|---|---|
| 12/12/2022 | Credit Card | | | No | $147.00 |

Responsible Participant: Andrew Fullman

*Docket Number: CP-51-CR-1124071-1986*    *Short Caption: Comm. v. Fullman, Andrew*

Total Amount Owed by Responsible Participant on this case:    $0.00

Total Amount Owed by Responsible Participant on all non-archived cases in this Court:    $0.00

Payment Summary:

| | | |
|---|---|---|
| *Total Payment Received:* | $ | 147.00 |
| *Change Amount:* | $ | 0.00 |
| *Retained Unapplied Amount:* | $ | 0.00 |
| *Payments Less Change:* | $ | 147.00 |

**Comments:**

**RETAIN THIS RECEIPT FOR YOUR RECORDS**

You can now make case payments online through Pennsylvania's Unified Judicial System web portal. Visit the portal at *https://ujsportal.pacourts.us/epay* to make a payment and learn more.  Currently, Epay is available for Criminal and Summary Appeal docket types and for participating counties, Miscellaneous or Juvenile Delinquency docket types.

CPCMS 2128
Printed: 12/12/2022  9:51:44AM



FREE INTERPRETER
www.pacourts.us/language-rights
215-683-8000

ACCOUNTING
1301 FILBERT ST ROOM 31
PHILADELPHIA, PA 19107

12/12/2022                    09:51:09

CREDIT CARD

VISA SALE

Card #                    XXXXXXXXXXXX2678
Chip Card:                    VISA CREDIT
AID:                      A0000000031010
SEQ #:                               1
Batch #:                           875
INVOICE                              1
Approval Code:                  012583
Entry Method:               Contactless
Mode:                           Issuer

SALE AMOUNT              $147.00


CUSTOMER COPY

# EXHIBIT E-2

3/17

**Commonwealth of Pennsylvania**

v.

Andrew Fullman

_____

810 Arch Street, Apt. 304
Philadelphia, PA 19107

**IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA**

**CRIMINAL DIVISION**

**DOCKET NO:**
CP-51-CR -1124071_____ -1986___

Lower Court Docket Number (If Applicable):

MC -51- CR_ 1106891_____ ___1986__

-51- _____ -_____

-51- _____ -_____

---

## ORDER

AND NOW, this 17 day of March , 2023, after consideration of the petition for expungement Pursuant to Pa.R.Crim.P. 790 presented by Andrew Fullman_____, it is ORDERED that the Petition/Motion is granted

The defendant's arrest record regarding these charges shall be expunged. Further, it is ORDERED that the arresting agency shall destroy all criminal records, fingerprints, photographic plates and photographs pertaining to the charge(s) specified below, which resulted from the arrest(s) of Andrew Fullman_____. In addition, all criminal justice agencies upon which this order is served shall expunge and destroy the official and unofficial arrest and other criminal records, files and other documents pertaining to the captioned proceedings.

The information required under Pa.R.Crim.P. 790 appears on the attached page(s) which is hereby incorporated into this ORDER by reference.

I HEREBY CERTIFY the foregoing to be
a true and correct copy of the original
_order_____ as filed in this
office:
Date: 3-24-23

Office of Judicial Records
Criminal Motion Court Clerk
First Judicial District of Pa.

BY THE COURT:

EXHIBIT E-2
(3) Pages

Pursuant to Pa.R.Crim.P. 790, the following information is provided:

1. Petitioner Name: Andrew Fullman

2. Alias(es): N/A

3. Petitioner's Address: 810 Arch Street, Apt. 304
Philadelphia, PA 19107

4. Petitioner's Date of Birth: 05 / 20 / 1965

5. Petitioner's Social Security Number: 190 - 60 - 5992

6. Name and address of the judge of the Court of Common Pleas or Philadelphia Municipal Court who accepted the guilty plea or heard the case: Guarino, Angelo A.
1301 Filbert Street, Philadelphia, PA 19107

7. Name and mailing address of the affiant as shown on the complaint, if available: Philadelphia Police Departme
400 N Broad Street
Philadelphia, PA 19130

