IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW FULLMAN,                  :    CIVIL ACTION
                                 :    NO. 17-2673
           Plaintiff,            :
                                 :
      v.                         :
                                 :
CITY OF PHILADELPHIA, et al.,    :
                                 :
           Defendants.           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MAY 5, 2023

## I.   INTRODUCTION

Pro se plaintiff Andrew Fullman brings this civil rights action against Philadelphia Police Commissioner Richard Ross[1], Jr., the City of Philadelphia (the "City"), and Eileen Bonner, a criminal agent for the Pennsylvania Office of Attorney General ("OAG") (collectively "Defendants"). Plaintiff brings three counts: (I) a violation of his due process rights under the Fifth, Sixth, and Fourteenth Amendments; (II) a violation of his

---

[1] Ross is no longer the Philadelphia Police Commissioner after resigning in 2019. See Chris Palmer, Philadelphia Police Commissioner Richard Ross resigns after woman alleges affair, retribution, Phila. Inquirer (Aug. 20, 2019), https://www.inquirer.com/news/richard-ross-resigns-philadelphia-police-commissioner-gender-racial-sexual-harassment-20190820.html.

equal protection rights under the Fifth and Fourteenth Amendments; and (III) a § 1983 retaliation claim.[2]

Before the Court are two motions for summary judgment--one on behalf of Defendant Bonner and another on behalf of Defendant Ross and the City of Philadelphia (collectively, "City Defendants"). Also before the Court are Plaintiff's motion to join additional parties and motion to add amended discovery to his responses to summary judgment.[3] For the reasons explained herein, Defendants' motions for summary judgment will be granted, and Plaintiff's motions will be denied.

## II.  FACTUAL BACKGROUND

Plaintiff was a witness to two shootings; one on May 6, 2014 and another on August 19, 2014. See Pl.'s Dep. 16:8-22; ECF No. 49 Ex. A. Although he was a witness, Plaintiff was not a

---

[2] Plaintiff has recently filed an amended complaint. See Am. Compl., ECF No. 96. The Court will strike the Amended Complaint. See Fed. R. Civ. P. 12(f). First, Plaintiff did not seek and was not granted leave of Court pursuant to Federal Rule of Civil Procedure 15(a). Second, the claims alleged in the Amended Complaint do not relate to the instant case and name different defendants. The Court notes that the claims in the Amended Complaint were brought in Plaintiff's original Complaint and dismissed by the Court without prejudice, with instructions to file a new civil action in the event his 1986 conviction was invalidated. See July 31, 2017 Order, ECF No. 3. To the extent that Plaintiff has a claim, he can bring another lawsuit, as originally instructed.

[3] Plaintiff also filed a motion for appointment of counsel. Because summary judgment will be granted and Plaintiff's claims will be dismissed with prejudice, the motion will be denied as moot. See Mot. to Appoint; ECF No. 88.

victim to either of the alleged shootings. Id. at 16:8-17:4.
Defendant Bonner, an agent with the OAG's Gun Violence Task
Force, was assigned to investigate the May 6 shooting but not
the August 19 shooting. Id. at 35:9-12, 36:6-8. Plaintiff gave
Defendant Bonner a witness statement regarding the May 6
shooting and also believes he gave her a statement regarding the
August 19 shooting. Id. at 36:9-15. Plaintiff's statements
incriminated Hikeem Harmon and Mark Fullman, Plaintiff's nephew.
Id. at 20:23-21:6. Defendant Bonner allegedly told Plaintiff
that the statements incriminating Hikeem Harmon and Mark Fullman
would stay between Plaintiff and Defendant Bonner, but Plaintiff
never signed a confidential informant agreement. Id. at 55:9-20.

On July 25, 2016, Thomas Fullman told Plaintiff that Hikeem
Harmon and Mark Fullman were aware that Plaintiff had given the
police statements regarding the shootings that incriminating
them. Id. at 24:19-25:17. Plaintiff then filed complaints with
the Philadelphia Police Department ("PPD") Internal Affairs
Division ("IAD") against Defendant Bonner. Id. at 52:1-21.
Plaintiff also alleges that he wrote letters to the Philadelphia
Police Department ("PPD") in August and October of 2016
describing the "cover-up" of the two shootings because neither
suspect Plaintiff named had been arrested or charged. See
Substitute Am. Compl. ¶ 10, ECF No. 7. Plaintiff also stated in

3

these letters that he had been called a "snitch" for reporting the shootings. Id.