8. Docket Number: CP51CR11240711986MC51CR11068911986

9. Offense Tracking Number (OTN): M 288178-2

10. The date on the complaint, or the date of arrest, and if available, the criminal justice agency that made the arrest: 11/08/1986 Philadelphia Police Department

11. The specific charges, as they appear on the charging document, to be expunged and applicable dispositions (attach additional sheets if needed):
18 2702 Aggravated Assault Guilty Confinement 5 Year(s) Max: 10 Year(s)
18 2701 Simple Assault Guilty
18 907 M1 Possessing Instruments of a Crime Guilty 1 Year(s) Max: 2 Year(s)

12. If the sentence includes a fine, costs, or restitution, whether the amount due has been paid: Yes

13. The reason for expungement:
Clear Record

14. The criminal justice agencies upon which certified copies of the order shall be served: Philadelphia Police Dept and State Police Dept

3 of 3



# Commonwealth of Pennsylvania

## Governor's Office

### TO ALL TO WHOM THESE PRESENTS SHALL COME GREETING:

**Whereas,** In the Court of Common Pleas in and for the County of Philadelphia docketed to number CP-51-CR-1124071-1986, OTN: M288178-2, a certain Andrew Fullman was convicted of the crime(s) of Aggravated Assault (F2), Possessing Instruments of Crime (M1) and Simple Assault (M2).

**And Whereas,** The Board of Pardons, after full hearing, upon due public notice, and in open session, have recommended to me, in writing, with the reasons therefor, the pardon of the said Andrew Fullman which recommendation and reasons have been filed in the office of the Lieutenant Governor.

**Therefore, know ye,** That in consideration of the premises and by virtue of the authority vested in me by the Constitution, I have pardoned the said Andrew Fullman, born on May 20, 1965, identified by SSN: XXX-XX-5992 of the crime(s) whereof he was convicted as aforesaid, and he is hereby thereof fully pardoned accordingly.

**Given** under my hand and the Great Seal of the State, at the City of Harrisburg, this 2nd day of December in the year of our Lord two thousand and twenty-two.

By the Governor:



_Tom Wolf_
Governor of Pennsylvania

_Leigh M. Chapman_
Acting Secretary of the Commonwealth

③.

# EXHIBIT F

<u>Page 1 of 2</u>

Andrew Fullman
1305 N. 15th Street, Apt. C
Philadelphia, PA 19121-4372
(610) 457-9498

July 18, 2016

<u>**VIA CERTIFIED/REGULAR MAIL**</u>

Governor Tom Wolf
Main Capitol Building
1600 Pennsylvania Avenue NW, Room 225
Harrisburg, PA 17120

Certified #7015-0640-0002-3472-3389
RETURN RECEIPT REQUESTED

RE:     **ANDREW FULLMAN'S REQUEST FOR A PARDON**

Dear Governor Wolf:

I am writing to respectfully request a Pardon.  The Pennsylvania Post-Conviction Relief Act law [42 Pa.C.S.A. § 9543(a) (1) (i)] prevents a person from pursuing a collateral review in state and federal court once their criminal sentence expires regardless of the circumstances.  The current law further prevents a person from challenging police perjury, conspiracy, falsifying police evidence, and prosecutorial misconduct if such evidence becomes available *after the completion of a criminal sentence.*  I've recently learned after the completion of my state criminal sentence that Philadelphia Police Officer Johnnie Carter, #1305, falsified police evidence and committed perjury thus testifying under oath at my criminal trial [Commonwealth of Pennsylvania vs. Andrew Fullman, No. CP-51-CR-1124071-1986] that an alleged mark on the street was consistent with a bullet ricochet mark, having seen "hundreds" of bullet *ricochet marks during her training at the Philadelphia Police Academy. See Exhibit "A".* My registered gun was a 357 magnum.  I'm sure Officer Carter's scientific theory does not apply to all caliber handguns.  Officer Carter's vicious perjury has destroyed my life and caused me to serve over five years of incarceration at SCI-Smithfield, Huntingdon, Pennsylvania.