However, Plaintiff cannot identify any PPD officer who actually engaged in the alleged "cover-up" or who made the alleged disclosures to the persons Plaintiff identifies as the shooters. See Pl.'s Dep. 18:7-8, 22:5-23:19; ECF No. 49 Ex. A. When Plaintiff spoke to Defendant Bonner about the disclosure, she said that she believed it came from the PPD or from when she spoke to Harmon's attorney. Id. at 7:3-19. Moreover, when asked to describe the nature of the "cover-up," Plaintiff stated that unidentified PPD officers claimed to have tested the gun used in one of the shootings with inconclusive results and then did not arrest anyone. Id. at 18:19-19:20.

### III.  LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is

4

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. Am. Eagle Outfitters, 584 F.3d at 581. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e) (1963)).

Generally, "[a] document filed pro se is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). For example, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Holley v. Dep't of Veteran Affs., 165 F.3d 244, 248 (3d Cir. 1999). "However, despite this liberal interpretation, the same standards for

summary judgment apply to pro se litigants." <u>Watson v. Phila.</u>
<u>Hous. Auth.</u>, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009).

## IV.  DEFENDANTS CITY OF PHILADELPHIA AND ROSS'S MOTION FOR SUMMARY JUDGMENT

### A. <u>City of Philadelphia</u>

To survive summary judgment on a § 1983 claim against the
City, Plaintiff must ultimately show that (1) a constitutionally
protected right was violated and (2) the alleged violation
resulted from a municipal policy or custom that exhibits
deliberate indifference to rights of citizens. <u>Monell v. Dep't</u>
<u>Soc. Servs. of City of New York</u>, 436 U.S. 658, 694-95 (1978).
The City cannot be liable under § 1983 on a theory of <u>respondeat</u>
<u>superior</u>. <u>Id.</u> at 691.

When bringing a custom or policy claim, a plaintiff must
"identify the challenged policy, attribute it to the city
itself, and show a causal link between the execution of the
policy and the injury suffered." <u>Losch v. Borough of Parkesburg,</u>
<u>Pa.</u>, 736 F.2d 903, 910 (3d Cir. 1984); <u>Forrest v. Parry</u>, 930
F.3d 93, 105-06 (3d Cir. 2019) ("[A] plaintiff presenting an
unconstitutional policy must point to an official proclamation,
policy or edict by a decisionmaker possessing final authority to
establish municipal policy on the relevant subject. And, if
alleging a custom, the plaintiff must evince a given course of
conduct so well-settled and permanent as to virtually constitute

law." (citing Monell, 436 U.S. at 798)). To allege a custom, a plaintiff typically must demonstrate that there was a pattern of similar constitutional violations. See Connick v. Thompson, 563 U.S. 51, 54 (2011). The policy of custom at issue must "amount[] to deliberate indifference to the rights of people with whom the police come into contact." Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Plaintiff's § 1983 claim against the City fails for three reasons.

First, Plaintiff has not presented evidence that a "policy or custom of [the City] was the 'moving force' behind a violation of his [constitutional] rights." Clark v. Reg'l Med. First Corr., 360 F. App'x 268, 269 (3d Cir. 2010). Plaintiff's Amended Complaint admits that he is attempting to sue the City for an officer's failure in this single instance to comply with PPD policies, practices, and/or customs. See Substitute Am. Compl. ¶ 27, ECF No. 7. Plaintiff has not produced any evidence of a policy or custom that violated his constitutional rights.

Second, Plaintiff has not identified any evidence showing that a municipal policymaker acted with deliberate indifference by promulgating a policy or custom that such a policymaker was aware would lead to a constitutional violation, as is required to sustain a § 1983 claim. See McTernan v. City of York, 564 F.3d 636, 658-59 (3d Cir. 2009). Plaintiff has neither

7

identified a municipal policymaker nor shown how such policymaker was responsible for his alleged harms.