*On October 4, 1986, I acted in self-defense* when Bruce Beatty attacked me with a wooden baseball bat at which time I showed him my gun to stop the attack.  I had a legal right to defend myself while under attack with the baseball bat.  However, I never fired my gun.  Mr. Beatty immediately put the baseball bat down upon seeing the gun.  Mr. Beatty testified at trial that he observed a bullet mark in the street.  However, at the preliminary hearing, he testified that the bullet mark was in the sidewalk.

I was considered armed and dangerous, but allowed to remain free for over thirty (30) days after allegedly shooting at Mr. Beatty.  Philadelphia police decided not to arrest me until over a month after the October 4, 1986 incident even though my identity, residence, and job at the United States Postal Service were available on the date of the incident.  The delay in my arrest, combined with the failure of police to search for gunfire residence, and other *ballistics evidence would lead a reasonable* person to believe that a shooting never occurred and that my fate was sealed when Officer Carter gave false testimony about seeing a fresh ricochet mark and her ballistics experience from seeing hundreds of bullet ricochet marks during her training at the Philadelphia Police Academy. *See Exhibit "A".*  A simple gun residue test would have proven that I never fired my gun on October 4, 1986.

EXHIBIT F   (2) Pages

I recently learned that there are no such bullet ricochet marks *(a skid mark that had been dug up, about three inches in length)* at the Philadelphia Police Academy as falsely testified by Officer Carter. **See Exhibit "A".** In support thereof, I have obtained a notarized sworn statement from Officer Keenan Morris stating that due to the layout of the shooting range there are no such bullet ricochets marks at the Philadelphia Police Academy. **See Exhibit "B".** Officer Morris also graduated from the Philadelphia Police Academy. In further support thereof, Lt. Edward Egenlauf (Open Records Officer) stated in an Affidavit that a **backstop** is used at the end of the shooting range to catch bullets. A true and correct copy of the Lt. Egenlauf's Affidavit is marked **Exhibit "C"** and attached hereto. In addition, the **backstop** at the Philadelphia Police Academy is constructed of rubber with paper in front of it.

The Affidavit of Lt. Edward Egenlauf (Open Records Officer) states, *"The Police Academy shooting range is an open-air range with a backstop at one end and walls along the left and right sides to prevent bullets from straying outside of the range. However, the range is not enclosed, and the walls to the left and right prevent individuals within the range from seeing any approaching individuals beyond the walls."* Accordingly, there are no skid marks that had been dug up about three inches in length. Officer Carter had it out for me and intentionally lied about the bullet mark to have me convicted of a crime which never happened.

Two lawyers have informed me that this case was politically motivated, and used to build case law to frame and wrongfully convict other people with similar cases. Now the Philadelphia District Attorney can secure a conviction by using my case (case law) which includes: 1) waiting over thirty (30) days to make an arrest; 2) failing to obtain a ballistic expert's report; 3) using a police officer to fabricate seeing a bullet mark; 4) accepting family member's hearsay testimonies; and, 5) failing to give a hand swab gun residue test.

The true facts to this matter is, the Philadelphia District Attorney and Philadelphia Police Department conspired over thirty (30) days to build a false case against me even though they knew where I lived and worked. Detective William Dorney instructed Officer Carter to falsify police evidence and commit perjury, and then ended her employment with the Department before this matter came to the light. I have attempted to reach out to lawmakers concerning the current Post-Conviction Relief Act (PCRA) law which isn't fair to innocent people like myself. A person should have a constitutional right to challenge serious police conspiracy and corruption at any time it becomes available even if their criminal sentence has expired. Should you have any questions or need any additional information, please call me at (610) 457-9498.