Third, Plaintiff has not established a constitutional violation by a municipal actor. Kneipp v. Tedder, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (§ 1983 claim cannot stand if the underlying constitutional claim is invalid)[4]. Plaintiff has not identified any individual who personally violated his rights, whether pursuant to a municipal policy or custom or otherwise. Therefore, summary judgment will be granted on Plaintiff's claims against the City.

### B. **Defendant Ross's Motion for Summary Judgment**

City Defendants argue Commissioner Ross should be dismissed from the case as a matter of law because Plaintiff has produced no evidence showing Commissioner Ross was involved in the alleged violations and retaliation. Defs.' Br. in Supp. of Defs.' Mot. for Summ. J. at 7, ECF No. 50. To sustain a § 1983 claim, a plaintiff must aver the existence of a particular defendant's personal involvement in the alleged conduct giving rise to plaintiff's claims. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Such allegations must be made with particularity and not be conclusory. See id.

---

[4] Further discussion of Plaintiff's alleged constitutional violations is below. See infra Section IV.

Plaintiff fails to produce evidence that Defendant Ross was personally involved in his alleged harms. The only evidence against Defendant Ross is that Plaintiff sent him a letter or two about the alleged police "cover-up" of the two shootings that Plaintiff gave statements about. See Pl.'s Dep. 28:1-30:4, ECF No. 49 Ex. A. Plaintiff does not point to any evidence demonstrating that Defendant Ross had any independent involvement with the alleged "cover-up" or retaliation, or that Defendant Ross even read the letters Plaintiff sent. Even assuming that Plaintiff did produce such evidence, there is nothing in the record from which a reasonable factfinder could conclude that Defendant Ross was deliberately indifferent to, or acquiesced in, the violations at issue. Therefore, summary judgment on Plaintiff's claims against Defendant Ross will be granted.

## V.   DEFENDANT BONNER'S MOTION FOR SUMMARY JUDGMENT

### A. <u>Plaintiff's Claims Against Defendant Bonner in Her Official Capacity are Barred</u>

To the extent that Plaintiff seeks to impose liability on Defendant Bonner in her official capacity, official capacity suits are in essence suits against the state. Plaintiff's claims are barred for two reasons.

First, the Eleventh Amendment[5] bars § 1983 claims against the Commonwealth of Pennsylvania, its agencies, and employees in their official capacity. Idaho v. Coeur D'Alene Tribe of Idaho, 521 U.S. 261, 267-70 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984); Melo v. Hafer, 912 F.2d 628, 642 (3d Cir. 1990), aff'd, 502 U.S. 21, 31 (1991).  A state may consent to be sued in federal court, Pennhurst, 465 U.S. at 99, but Pennsylvania has expressly withheld consent to lawsuits under § 1983. 42 Pa. Cons. Stat. § 8521(b); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). Second, state employees in their official capacities are not considered "person[s]" amenable to suit for purposes of a damages claim under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 69-71, n.10 (1989) ("We hold that neither a state nor its officials acting in their official capacities are 'persons' under § 1983.").

Defendant Bonner is an employee with the OAG, an executive department of the Commonwealth of Pennsylvania. 71 Pa. Cons. Stat. §§ 61-62, 732-192; Lavia v. Pa. Dep't of Corrs., 224 F.3d 190,

---

[5] The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

195 (3d Cir. 2000). Therefore, she may not be sued in her official capacity for damages under § 1983.

## B. **Plaintiff's Claims Against Defendant Bonner in Her Individual Capacity**

In his response in opposition to Defendant Bonner's motion for summary judgment, Plaintiff states that he "did not sue Bonner in her official capacity." See Pl.'s Resp. in Opp'n to Def. Bonner's Mot. for Summ. J. 3, ECF No. 85. Although Plaintiff's theory of liability is unclear, he appears to allege that he is seeking liability against Defendant Bonner in her unofficial, or individual, capacity.