Respectfully submitted,

Andrew Fullman

Enclosures
cc:

2

# EXHIBIT G

**Andrew Fullman**
**810 Arch Street Apt. 304**
**Philadelphia, PA 19107**
**Cell: (610) 457-9498**
**Email: Andrewf816@gmail.com**

---

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW FULLMAN, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PHILADELPHIA, | ) | |
| JOHNNIE MAE CARTER #1305, | ) | |
| BARBARA A. MCDERMOTT, | ) | |
| WILLIAM DORNEY, | ) | |
| | ) | |
| Defendants. | ) | No. 17-2673 |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO ALL DEFENDANTS

COMES NOW, the Plaintiff, Andrew Fullman, Pro Se., (hereinafter collectively referred to as "Plaintiff") and pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, hereby submits the following Interrogatories and Request for Production of Documents directed to **ALL Defendants**. Plaintiff request that Defendants serve its answers, in writing and under oath, to the undersigned Plaintiff at 810 Arch Street, Apt. 304, Philadelphia, PA 19107, within **thirty (30) days** of service of these Interrogatories and Request for Production of Documents.

The Interrogatories and document requests are to be deemed continuing, requiring you to submit by way of supplemental answer any additional response and future information that may become known to you and your representative prior to the hearing in this action. The answers should include all information known up to the date of their verification.

N.     If you refuse to produce any requested document pursuant to a claim or privilege, please submit a certified sworn statement setting forth as to each such document: (a) the date and subject matter of the document: (b) the names and business position of its authors and addresses; (c) all persons to whom copies of the document were directed or to whom its contents were disclosed in whole or in part; (d) all persons whose signatures, initials or other notations appear on the document; and (e) the basis of the privilege claimed.

O.     If you maintain that any document or record requested or that is related to the subject matter of an interrogatory has been destroyed, set forth the content of said document, the location of any copies of said document, the date of such destruction and the names of the persons who ordered or authorized such destruction.

1

EXHIBIT G

## INTERROGATORIES

1)      Set forth in detail whether or not Defendant Johnnie Mae Carter, Badge #1305, ever received any special or additional ballistics training than other police cadets receive during her training at the Philadelphia Police Academy, and/or during her career as a Philadelphia Police Officer?

**ANSWER:**

2)      Set forth in detail whether or not Defendant Johnnie Mae Carter was qualified and/or authorized by the Philadelphia Police Department to testify at Plaintiff's criminal trial as a ballistics expert in 1987?

**ANSWER:**

3)      Set forth in detail whether or not any police cadets ever seen any bullet marks on any street tar or ground at the Philadelphia Police Academy's firing range during their training between 1970 and 1987?  If so, please explain the bullet marks in full detail.

**ANSWER:**

4)      Set forth in detail whether or not there were ever any bullet marks on the street tar or ground at the Philadelphia Police Academy's firing range as testified and described by Johnnie Carter between 1970 and 1987?  If so, please explain in full detail.  **SEE EXHIBIT C of Amended Complaint**.

**ANSWER:**

2

5)      Set forth in detail whether or not Johnnie Mae Carter ever saw any bullet ricochet marks in any concrete, street tar or ground at the Philadelphia Police Academy firing range?

**ANSWER:**

6)      Describe in detail and with particularity as to what a **ballistic backstop** is at the Philadelphia Police Academy's shooting range.

**ANSWER:**

7)      Describe in detail and with particularity as to the purpose of having a **backstop** at the end of the Philadelphia Police Academy's shooting range?

**ANSWER:**

8)      Describe in detail and with particularity as to the material in which the **backstop** is constructed of at the Philadelphia Police Academy's shooting range.

**ANSWER:**

3

9)      Describe in detail and with particularity as to what type of bullet would leave a specific ricochet mark, such as a skid mark that had been dug up, about three (3) inches in length as testified by Defendant Johnnie Mae Carter, Badge #1305, under oath, at Plaintiff's criminal trial in 1987. **SEE EXHIBIT C of Complaint**.

**ANSWER:**

10)     Set forth in detail if Defendant Johnnie Mae Carter was specifically referring to a bullet fired from a .357 Magnum handgun with respect to the above **Interrogatory Number 9**. **SEE EXHIBIT C of Complaint**.