"[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officials absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." Hafer v. Melo, 502 U.S. 21, 31 (1991). "[W]hen a state officer acts under a state law in a manner violative of the Federal Constitution, [s]he comes into conflict with the superior authority of that Constitution, and [s]he is in that case stripped of h[er] official or representative character." Scheuer v. Rhodes, 416 U.S. 232, 237 (1974) (quotation omitted). To "establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law caused the deprivation

11

of a federal right." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166

(1985). As discussed in the following section, <u>see</u> <u>infra</u> Section

IV, Plaintiff's claims are not actionable at law, and thus

summary judgment will be granted to the extent Plaintiff seeks

to impose individual liability upon Defendant Bonner.

**VI.   PLAINTIFF'S CLAIMS ARE NOT ACTIONABLE AT LAW**

   **A. <u>Due Process Claim (Count I)</u>**

Plaintiff seeks damages because unidentified PPD officers

did not arrest people he identified as committing crimes, and

then allegedly released his statements identifying such persons

as the perpetrators of those crimes. Plaintiff contends these

actions constitute due process violations. <u>See</u> Substitute Am.

Compl. ¶¶ 31-33, ECF No. 7. "A liberty interest may arise from

the Constitution itself, by reason of guarantees implicit in the

word 'liberty,' or it may arise from an expectation or interest

created by state laws or policies." <u>Porter v. Pa. Dep't of</u>

<u>Corrs.</u>, 974 F.3d 431, 437 (3d Cir. 2020) (quoting <u>Wilkinson v.</u>

<u>Austin</u>, 545 U.S. 209, 221 (2005)).

However, the Supreme Court "has never recognized a

generalized privacy right to be free from bodily harm and to

adequate local police protection." <u>Bernstein v. Lower Moreland</u>

<u>Twp.</u>, 603 F. Supp. 907, 910 (E.D. Pa. 1985) (holding that a

plaintiff had no liberty interest in being protected by the

police after agreeing to testify in criminal proceedings).

Indeed, such a duty only exists where there is a "special relationship" between the governmental body and the individual at issue, which is typically found when the individual is in the government's custody. Id. (citing Davidson v. O'Lone, 752 F.2d 817, 821 (3d Cir. 1984); Youngberg v. Romeo, 457 U.S. 307 (1982); Ingraham v. Wright, 430 U.S. 651, 673 (1977); and City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 245 (1983)). A special relationship based on an oral agreement between local police and a plaintiff does not rise from a statute, and "Pennsylvania does not have any form of statutory Victim and Witness Protection Program such as that in 18 U.S.C. §§ 1501, et seq., 1512 (note), 3579, and 3580." Id. at 911. Absent a relationship of this nature, police have no duty to protect witnesses to crimes from the people they identify as perpetrators of such crimes. Id.

Moreover, the Third Circuit has established that "the information contained in a police report is not protected by the confidentiality branch of the constitutional right of privacy." Scheetz v. The Morning Call, Inc., 946 F.2d 202, 207 (3d Cir. 1991). "When police are called, a private disturbance loses much of its private character." Id. This is because when a plaintiff provides information to police about the commission of a crime, then the incriminating statements become part of the public

13

record if criminal charges ensue, and thus, are non-confidential. Id.

Here, Plaintiff seemingly argues that his liberty interest arises from an oral agreement that Defendant Bonner made with him that his witness statements would remain private. Plaintiff contends that his reputation with his family is ruined because they believe him to be a snitch. See Pl.'s Dep. 8:1-4, ECF No. 49 Ex. A.

Even assuming that Plaintiff had an agreement with an officer for his statements to remain confidential and Plaintiff produced evidence that his statements were disclosed despite such an agreement, "any harm or injury to that interest [in reputation], even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." Paul v. Davis, 424 U.S. 693, 712 (1976). Because Plaintiff has no liberty interest in the disclosure of his statement and because the harm to Plaintiff's reputation does not result in a deprivation of any liberty interest, Plaintiff's due process claim fails as a matter of law.