11)     Describe in detail and with particularity if there were ever any bullet marks at the Philadelphia Police Academy's shooting range such as a specific ricochet mark, a skid mark that had been dug up, about three (3) inches in length as testified and described by Defendant Johnnie Mae Carter in 1987. **SEE EXHIBIT C**.

**ANSWER:**

12)     Set forth in detail as to the date Johnnie Mae Carter resigned and/or separated from the Philadelphia Police Department.

**ANSWER:**

4

13)     Describe in detail and with particularity as to the reason(s) Johnnie Mae Carter resigned and/or separated from the Philadelphia Police Department.

**ANSWER:**

14)     Set forth in detail whether or not Defendant Johnnie Mae Carter was forced to resign from the Philadelphia Police Department?

**ANSWER:**

15)     Describe in detail and with particularity whether or not Defendant Johnnie Mae Carter testified truthfully at Plaintiff's criminal trial in 1987 that she saw **"hundreds"** of bullet ricochet marks at the Philadelphia Police Academy.  **SEE EXHIBIT C of Amended Complaint.**

**ANSWER:**

16)     Describe in detail and with particularity whether or not a bullet ricochet mark at the Philadelphia Police Academy's shooting range as testified and described by Defendant Carter at Plaintiff's criminal trial in 1987, would leave the same bullet ricochet mark on the street tar in Philadelphia, PA.  **SEE EXHIBIT C of Complaint.**

5

17)   Describe in detail and with particularity whether or not Defendant Carter was ever disciplined for testifying at Plaintiff's trial in 1987 as a ballistics expert and seeing **"hundreds"** of bullet marks at the Philadelphia Police Academy. **SEE EXHIBIT C of Amended Complaint.**

**ANSWER:**

18)   Set forth in detail whether or not Defendant Carter was ever disciplined or reprimanded during her career as a Philadelphia police officer.  If so, please explain in full detail.

**ANSWER:**

19)   Set forth in detail whether or not any convictions resulting from the testimony of Defendant Carter in any criminal proceedings were ever questioned or the subject of any investigation(s)?  If so, please explain in full detail.

**ANSWER:**

20)   Set forth in detail whether or not Defendant William Dorney had the authority to sign off on, agree, or authorize Defendant Carter to testify as a ballistics expert at Plaintiff's criminal trial in 1987?

**ANSWER:**

21)      Describe in detail and particularity whether or not Defendant Dorney was ever disciplined or reprimanded during his career with the Philadelphia Police Department.

**ANSWER:**

22)      Set forth in detail whether or not any convictions resulting from the testimony of Defendant Dorney in any criminal proceedings were ever questioned or the subject of any investigation(s)?  If so, please explain in full detail.

**ANSWER:**

23)      Set forth in detail whether or not Defendant Carter failed in her affirmative due process obligation as a law enforcement officer to submit any and **all** information to the prosecutor, defense counsel, and trial court as it relates to her perjured testimony that she saw **"hundreds"** of bullet marks at the Philadelphia Police Academy?

**ANSWER:**

24)      Set forth in detail whether or not Defendant Dorney failed in his affirmative due process obligation as a law enforcement officer to submit any and **all** information to the prosecutor, defense counsel, and trial court as it relates to Carter not being a ballistics expert, and not seeing **"hundreds"** of bullet marks at the Philadelphia Police Academy's shooting range?  If so, please explain in full detail.

**ANSWER:**

25)     Set forth in detail whether or not Detective William Dorney failed in his affirmative due process obligation as a law enforcement officer to submit any and **all** information to the prosecutor as it relates to the Philadelphia Police Academy not having bullet marks as testified and described by Defendant Carter?

**ANSWER:**

26)     Set forth in detail whether or not Defendant Carter was truthful by stating that she saw **"hundreds"** of bullet marks at the Philadelphia Police Academy?  **SEE EXHIBIT C of Amended Complaint**.