## B. **Equal Protection (Count II)**

The theory under which Plaintiff contends his equal protection rights have been violated is unclear. To the extent Plaintiff alleges that Defendants discriminated against him by

14

disclosing his statements but not the statements of others, he must prove that (1) similarly situated persons exist against whom the law was not enforced; and (2) the officials' conduct was motivated by an unjustifiable standard. See Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). And to the extent Plaintiff's equal protection claim arises from allegations of racial profiling, he must demonstrate that the officials' actions (1) had a discriminatory effect and (2) were motivated by discriminatory purpose. Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002). "To prove discriminatory effect, [Plaintiff has] to show that [he] is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." Id. at 206.

Under either theory, Plaintiff's claim will be dismissed. The Substituted Amended Complaint makes no allegations about Plaintiff's treatment as compared with similarly situated individuals and the only assertions as to anyone's discriminatory purpose are conclusory. See Substitute Am. Compl. at ¶¶ 32-33. Plaintiff has not developed sufficient evidence to create an issue of material fact as to whether his equal protection rights were violated. Although Plaintiff, as an African-American, is undoubtedly a member of a protected class, he has failed to identify any similarly situated person--either inside or outside of his protected class--who have been treated

differently than himself. There is also no evidence to suggest
that any of the allegedly improper conduct was motivated by
Plaintiff's race or other unjustifiable motives. Thus,
Plaintiff's equal protection claim fails.

C. **Section 1983 Claim (Count III)**

"To plead a retaliation claim under the First Amendment, a
plaintiff must allege: (1) constitutionally protected conduct,
(2) retaliatory action sufficient to deter a person of ordinary
firmness from exercising his constitutional rights, and (3) a
causal link between the constitutionally protected activity and
the retaliatory action." Thomas v. Indep. Twp., 463 F.3d 285,
296 (3d Cir. 2006).

Even accepting as true Plaintiff's argument that his
complaints about a "cover-up" amounted to protected activity,
Plaintiff fails to meet the second and third elements of a §
1983 retaliation claim. Plaintiff is unable to create a genuine
issue of fact as he does not identify a single person who
actually took retaliatory action against him or why such an
action was taken. There is simply no record evidence to support
Plaintiff's contention that the disclosure of his statements to
the suspects he named was tied to his complaints or letters to
the PPD.

Notably, Plaintiff's timeline of events also necessitates
the dismissal of his retaliation claim. Plaintiff alleges that

16

he was threatened by one of the shooters on July 25, 2016, which
preceded the letters he sent accusing PPD of the "cover-up."
Compare Def. Bonner's Mot. for Summ. J. Ex. A. 45:20-46:12 with
24:22-25:1; ECF No. 49. Because Plaintiff stated in his
deposition that the threat he received from the suspects he
implicated arose from the letters he sent to the PPD about the
alleged "cover-up," he essentially admits that the alleged
adverse action--the disclosure of his statements to suspects--
preceded his constitutionally protected action of submitting
complaints to the PPD. Id. at 23:20-24:3. Therefore, because
there is no evidence in the record supporting the second or
third factor necessary to establish a retaliation claim, and
considering the uncontested timeline of events,[6] Plaintiff's
retaliation claim fails as there is no genuine dispute as to any
material fact.

---

[6] In his responses in opposition, Plaintiff argues that "Defense
counsel is trying to twist the facts of the Complaints as he did
in asking Plaintiff confusing questions during the Oral
Deposition." See Resp. in Opp'n to Def. Bonner's Mot. 3, ECF No.
85; see also Resp. in Opp'n to City Defs.' Mot. 3, ECF No. 95.
However, other than bare assertions from Plaintiff, there is no
evidence in the record that creates a genuine dispute of
material fact, which is insufficient to withstand summary
judgment. See Trap Rock Indus., Inc. v. Local 825, Intern. Union
of Operating Eng'rs, AFL-CIO, 982 F.2d 884, 890 (3d Cir. 1992)
(quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir.),
cert. denied, 502 U.S. 940 (1991)) (non-moving party may not
"rest upon mere allegations, general denials or . . . vague
statements . . .").

## VII.   PLAINTIFF'S RENEWED MOTION TO JOIN ADDITIONAL PARTIES

Plaintiff seeks leave to join six additional defendants to this action.[7] Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading once as a matter of course within 21 days after service of the pleading itself or within 21 days after service of any responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Beyond this timeframe, a party may amend its pleading only with leave of court or consent of opposing counsel, but courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—" leave to amend should be liberally granted. Foman v. Davis, 371 U.S. 178, 182 (1962).