**ANSWER:**

27)     Set forth in detail whether or not Defendant Carter ever received any special or additional training than other police cadets with respect to ballistics experience and training?  If so, please explain in full detail.

**ANSWER:**

28)     Set forth in detail whether or not state witness, Bruce Beatty, testified at Plaintiff's Preliminary Hearing as having initially seen the alleged bullet mark on the **sidewalk**?

**ANSWER:**

8

29)     Set forth in detail whether or not state witness, Bruce Beatty, and Defendant Carter both testified under oath at Plaintiff's criminal trial in 1987 as having seen the alleged bullet mark on the **street**?

**ANSWER:**

30)     Set forth in detail whether or not the Superior Court of Pennsylvania issued an Order stating that they were unable to rule on one of Plaintiff's appeal issues regarding state witness, Bruce Beatty, changing his initial (Preliminary Hearing) testimony as a result of defense counsel's failure to include the notes of testimony to Plaintiff's direct appeal relating to Mr. Beatty initially testifying that the alleged bullet mark was on the **sidewalk**?

**ANSWER:**

31)     Set forth in detail whether or not the state witness, Bruce Beatty, is currently serving a sentence in a Pennsylvania state prison for raping an underaged girl?

**ANSWER:**

32)     Describe in detail and with particularity whether or not a forced resignation of a Philadelphia police officer is a type of disciplinary action?

**ANSWER:**

33)     Set forth in detail whether or not Defendant Dorney ever attended the Philadelphia Police Academy prior to becoming a Philadelphia police officer and detective?  If so, is it accurate to say that he had some knowledge as it relates to bullet marks at the Philadelphia Police Academy's shooting range?

**ANSWER:**

34)     Set forth in detail whether or not it is accurate to say that Defendant Dorney knew there were no bullet marks at the Philadelphia Police Academy such as was testified and described by Defendant Carter?

**ANSWER:**

35)     Set forth in detail whether or not Plaintiff caused or contributed to his criminal conviction in any way?  If so, please explain in full detail.

**ANSWER:**

36)     Set forth in detail whether or not Plaintiff knowingly and/or voluntarily plead guilty to the October 4, 1986 alleged shooting?  If so, please explain in full detail.

**ANSWER:**

37)   Set forth in detail whether or not any criminal cases involving Defendant Carter's testimony ever came into question after she separated from the Philadelphia Police Department?  If so, please explain in full detail.

**ANSWER:**

38)   Set forth in detail whether or not any criminal cases involving Defendant Dorney's testimony ever came into question after his separation from the Philadelphia Police Department?  If so, please explain in full detail.

**ANSWER:**

_____
Andrew Fullman, Plaintiff

Date: May 4, 2023

I, _____, do hereby verify that the facts as set forth in the within Interrogatories, are true and correct to the best of my personal knowledge or information and belief, and that any false statement therein are made subject to the penalties relating to unsworn falsification to authorities.  See Title 28 Section 1746.

_____
Signature

11

**Andrew Fullman**
**810 Arch Street, Apt. 304**
**Philadelphia, PA 19107**
**Cell: (610) 457-9498**
**Email: Andrewf816@gmail.com**

---

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW FULLMAN, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PHILADELPHIA, | ) | |
| JOHNNIE MAE CARTER #1305, | ) | |
| BARBARA A. MCDERMOTT, | ) | |
| WILLIAM DORNEY, | ) | |
| | ) | |
| Defendants. | ) | No. 17-2673 |

## <u>CERTIFICATE OF SERVICE BY MAIL</u>

I, Andrew Fullman, hereby certify that on the 4th day of May, 2023, I caused a true and correct copy of

PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR THE PRODUCTION OF

DOCUMENTS to be served via United States Postal Priority Mail upon the following:

Jeffrey Mozdziock, Esquire
Deputy Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(*Attorney for Agent Eileen M. Bonner)

Jonathan Cooker, Esquire
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(*Attorney for City of Philadelphia, et al.)