Claims brought under § 1983 are subject to the state statutes of limitations governing personal injury actions. Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003) (citations omitted). Specifically, the Pennsylvania statute of limitations for personal injury actions, which is applicable in

---

[7] Plaintiff cites to Federal Rules of Civil Procedure 19 and 20, however, the relief sought in this motion is governed by Federal Rule of Civil Procedure 15. Thus, the Court will evaluate the motion pursuant to Rule 15.

18

the instant case, is two years. Id. (citing 42 PA. CONS. STAT. §
5524(7) (2003)).

Before considering the merits of Plaintiff's motion, the
Court notes that Plaintiff's first motion for leave to amend his
complaint was filed on August 28, 2019. See Mot. to Join, ECF
No. 60. Plaintiff's motion was denied without prejudice, and the
Court instructed that "Plaintiff may raise these motions again
at a later time." See Sept. 16, 2019 Order, ECF No. 64. For the
purposes of the statute of limitations and "relation back"
analyses discussed herein, the Court will view the circumstances
in the light most favorable to Plaintiff, and consider August
28, 2019 as the filing date for the instant motion for leave to
amend.

The underlying events giving rise to Plaintiff's claims
occurred between 2014 and November 2016. Again viewing the
circumstances in a light most favorable to Plaintiff, the Court
will treat November 2016 as the date on which the statute of
limitations started. This would mean that Plaintiff's claims
against new defendants would have been time-barred in November
of 2018, one year before Plaintiff filed his first motion to
amend. Accordingly, the statute of limitations bars Plaintiff's
claim against these additional defendants unless the amended

complaint "relates back" to the operating Complaint under
Federal Rule of Civil Procedure 15(c).[8]

An amended pleading relates back where, among other
requirements, the party to be brought in by amendment knew or
should have known that the action would have been brought
against him or her, "but for a mistake concerning the proper
party's identity." Fed. R. Civ. P. 15(c). The core of the
relation back inquiry is "what the prospective defendant knew or
should have known" that, but for a mistake, the plaintiff would
have named him or her in the initial pleading. Krupski v. Costa
Crociere S. p. A., 560 U.S. 538, 548 (2010); Singletary v. Pa.
Dep't of Corr., 266 F.3d 186, 189 (3d Cir. 2001). The Third
Circuit has recognized two methods of imputing notice to
defendants under Rule 15(c): (1) the existence of a shared
attorney between the original and proposed new defendant; and

---

[8] Plaintiff did not attach a copy of the proposed amended
complaint to his motion. See Pl.'s New Mot. to Join, ECF No. 86.
Although Defendants cite to several Third Circuit cases holding
that "[f]ailure to submit a draft amended complaint is fatal to
a request for leave to amend," none of the cases cited
considered plaintiffs proceeding pro se. See Fletcher Harlee
Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d
Cir. 2007); Ramsgate Court Townhome Ass'n v. West Chester
Borough, 313 F.3d 157, 161 (3d Cir. 2002); Kelly v. Del. River
Joint Comm'n, 187 F.2d 93, 95 (3d Cir. 1951). Because Plaintiff
here is proceeding pro se, the Court will proceed under the
assumption that the only amendment Plaintiff seeks to make is to
include six additional Defendants despite the fact that
Plaintiff did not attach a proposed amended complaint to his
motion.

(2) an identity of interest between these two parties.

<u>Singletary</u>, 266 F.3d at 189.

In this case, neither method of imputing notice is applicable. First, it is not clear that the named Defendants and those Plaintiff seeks to join shared an attorney prior to the running of the statute of limitations. Second, the Third Circuit has held that notice to an employer does not constitute notice to a non-managerial employee, such as the putative defendants Plaintiff seeks to join. <u>See</u> <u>id.</u> at 200. Additionally, equitable tolling does not apply in this case. Because there was no written discovery conducted, it logically follows Plaintiff was aware of these officers or was otherwise capable of obtaining such information on his own when he filed the case in 2017.