Andrew Fullman, Pro Se Plaintiff

Date: May 4, 2023

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW FULLMAN, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PHILADELPHIA, | ) | |
| JOHNNIE MAE CARTER #1305, | ) | |
| BARBARA A. MCDERMOTT, | ) | |
| WILLIAM DORNEY, | ) | |
| | ) | |
| Defendants. | ) | No. 17-2673 |

## PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS ADDRESSED TO ALL DEFENDANTS

COMES NOW, the Plaintiff and, pursuant to Federal Rules of Civil Procedure 26 and 34, hereby serve his Master Request for Production of Documents and Things to **ALL Defendants**, whom shall, within **thirty (30) days** after the date of service, produce copies of the following documents at the Plaintiff's address. Electronically stored information shall be produced in paper form.

### INSTRUCTIONS

1.       Please produce all documents and tangible things as they are kept in the usual course of business or organize and label them to correspond with the categories or numbered requests in this set of discovery. *See* Federal Rules of Civil Procedure 33(d) and 34(b)(2)(E).

2.       If any information or material is being withheld under any claim of privilege, protection, or immunity, please state with specificity the particular privilege protection, or immunity asserted. *See* Federal Rules of Civil Procedure 26(b)(5).

3.       If Defendant cannot produce requested information or material because it is not in Defendant's possession, custody, or control, please identify the information or material, the reason the information or material is not in Defendant's possession custody, or control, and the entity currently having possession, custody, or control over the information or material.

4.       When providing a date, please provide the exact day, month, and year. If the exact date is not known, please provide the best approximation of the date and clearly note that the date is an approximation.

5.       As specified by Federal Rule of Civil Procedure 34(b)(2)(E), if responsive material is in electronic, magnetic, or digital form, Plaintiff specifically requests production of such material. Plaintiff requests such material be provided on CD-ROM or compatible.

6.       In the event a proper and timely objection is filed as to any requested material, please nevertheless respond to all portions of the request which do not fall within the scope of the objection. For example, if a request is objected to on the grounds that it is too broad insofar as it seeks documents covering years Defendant believes are not relevant to this litigation, please nevertheless produce documents for all years which Defendant concedes are relevant. *See* Federal Rules of Civil Procedure 33(b)(3) and 34(b)(2)(C).

1

EXHIBIT H

## GENERAL DEFINITIONS

As used in this set of discovery, the following terms mean:

1.      The term "documents" is defined to have the same meaning and to be equal in scope to the terms "documents" and "electronically stored information" as used in Federal Rule of Civil Procedure 34(a).

2.      "You" and/or "You" refers to Defendants herein and to all other persons acting or purporting to act on behalf of Defendants, including agents and employees.

3.      "Communications" shall mean all inquiries, discussions, conversation, negotiations, agreements, understandings, meetings, telephone conversations, letters, correspondence, notes, telegrams, facsimiles, text message, e-mail, or other forms of verbal and/or communicative intercourse.

4.      "Persons" means an individual, corporation, associations, company, organization, or any form of a business or commercial entity.

5.      For purpose of this discovery request "Identify" is defined as the following:
        (1)      *when used with respect to an individual*, means to state (a) their name; (b) business affiliation and official title and/or position; and (c) their last known residential and business address.
        (2)      *when used with respect to a document*, means to state (a) the type of document (e.g. letter, memorandum, hand-written note, facsimile, text message, e-mail); (b) its date of origin or creation; (c) its author and addressee; (d) its last known custodian or locations; and (e) a brief description of its subject matter and size.  In lieu of identifying any document(s), you may attach a copy of it to your answer, indicating the question to which it is responsive.

6.      "Relate to" means consist of, refer to, reflect or be in any way logically connected with the matter discussed.

7.      The period of time encompassed by these requests shall be from the date of the alleged incident to the date of answering, unless otherwise indicated.  Note, this request is continuing up to and at the time of trial.