Because Plaintiff has failed to show that the people named in his Motion to Join had either actual notice or constructive notice under Rule 15(c), Plaintiff's proposal to amend the operative Complaint to include additional defendants does not relate back to the date of the initial Complaint. Therefore, Plaintiff's putative § 1983 claims against additional defendants are barred by the statute of limitations, and Plaintiff's Motion to Join will be denied.

## VIII.   PLAINTIFF'S MOTION FOR ADDITIONAL DISCOVERY

Finally, the Court must address Plaintiff's requests for additional discovery--one request is attached to his responses

21

in opposition to Defendants' motions for summary judgment, and
the other request filed separately is styled as a motion for
additional discovery.

If a party opposing summary judgment "believes that s/he
needs additional time for discovery, [Rule 56(d)] specifies the
procedure to be followed." Pa., Dep't of Pub. Welfare v.
Sebelius, 674 F.3d 139, 157 (3d Cir. 2012) (alteration in
original) (quoting Dowling v. City of Phila., 855 F.2d 136, 139
(3d Cir.1988)) (addressing the predecessor to Rule 56(d), Rule
56(f)). The rule requires "a party seeking further discovery in
response to a summary judgment motion [to] submit an affidavit
specifying, for example, what particular information is sought;
how, if uncovered, it would preclude summary judgment; and why
it has not previously been obtained." Dowling, 855 F.2d at 139–
40.

In the exhibits attached to Plaintiff's responses in
opposition to Defendants' motions for summary judgment,
Plaintiff identifies certain interrogatories and document
requests sought. However, Plaintiff does not explain how, if
obtained, the information requested would preclude summary
judgment. After reviewing the discovery requests, the
information sought would not preclude summary judgment.

For example, regarding Plaintiff's due process claim, no
potential response to Plaintiff's listed discovery requests can

overcome the conclusion that, as a matter of law, Plaintiff does
not have a liberty interest in statements made to the police
during an investigation on these facts. Additionally, as to
Plaintiff's equal protection claim, Plaintiff does not seek any
information regarding the treatment of others similarly
situated, which is an essential element to overcome summary
judgment. With respect to Plaintiff's retaliation claim,
Plaintiff seeks information relating to the second factor--
whether the retaliatory action occurred after the protected
activity--but not the third factor--whether the protected
activity was the cause of the retaliatory action--and thus, the
discovery sought on this claim is also futile. Indeed, a good
amount of Plaintiff's discovery requests seek answers to legal
research questions, such as if there are any laws protecting
those who report suspects to the police, instead of addressing
factual issues.

  With respect to Plaintiff's separately filed motion for
discovery, which contains different interrogatories and document
requests than those attached to his responses in opposition to
the motions for summary judgment, the motion will be denied. The
Court's July 31, 2019 Scheduling Order explained that if
Plaintiff filed a response to the motions for summary judgment,
then "Plaintiff shall attach copies of his proposed discovery
requests" and "explain how the proposed discovery is necessary

for him to fully respond to the pending motions . . ." <u>See</u> July 31, 2019 Order; ECF No. 55. Put differently, if Plaintiff wished to submit proposed discovery requests, he must have filed them contemporaneously with his responses to Defendants' motions for summary judgment. Plaintiff has demonstrated fluency in the motion practice involving making requests to the Court. <u>See</u> <u>generally</u> ECF Nos. 53, 54, 57, 61, 67, 69, 71, 74, 77, 79, 81, and 83. Despite the 1,000 days of extensions and suspense permitted by the Court for Plaintiff to respond to the summary judgment motions, Plaintiff did not attach these discovery requests to his responses to Defendants' motions for summary judgment. Therefore, because Plaintiff did not make these requests in conjunction with his response in opposition, and because the new requests relate mostly to the additional Defendants Plaintiff seeks to join in violation of Rule 15(c), <u>see</u> <u>supra</u> Section VII, the motion seeking additional discovery will be denied.

## IX.  CONCLUSION

In conclusion, and for the reasons explained herein, the City Defendants' and Defendant Bonner's motions for summary judgment will be granted. Additionally, Plaintiff's motion to join and motion for additional discovery will be denied.

An appropriate order follows.