8.      For purposes of the Rule, a statement includes:
        (a)      A written statement, signed or otherwise adopted or approved by the person making it,
or
        (b)      A stenographic, mechanical, electronic, video graphic or other recording, or a transcript thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

**Plaintiff's Master Requests for**
**Production of Documents and Things to ALL Defendants**

1.       Produce any documents identified in, referred to or relied on in responding to Plaintiff's First Set of Interrogatories served in this matter.

2.       Produce any written or recorded statements by anyone referenced in your answers to the Interrogatory immediately above.

3.       Produce any and all documents and tangible things, relating to laws, privacy rights, protection rights, privilege rights, confidentiality, policies, rules, statutes, laws and department procedures governing Philadelphia police officers testifying at criminal trials as ballistics experts and describing bullet marks in the street tar in Philadelphia, Pennsylvania.

4.       Produce any and all documents and tangible things, including reports, police reports, police evidence, district control numbers, letters, e-mails, communications, pictures, interviews involving Plaintiff Andrew Fullman, relating to the alleged shooting on or about October 4, 1986, which allegedly occurred at or around 2107 Cobbs Creek Parkway, Philadelphia, Pennsylvania, and was recorded as **DC#:86-12-68933**.

5.       Produce any and all documents and tangible things, including reports, police reports, district control numbers, letters, e-mails, communications, pictures, interviews involving Plaintiff relating to any bullet damage recovered or discovered on or about October 4, 1986, which allegedly occurred at or around 2107 Cobbs Creek Parkway, Philadelphia, Pennsylvania, and was recorded by police as **DC#: 86-12-68933**.

6.       Produce any and all documents and tangible things, including reports, employment records, ballistics training, letters, e-mails, communications, disciplinary action(s), pictures, hearings, interviews, involving Defendant Johnnie Mae Carter's, #1305, resignation and/or separation from the Philadelphia Police Department.

7.       Produce any and all documents and tangible things, including reports, employment records, ballistics training, letters, e-mails, communications, disciplinary action(s), pictures, hearings, interviews, involving Defendant William Dorney's retirement and/or separation from the Philadelphia Police Department.

8.       Produce any and all documents and tangible things, created by any of Defendants' employees, former employees, or representatives at any time, that refer to any documents or tangible things responsive to the Request for Production immediately above.

9.       Produce clear photograph(s) of the shooting range's **ballistic backstop** at the Philadelphia Police Academy.

10.       Produce clear photograph(s) of the ground immediately in front of the Philadelphia Police Academy's shooting range's **backstop** for discovery purposes of seeing any and all bullet marks testified and described by Defendant Johnnie Mae Carter under oath at Plaintiff's criminal trial.

These requests are deemed to be continuing insofar as if any of the above is secured subsequent to the date herein for the production of same, said documents, photographs, statements, reports, police reports, e-mails, interviews, etc., are to be provided to the Plaintiff consistent within the applicable Rule of Civil Procedure.

Andrew Fullman, Pro Se Plaintiff

Date: May 4, 2023

3

I, _____, do hereby verify that the facts as set forth in the within Plaintiff's Master Request for Documents and Things, are true and correct to the best of my personal knowledge or information and belief, and that any false statement therein are made subject to the penalties relating to unsworn falsification to authorities.  See Title 28 Section 1746.

_____

Signature

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW FULLMAN, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PHILADELPHIA, | ) | |
| JOHNNIE MAE CARTER #1305, | ) | |
| BARBARA A. MCDERMOTT, | ) | |
| WILLIAM DORNEY, | ) | |
| | ) | |
| Defendants. | ) | No. 17-2673 |

## CERTIFICATE OF SERVICE

I, Andrew Fullman, hereby certify that on the 4th day of May, 2023, I caused a true and correct copy of
PLAINTIFF'S MASTER REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS AND
INTERROGATORIES ADDRESSED TO ALL DEFENDANTS to be served via United States Postal Priority Mail
upon the following:

Jonathan Cooker, Esquire
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(*Last Attorney of record for City of Philadelphia Defendants)

Jeffrey Mozdziock, Esquire
Deputy Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(*Last Attorney of record)

Andrew Fullman, Plaintiff

Date: May 4, 2023

5